FILED-CLERK
U S. DISTRICT COURT
03 JUN 19 AM 10: 27
TEXAS EASTERN
BY_____

TAWNYA R. WOJCIECHOWSKI, CAL. BAR NO. 180,068
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1925
Telephone: (714) 513-5100
Facsimile: (714) 513-5130

Attorneys for Plaintiff
BBG COMMUNICATIONS, INC.

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF TEXAS

| | |
|---|---|
| BBG COMMUNICATIONS, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> NETWORK COMMUNICATIONS INTERNATIONAL CORP., a Texas corporation; William Pope, an individual, Jay Walters, an individual;, Jeffrey Walters, an individual ; and DOES 1 through 10, inclusive <br><br> Defendants. | Case No. 2:03CV227-TJW <br><br> **DECLARATION OF MICHAEL STOMPS** |

## DECLARATION OF MICHAEL STOMPS

I, MICHAEL STOMPS, under penalty of perjury, declare and state:

1. I am currently an independent sales agent of BBG Communications, Inc. ("BBG"). I have personal knowledge of all of the facts and circumstances set forth herein and if called as a witness, I could and would competently testify thereto.

2. I recently worked as an independent sales agent for Defendant NCIC and am familiar with its business practices.

3. Both NCIC and BBG are both multinational, multifunctional telecommunications companies serving diverse international markets that include North America, Europe, Japan, Israel, Latin America and the Caribbean basin. Both NCIC and BBG provides internal and external communications in various countries acting as a carrier, and as an international long distance reseller.

4. The telecommunications business is very competitive, and information collected about sources of international services, marketing information, potential customers, sales representatives are all very confidential and considered proprietary information of a telecommunications company, including but not limited to telecommunications services and operations, pricing information and marketing efforts; the processes, methods and equipment by which the company operates; names of and information about the company's agents, employees, customers and prospective customers; and the company's business and financial records.

5. BBG has registered and owns the internet domain name BBGCOMM.COM and uses such URL for its email addresses on its email server. BBG's practice for allocating its email from its email server to its employees follows the following nomenclature: [first name]BBGCOMM.COM or [first name last initial]BBGCOMM.COM. For example, I am aware that BBG's Secretary, Mr. Rafael Galicot's business email address is RAFAEL@BBGCOMM.COM, and

BBG's President, Mr. Gregorio Galicot, has his business email address configured as GREGORIO@BBGCOMM.COM.

6. I am aware that BBG and NCIC have had significant competitive contacts over the past 5 years, including in the Caribbean, and have frequently placed competitive bids for contracts with individuals at various hotels, hotel chains, pay phone operators and other accounts. I personally know Mr. William "Bill" Pope, and have had many contacts with him in the industry over the past years.

7. Unbeknownst to BBG, Defendants registered the internet domain name BBGCOM.COM on or about April 17, 2001. When I was hired by BBG, I informed Mr. Rafael Galicot that NCIC is in possession of numerous emails intended for BBG management, as I was aware that NCIC had set up email addresses for the BBG personnel, including its top management, associated with the BBGCOM.COM name.

8. Based on my personal knowledge Mr. Jeffrey Walters (an agent of NCIC and a relative of Defendant Jay Walters) is in charge of reviewing the misdirected emails that come into the NCIC server through the illicit use of the BBG personnel names. Then, using a different email address at jeffrey@3comcr.com, Mr. Walters collects these emails, screens them, and then forwards them to Mr. Pope for review and comment. Based on information and belief, Mr. Pope then sends directions to various NCIC employees and agents based on BBG's confidential information revealed in them. I was the recipient of a number of these emails, which contained the following types of BBG's confidential information which have been obtained by NCIC through the use of these illicit email addresses: BBG pricing information, BBG marketing information, BBG customer information; sales agent sales information and spreadsheets, potential customer contacts, and bidding information directly competitive to NCIC, among other valuable trade secret information

9. Last week, Mr. Rafael Galicot asked me if I had any of these emails in my possession, and while I did not have any paper copies of any such information, I did realize that some of these emails were still on my personal computer and forwarded them to Mr. Galicot and his attorneys. Further, I know that Mr. Pope has complete knowledge and control over the information illegally obtained from BBG and has used such information to interfere with BBG's economic relationships for the direct benefit of NCIC as BBG's direct competitor. A few samples of the emails from my computer illustrate the gravity of NCIC's actions:

1. Email dated January 16, 2003, where a BBG customer was asking for a credit to an account and sent an email to Annel, a BBG employee. The customer sent the email to annel@bbgcom.com, which was intercepted by Jeffrey Walters at NCIC, who then sent the email to me, asking if I had called the hotel where the customer call originated. A true and correct copy of this email is attached hereto as Exhibit A.

2. Email dated March 12, 2003, where Joanne Pearson, Operations Manager for BBG in Ireland, sent a sales presentation with BBG billing information, guarantee, Ireland hotel references and a BBG customer agreement to a potential BBG customer, the O'Callaghan Hotels. Mr. Jeffrey Walters obtained and forwarded the email with the sales presentation material and proprietary information to me, saying "Someone needs to go after BBG Ireland." A true and correct copy of this email is attached hereto as Exhibit B.

3. Email dated March 17, 2003, where BBG was internally discussing the hiring of a new agent in Bermuda, someone inadvertently sent the email to the BBGCOM.COM domain, and once intercepted by NCIC, Jeffrey Walters cut and past information in the email to me, saying "Contact him at the end of this week or in about 2 weeks . . . <u>You need to come up with a story how you got the info</u>. . . A true and correct copy of this email is attached hereto as Exhibit C.

4. Email dated April 1, 2003, where Mr. Brian Rhys of BBG sent an Excel spreadsheet with confidential and proprietary sales information for the preceding August-February to Mr. Rafael Galicot (using the incorrect email address inadvertently), which was intercepted by Mr. Walters and forwarded to Bill Pope, who said "Has Stomps made any attempts to contact C&W Jamaica??? Does he understand their [sic] is an open window of opportunity?" A copy of this email was then sent to me. A true and correct copy of this email is attached hereto as Exhibit D.

5. Email dated March 25, 2003 from a BBG customer concerning billing charges for a hotel in St.. Maarten, which was intercepted by Mr. Walters and forwarded to me, saying "What is the strategy on St. Maarteen? Are you guys still in there? Doing any traffic? Do you have a local rep?" A true and correct copy of this email is attached hereto as Exhibit E.

6. Email dated April 22, 2003 from Damon Rhys, BBG Marketing Director Asia/Oceania, concerning a contract with Melia Bali hotel contract, and attaching a spreadsheet with call detail records for the hotel that was intercepted by Mr. Walters and forwarded to me, saying "They have some problems with this hotel . . ." A true and correct copy of this email is attached hereto as Exhibit F.

10.   I only received a small portion of the emails which had been intercepted by NCIC relating to BBG's business via the illicit email accounts, as Mr. Jeffrey Walters only sent the emails to me concerning my sales areas or contacts. Upon information and belief, Defendants are in possession of and are using much more of BBG's confidential information than I received. I believe that NCIC's use of the BBG mark was willful, having been adopted with knowledge of BBG's prior rights in and to the BBG Marks, with the intent to trade on and benefit from the goodwill established in the BBG Marks by Plaintiff. NCIC willfully used the

1  confidential information of BBG obtained through these illicit email addresses to the
2  commercial detriment of BBG. Further, the general public is being deceived into
3  believing that it is contacting BBG when an individual sends an email to any
4  individual's name at the BBGCOM.COM address.
5
6      I declare under penalty of perjury under the laws of the United States of
7  America that the above is true and correct.
8
9  Date: June 18, 2003

                                        MICHAEL STOMPS

---

1      9. Last week, Mr. Rafael Galicot asked me if I had any of these emails in my
2  possession, and while I did not have any paper copies of any such information, I did