

CLERK, U.S. DISTRICT COURT
RECEIVED
MAR 1 6 2004
EASTERN DIST. OF TEXAS

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

BBG COMMUNICATIONS, INC.,
BBG HOLDINGS LIMITED,

      Plaintiffs,

v.

1. NETWORK COMMUNICATIONS
   INTERNATIONAL CORP.,
2. BLUE PHONE LIMITED,
3. WILLIAM POPE,
4. JAY WALTERS,
5. JEFFERY WALTERS

      Defendants.

Case No. 2-03CV-227

---

## PLAINTIFFS' FIRST AMENDED COMPLAINT

---

Plaintiffs BBG Communications, Inc. ("BBG Comm.") and BBG Holdings Limited ("BBG Holdings") (BBG Holdings and BBG Comm. are referred to collectively herein as "BBG" or "Plaintiffs") for their complaint against Defendants Network Communications International Corp. ("NCIC"), Blue Phone Limited ("Blue Phone"), Mr. William Pope ("Pope"), Mr. Jay Walters ("Jay Walters"), and Mr. Jeffrey Walters ("Jeffrey Walters") (collectively "Defendants"), alleges as follows:

### NATURE OF THE ACTION

1.     In a blatant attempt to deceive consumers and to steal Plaintiffs' confidential information, Defendants set up an email account associated with the BBGCOM.COM domain name on Defendants' email server to intentionally intercept misdirected email intended for BBG Comm. and BBG Holdings. Through such wrongful actions, Defendants are defrauding consumers into believing they are communicating with Plaintiffs, are infringing and diluting

W97-SD:DFF\51319811.1

BBG Comm.'s trademarks; are misappropriating the confidential information and trade secrets of

Plaintiffs through the unauthorized interception of emails intended to be sent to Plaintiffs, and

are interfering with Plaintiffs' existing and prospective business relationships. BBG Comm. uses

the Internet domain name BBGCOMM.COM. Defendants registered the substantially identical

domain name BBGCOM.COM (missing the "m") and have set up an email account to receive all

email sent to anyone at the BBGCOM.COM domain name. A multitude of emails containing

Plaintiffs' confidential trade secrets are currently in Defendants' possession, and until Defendants

complied with this Court's temporary restraining order, new emails were being sent to Plaintiffs'

direct competitor on a daily basis. Defendants have been using and continue to use the

intercepted emails to harm the public, and for the commercial and competitive disadvantage of

BBG Comm. and BBG Holdings.

2.      Defendants have also engaged in other acts of unfair competition and interference,

including the placement of stickers bearing NCIC's international toll free telephone calling

numbers over those of BBG Holding's contracted telephones in various countries throughout the

world. Similarly, defendants have defaced or destroyed BBG Holding's dialing instructions

placed on phones in contracted locations throughout the world (including hotels, airports,

seaports, etc.) so that consumers will be directed to utilize NCIC's international telephone calling

numbers. This was done with the intent to divert long distance call traffic from BBG's operator

centers to NCIC's operator centers..

3.      Plaintiffs seek preliminary injunctive relief, a permanent injunction, damages and

a declaratory judgment based upon Defendants' willful trademark infringement, willful dilution

of BBG Comm.'s famous trademarks, anti-cybersquatting, misappropriation of trade secrets,

interference with existing and prospective economic relationships and unfair competition.

## THE PARTIES

4.      Plaintiff BBG Comm. is a Delaware corporation duly organized and existing pursuant to the laws of the State of Delaware with a principal place of business located at 1658 Gailes Boulevard, Suite B, San Diego, California 92154.

5.      Plaintiff BBG Holdings is incorporated under the laws of Bermuda, having its registered office at Clarendon House, 2 Church Street, Hamilton HM DX, Bermuda.

6.      Upon information and belief, Defendant NCIC is a corporation duly organized and existing pursuant to the laws of the State of Texas with its offices at 1809 Judson Road, Longview, Texas 75605, and 613 N. 3rd, Longview, Texas 75601; and 606 Magrill St., Longview, TX 75601.

7.      Upon information and belief, Defendant Blue Phone is an international business company incorporated in the British Virgin Islands owned by Defendant Jeffrey Walters and Tony Hoogstraaten.  Blue Phone acts as an agent of NCIC and was created to carry forward the unlawful, unscrupulous, and unfair activities of the defendants in various parts of the world.

8.      Upon information and belief, Defendant William ("Bill") Pope is an individual residing in Texas and is the President of Defendant NCIC.  Upon information and belief, Pope and its other principal, Defendant Walters, directs all business activities of Defendant NCIC.

9.      Upon information and belief, Defendant Jay Walters is an individual residing in Texas and is a principal shareholder and officer of Defendant NCIC.  Upon information and belief, Defendant Jay Walters and its other principal, Defendant Pope, directs all business activities of Defendant NCIC.

10.     Upon information and belief, Defendant Jeffrey Walters is an individual residing in Texas and is an employee and/or agent of Defendant NCIC.  Upon information and belief,

Defendant Jeffrey Walters intentionally and willfully, with full knowledge of the wrongfulness of his actions, did the acts complained of in this complaint.

11.    On information and belief, in doing the things alleged in this Complaint, each of Pope, Jay Walters, Jeffrey Walters, Blue Phone, and Does 1 through 10, inclusive, was an agent and/or employee of NCIC and was acting within the course and scope of his agency or employment with NCIC's permission and consent.

## JURISDICTION AND VENUE

12.    This action arises under the Lanham Trademark Act of 1946, 15 U.S.C. §1051 et seq. (the "Lanham Act").

13.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338 and 1367.

14.    This Court has personal jurisdiction over Defendants because the Defendants have been and are doing business in the State of Texas.

15.    Venue is proper in this district pursuant to 28 U.S.C. §1391 because the claims asserted arise in this district and/or the defendants reside in this district.

## ALLEGATIONS COMMON TO
## ALL CAUSES OF ACTION

### A.    BBG'S Business

16.    BBG Comm. and BBG Holdings are well-known, multinational, multifunctional communications companies serving diverse international markets that include North America, Europe, Japan, Israel, Latin America and the Caribbean basin.  BBG Holdings contracts with various third parties throughout the world (including foreign telephone companies, hotels,

airports, and seaports) to provide internal and external communications and telephones. BBG

Comm. acts as the carrier and international long distance reseller to facilitate the contracts

between BBG Holdings and others. BBG Holdings and BBG Comm. sell millions of dollars of

telecommunications services annually, and the consuming public within the industry has come to

associate the "BBG®" marks and logos exclusively with the services of BBG Comm. and BBG

Holdings. BBG Comm. has filed for and/or federally registered its trademarks and logos both in

the United States and internationally.

17.    The telecommunications business is very competitive, and information collected

about sources of international services, pricing and marketing information, potential customers,

sales representatives are all very confidential and considered proprietary information of a

telecommunications company. During their employment and other work for Plaintiffs described

in this Complaint, each of Plaintiffs' agents and employees has knowledge of, access to, was

entrusted with, and/or developed for Plaintiffs' benefit certain confidential, proprietary and trade

secret information (referred to collectively as "Confidential Information") relating to Plaintiffs'

telecommunications services and operations, including without limitation marketing efforts; the

processes, methods and equipment by which the company operates; names of and information

about the company's agents and employees, customers and prospective customers; and the

company's business and financial records. Each of Plaintiffs' agents and employees has a duty

imposed by law to maintain the Confidential Information in confidence.

18.    Plaintiffs developed the Confidential Information over a long period of time and

at significant cost. Plaintiffs have maintained, and continue to maintain, the confidentiality of

this information. Its availability to a competitor (or potential competitor) would provide a

significant competitive advantage. The Confidential Information is not generally available to the public and constitutes secret information owned by Plaintiffs.

**B.**   **BBG's Trademarks, Logos and Designs**

19.   BBG Comm. owns the following federal trademark registrations, among others: BBG® (Reg. No. 2,371,265 (Int. Cl. 38)); BBG COMMUNICATIONS® (Reg. No. 2,375,351 (Int. Cl. 38)) and BBG Design(stylized)® (Reg. No. 2,371,266 (Int. Cl. 38)) (collectively, the "BBG Marks"). (Copies of the official United States Patent and Trademark ("USPTO") database information concerning the registrations for the BBG Marks are attached to the original complaint as Exhibit A). Through a valid license, BBG Holdings makes use of the BBG Marks throughout the world.

20.   In addition to the BBG Marks, BBG Comm. also owns and/or has applied for additional federal trademark registrations in numerous foreign countries, including but not limited to Canada, Russia, and Mexico.

21.   Each of the BBG Marks has been continually used in commerce since June 30, 1996, their respective dates of first use.

22.   Because of Plaintiffs' extensive use of the BBG Marks, Plaintiffs have built up significant goodwill therein. The success of Plaintiffs' marketing efforts is evidenced by, among other things, the worldwide distribution of BBG® telecommunications services. As a result of Plaintiffs' high quality telecommunications services and their vigorous promotion of their trademarks, Plaintiffs' telecommunications services offered under the BBG Marks have come to symbolize quality and value in the eyes of the consuming public within the industry.

23.   BBG Marks are arbitrary, fanciful and therefore, distinctive of the BBG services. Moreover, by virtue of the worldwide renown acquired by the BBG Marks coupled with their

geographic distribution and extensive sales under the BBG Marks, the BBG Marks have acquired secondary meaning in the mind of the purchasing public in the industry and have become famous.

24.     BBG Comm. has registered and owns the internet domain name BBGCOMM.COM and uses such URL for its email addresses on its email server. BBG's practice for allocating its email from its email server to its employees follows the following nomenclature: [first name]BBGCOMM.COM or [first name last initial]BBGCOMM.COM. For example, BBG Comm.'s Secretary, Mr. Rafael Galicot, has his business email address configured as RAFAEL@BBGCOMM.COM, and BBG Comm.'s President, Mr. Gregorio Galicot, has his business email address configured as GREGORIO@BBGCOMM.COM.

**C.     Defendants' Business Activities as a Competitor of Plaintiffs**

25.     Defendant NCIC is a direct competitor of BBG Comm. and BBG Holdings in the telecommunications industry. A true and correct copy of the NCIC website offering the identical services to Plaintiffs is attached to the original complaint as Exhibit B. Plaintiffs are very familiar with NCIC as a direct competitor, and have been competing on an international basis for hotel accounts, telephone pay phone contracts, government communications licenses, local sales agents and the like.

26.     Plaintiffs and NCIC have had significant competitive contacts over the past 5 years and have frequently placed competitive bids for contracts with foreign carriers, operators of pay phones, airports, seaports, cruise lines, hotels and other accounts. Therefore, NCIC is acutely aware of Plaintiffs' presence in the telecommunications industry.

27.     Plaintiffs have contacted NCIC in the past for various unsavory business

practices, including but not limited to the use of the BBG Marks in NCIC's website metatag html

programming.

28.     NCIC and its agents have also engaged in other acts of unfair competition and

interference, including the placement of stickers bearing NCIC's international toll free telephone

calling numbers over those of BBG Holding's contracted telephones in various countries

throughout the world.  Similarly, NCIC and its agents have defaced or destroyed BBG Holding's

dialing instructions placed on phones in contracted locations throughout the world (including

hotels, airports, seaports, etc.) so that consumers will be directed to utilize NCIC's international

telephone calling services rather than those of Plaintiffs.

**D.      Defendants' Unauthorized Registration of the BBG Marks in the
         BBGCOM.COM Internet Domain Name.**

29.     Plaintiffs have never authorized Defendants to distribute, sell, offer for sale,

advertise, or promote any sales or offer any services bearing any mark similar to or likely to be

confused with the BBG Marks, including but not limited to the internet domain name

BBGCOM.COM (the "BBGCOM.COM domain name").

30.     Plaintiffs have never authorized Defendants to use the BBGCOM.COM domain

name or any mark similar to or likely to be confused with the BBG Marks in any form or

manner, including but not limited to, advertising or otherwise promoting any sales or offering

any services bearing the BBGCOM or BBG Marks or any mark similar to or likely to be

confused with the BBG Marks.

31.     Upon information and belief, Defendants registered the internet domain name

BBGCOM.COM on or about April 17, 2001.  A copy of the official record associated with the

Network Solutions Whois database reflects the following information, and a true and correct

copy of such record is attached to the original complaint as Exhibit C.  All information

associated with the registered domain name is fake, including the owner's name (BBG COM) the

address: 1234 Gouge Street, San Diego, California 80210 (there is no such address) and the

telephone numbers 619-555-1212 (FAX) 619-555-1212 are fake (in fact these are numbers for

directory assistance). The only information which can be traced from this registration is the

contact for 20944@whoisgkg.net.

      32.     Plaintiffs conducted an investigation into the contact information, and were able

to determine that the person associated with the username for the BBGCOM.COM domain name

is "bpope" at globalbrosky@yahoo.com.  A true and correct copy of the webpage for a password

reminder associated with the BBGCOM.COM domain name obtained for 20944@whoisgkg.net

(the information associated with the BBGCOM.COM domain) is attached to the original

complaint as Exhibit D.  Therefore, the only logical conclusion is that "bpope" is Defendant

William "Bill" Pope, the President of NCIC.

**E.**     **Defendant's Use of the BBGCOM.COM Domain Name to Divert and Intercept**
**Plaintiffs' Emails and Misappropriate Plaintiffs' Trade Secrets.**

      33.     While the registration of the BBGCOM.COM domain name by Defendants

constitutes trademark infringement, dilution and cybersquatting, Defendants have used such

domain name to maintain one or more email accounts on computer servers controlled by

Defendants to intentionally intercept Plaintiffs' email.  BBG Holdings recently contracted Mr.

Michael Stomps as a sales representative for BBG Holdings.  Mr. Stomps previously worked for

NCIC and has informed Plaintiffs that NCIC is in possession of numerous emails intended for

Plaintiffs' management.  Plaintiffs were extremely surprised to hear from Mr. Stomps how NCIC

had set up its scheme to intercept email directed to BBG personnel, including its top management, under the "missing m" domain name. NCIC admittedly set up an email server to receive any and all email sent to [anyone]@bbgcom.com. Additionally, Defendants registered numerous other domain names incorporating Plaintiffs' BBG trademark, including but not limited to BBBGCOM.COM, BGGCOMM.COM, BBGCOMMM.COM, BBGCOMM.NET, and based on information and belief, Defendants also set up email accounts on computer servers they control in order to capture any emails sent to such domains.

34.     Apparently, Defendant Jeffrey Walters (an agent and/or employee of NCIC and brother of Defendant Jay Walters) is in charge of reviewing the misdirected emails that come into the server through the illicit use of the confusingly similar BBG domain, BBGCOM.COM. Using a different email address jeffrey@3comcr.com, Mr. Walters collects these emails, screens them, and then forwards them to Mr. Pope for review and comment. Mr. Pope and Mr. Walters then send directions to various NCIC employees and agents based on BBG's confidential information revealed in them.

35.     Plaintiffs have ascertained the following types of confidential information has been obtained by NCIC through the use of these illicit email addresses: customer performance information and data critical to customer contract renewals; Plaintiffs' pricing information; Plaintiffs' marketing information; Plaintiffs' customer information including customer contact names and services purchased; information on acquisitions sought by Plaintiffs; attorney-client privileged information sent to Plaintiffs by their Mexican counsel concerning proposed transactions; sales information and spreadsheets; potential customer contacts; sales agent contact information and customer details; and bidding information directly competitive to NCIC, among other valuable trade secret information

FIRST AMENDED COMPLAINT

36.     Plaintiffs have obtained a few copies of emails from Mr. Stomps' personal laptop computer which were sent to him during his previous affiliation with NCIC.  These emails prove that (1) NCIC set up the BBGCOM.COM domain name to intercept emails sent to that domain name; (2) NCIC has received confidential and proprietary information of Plaintiffs; (3) NCIC has knowingly used such information to its commercial benefit and to the detriment of Plaintiffs; (4) such emails have intentionally been disseminated among NCIC employees and sales agents; and (5) each of the Defendants have had complete knowledge and control over the information illegally obtained from Plaintiffs and has used such information to interfere with Plaintiffs' economic relationships for the direct benefit of NCIC as Plaintiffs' direct competitor.  These few samples illustrate the gravity of NCIC's actions:

1. Email dated January 16, 2003, where a BBG Holdings' customer was asking for a credit to an account and sent an email to Annel, a BBG Comm. employee, whereby the customer sent the email to annel@bbgcom.com and which was intercepted by Jeffrey Walters, who then sent the email to Michael Stomps, inquiring if he had called the hotel where the customer call originated. A true and correct copy of this email is attached to the original complaint as Exhibit E.

2. Email dated March 12, 2003, where Joanne Pearson, Operations Manager for BBG Holdings in Ireland, sent a sales presentation with Plaintiffs' billing information, revenue guarantees, Ireland hotel references and a BBG customer agreement  to a potential BBG customer, the O'Callaghan Hotels. Mr. Jeffrey Walters obtained and forwarded the email with the sales presentation material and proprietary information to Mr. Michael Stomps, Mr. Jeroen Sluiter and Mr. T. Hoogstraaten, saying "Someone needs to go after BBG Ireland." A true and correct copy of this email is attached to the original complaint as Exhibit F.

FIRST AMENDED COMPLAINT

3. Email dated March 17, 2003, where BBG Holdings was internally discussing the hiring of a new agent in Bermuda, someone inadvertently sent the email to the BBGCOM.COM domain, and once intercepted by NCIC, Jeffrey Walters sent the email to Michael Stomps, saying "Contact him at the end of this week or in about 2 weeks . . . You need to come up with a story how you got the info. . . A true and correct copy of this email is attached to the original complaint as Exhibit G.

4. Email dated April 1, 2003, where Brian Rhys sent an Excel spreadsheet with confidential and proprietary sales information for the preceding August-February to Rafael Galicot (using the incorrect email address inadvertently), which was intercepted by Mr. Walters and forwarded to Bill Pope, who said "Has Stomps made any attempts to contact C&W Jamaica??? Does he understand their [sic] is an open window of opportunity?" A true and correct copy of this email is attached to the original complaint as Exhibit H.

5. Email dated March 25, 2003 from a BBG Holdings customer concerning billing charges for a hotel in St.. Maarten, which was intercepted by Mr. Walters and forwarded to Michael Stomps, saying "What is the strategy on St. Maarteen? Are you guys still in there? Doing any traffic? Do you have a local rep?" A true and correct copy of this email is attached to the original complaint as Exhibit I.

6. Email dated April 22, 2003 from Damon Rhys, BBG Marketing Director Asia/Oceania, concerning a contract with Melia Bali hotel contract, and attaching a spreadsheet with call detail records for the hotel that was intercepted by Mr. Walters and forwarded to Mr. Stomps, saying "They have some problems with this hotel . . ." A true and correct copy of this email is attached to the original complaint as Exhibit J.

37.     Moreover, upon discovery of NCIC's setting up the BBGCOM.COM domain name and email server, Plaintiffs had their personnel search their email records to see if any had mistakenly sent an internal email containing confidential, trade secret information to an email address corresponding to the illicit email account with the missing "m." Surprisingly, Plaintiffs discovered numerous such emails sent to and from their various personnel, and which, based on information and belief, would be currently in the possession of NCIC. Because of the inherent naming capabilities and reply capabilities contained in various email software programs, including Microsoft Outlook, a single mistake can compound into tens of emails being routed from Plaintiffs' personnel to the illicit email addresses set up by NCIC. Exemplars of such emails are collectively attached to the original complaint as Exhibit K. The following emails list the various highly confidential and proprietary information intercepted by NCIC through the illicit email addresses:

1. Email dated March 19, 2003 from Mr. Clemesha to Rafael Galicot attaching pending contract negotiation details, including contact information.

2. Email dated March 17, 2003 from Mr. Clemesha to Rafael Galicot, attaching a spreadsheet containing all of Plaintiffs' highly confidential and proprietary contract information for the Marriott Hotel chain on a worldwide basis, including all contact information, sales details and addresses.

3. Email dated October 10, 2002 from Mr. Jorge Macari to Gregorio Galicot enclosing spreadsheets containing sales information for the Marriott hotel chain, marked "Confidential."

4. Email dated March 21, 2003 from Brian Rhys to Rafael Galicot enclosing pricing information for Toronto and London telecommunications lines.

-13-

5. Email dated January 16, 2003 from a BBG Comm. employee, Delma, sent internally to Mr. Gregorio Galicot containing confidential information on BBG Comm.'s financial records and credit card information.

6. Email dated January 7, 2003 from a BBG Comm. employee, Delma, sent internally to Damon Rhys and Mr. Gregorio Galicot containing confidential information concerning international toll free telephone numbers for New Zealand hotels to access Plaintiffs' operator centers.

38.    Upon information and belief, Defendants are in possession of and are using copious but unquantifiable amounts of Plaintiffs' internal, confidential and proprietary information through the use of the illicit email addresses set up to correspond to the employees of BBG via the registration of the domain name BBGCOM.COM incorporating BBG's federally registered trademark. NCIC's use of the mark was willful, having been adopted with knowledge of Plaintiffs' prior rights in and to the BBG Marks, with the intent to trade on and benefit from the goodwill established in the BBG Marks by Plaintiffs. NCIC has willfully used the confidential information of BBG obtained through these illicit email addresses to the commercial detriment of BBG.

## FIRST CLAIM FOR RELIEF

### (Trademark Infringement Under 15 U.S.C. § 1114 et seq.)

39.    BBG repeats and realleges the allegations contained in paragraphs 1 through 38 of the Complaint as if fully set forth herein.

40.    The BBG Marks are nationally and internationally recognized, as being used in connection with rendering telecommunications services of the highest quality and coming from a single source – Plaintiffs.

-14-

41.    The registrations embodying the BBG Marks are in full force and effect.

42.    Plaintiffs allege that Defendants' conduct constitutes trademark infringement under 15 U.S.C. § 1114 et seq.

43.    Defendants' use of the BBG Marks on stickers bearing NCIC's international toll free telephone calling numbers, on stickers placed over BBG's dialing instructions, and in a domain name used as an email server relating to competing services in interstate commerce constitutes trademark infringement, trademark dilution and engenders a belief by the public that the services are offered, sponsored, authorized, licensed by or otherwise connected with Plaintiffs or come from the same source as Plaintiffs' services and are of the same quality as that assured by the BBG Marks.

44.    Defendants' activities have caused confusion and are likely to continue leading to and resulting in confusion, mistake or deception, and are likely to cause the public to believe that Plaintiffs have produced, sponsored, authorized, licensed or is otherwise connected or affiliated with Defendants' commercial and business activities, all to the detriment of Plaintiffs.

45.    Upon information and belief, Defendants' acts are deliberate and intended to confuse the public as to the source of Defendants' services and to injure Plaintiffs and reap the benefit of Plaintiffs' goodwill associated with the BBG Marks.

46.    As a direct and proximate result of Defendants' willful and unlawful conduct, the public has been injured and Plaintiffs have been injured and will continue to suffer injury to their business and reputation unless Defendants are restrained by this Court from infringing the BBG Marks.

47.    Plaintiffs have no adequate remedy at law.

FIRST AMENDED COMPLAINT

48.     In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the BBG Marks for any purpose, including but not limited to within the BBGCOM.COM domain name, and to recover from Defendants all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain as a result of such infringing acts, and all gains, profits and advantages obtained by Defendants as a result thereof, in an amount not yet known, as well as the costs and trebling of damages pursuant to 15 U.S.C. § 1117.

### SECOND CLAIM FOR RELIEF

### (Federal Dilution of Trademark -- 15 U.S.C. § 1125(c))

49.     BBG repeats and realleges the allegations of paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50.     The BBG Marks are inherently distinctive and "famous" within the meaning of Lanham Act § 43(c), 15 U.S.C. § 1125(c).

51.     Defendants' acts described above have diluted and continue to dilute Plaintiffs' unique and distinctive BBG Marks. These acts violate Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c), and have injured and, unless immediately restrained, will continue to injure Plaintiffs, causing damage to Plaintiffs in an amount to be determined at trial, as well as irreparable injury to Plaintiffs' goodwill and reputation associated with the value of the BBG Marks.

52.     Upon information and belief, Defendants' use of the BBG mark within the BBGCOM.COM domain name, among other domain names registered by Defendants, began after the BBG Marks became famous.

53.     Upon information and belief, Defendants acted knowingly, deliberately and willfully with the intent to trade on Plaintiffs' reputation and to dilute the BBG Marks. Defendants' conduct is willful, wanton and egregious.

54.     Plaintiffs have no adequate remedy at law to compensate them fully for the damages that have been caused and which will continue to be caused by Defendants' unlawful acts, unless they are enjoined by this Court.

55.     In light of the foregoing, Plaintiffs are entitled to injunctive relief prohibiting Defendants from using the BBG Marks, and to recover all damages, including attorneys' fees, that Plaintiffs have sustained and will sustain, and all gains, profits and advantages obtained by Defendants as a result of their infringing acts alleged above in an amount not yet known, and the costs of this action.

### THIRD CLAIM FOR RELIEF

### (Anti-Cybersquatting under 15 U.S. C. § 1125(d))

56.     BBG repeats and realleges the allegations contained in paragraphs 1 through 55 of the Complaint as if fully set forth herein.

57.     As a direct result of Plaintiffs' long and extensive experience, care, and skill in marketing the BBG telecommunications services under the BBG Marks, Plaintiffs have acquired a reputation for excellence and commands extensive sales throughout the United States and the world. The BBG Marks are inherently distinctive and famous.

58.     The BBG Marks are not descriptive of the service BBG provides.  The BBG Marks are arbitrary, fanciful, and inherently distinctive.

59.     The defendants, by using the BBG Marks in connection with the defendants' Internet website and by the registration and use of the Internet domain name *www.bbgcom.com*

incorporating the BBG Marks which were famous and distinctive at the time of registration of the domain name for *www.bbgcom.com*, are diluting the goodwill of Plaintiffs and the distinctive quality of the BBG Marks. Defendants' activities constitute a violation of 15 U.S.C. § 1125(d) and constitutes cybersquatting.

60.    Defendants, by using the BBG Marks in connection with the Defendants' Internet website for email traffic as alleged herein, are misleading the public in the industry into believing that the Defendants and their business, products, and services are associated with, sponsored by, or otherwise authorized by Plaintiffs and thereby tarnish the distinctive quality of the BBG Marks.

61.    Defendants, by using the BBG Marks in connection with the defendants' Internet website and by the registration and use of the Internet domain name *www.bbgcom.com* which is identical or confusingly similar to the BBG Marks and to the BBG domain name, are misleading the public into falsely believing that Defendants and their business, products, and services are associated with, sponsored by, or otherwise authorized by Plaintiffs.

62.    Defendants, by using the BBG Marks in connection with the Defendants, have a bad faith intent to profit from the unauthorized use of the BBG Marks in their Internet domain name and are cybersquatting, as evidenced by:

      (a)    The defendants knew and know of Plaintiffs' rights in their trademarks, service marks, and trade names;

      (b)    The *www.bbgcom.com* domain name registered by defendants is nearly identical or confusingly similar to BBG Comm.'s federally registered trademarks, service marks, trade names, and domain name;

                            FIRST AMENDED COMPLAINT

(c) The defendants have failed to use the *www.bbgcom.com* domain name in connection with a *bona fide* offering of any authorized goods or services or in connection with a noncommercial or fair use;

(d) The defendants have intended to divert individual seeking to contact Plaintiffs' employees via their own emails to the *www.bbgcom.com* email server by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the emails sent from or to *www.bbgcom.com*;

(e) The defendants have registered the *www.bbgcom.com* domain name which the defendants knew was nearly identical or confusingly similar to Plaintiffs' distinctive trademarks, service marks, trade names, and domain name;

(f) The defendants' provided material and misleading false contact information when applying for the registration of the domain name, and intentionally failed to maintain accurate contact information for the registration of the domain name.

63. The defendants' cybersquatting and acts as alleged herein are likely to deprive Plaintiffs of the benefit of the goodwill attached to the BBG Marks, injure Plaintiffs' business reputation, and dilute the distinctive quality of the BBG Marks.

64. As a direct and proximate result of the defendants' acts of cybersquatting, Plaintiffs have been and continue to be injured in their business and property and have sustained and will continue to sustain substantial damage to their business, goodwill, reputation, and profits in an amount not presently known.

65.     Plaintiffs have no adequate remedy at law against the defendants' acts of cybersquatting as alleged herein.  Unless Defendants are preliminarily and permanently enjoined from their acts of cybersquatting, Plaintiffs will continue to suffer irreparable harm.

## FOURTH CLAIM FOR RELIEF

### (Electronic Communications Privacy Act – 18 U.S.C. §§ 2510, et seq.)

66.     BBG repeats and realleges the allegations of paragraphs 1 through 65 of the Complaint as if fully set forth herein.

67.     By engaging in the acts alleged in this Complaint, Defendants intentionally intercepted, endeavored to intercept, or procured other persons to intercept or endeavor to intercept, electronic communications between Plaintiffs and third parties and internal electronic communications between Plaintiffs' personnel in violation of 18 U.S.C. 2511.

68.     By engaging in the acts alleged in this Complaint, Defendants intentionally disclosed, or endeavored to disclose, to other persons the contents of electronic communications, that they knew or had reason to know were obtained through the interception of electronic communications between Plaintiffs and third parties and internal electronic communications between Plaintiffs' personnel in violation of 18 U.S.C. 2511.

69.     By engaging in the acts alleged in this Complaint, Defendants intentionally used, or endeavored to use, the contents of electronic communications, that they knew or had reason to know were obtained through the interception of electronic communications between Plaintiffs and third parties and internal electronic communications between Plaintiffs' personnel in violation of 18 U.S.C. 2511.

70.    As a direct and proximate result of the defendants' acts of intercepting, disclosing, and using electronic communications between Plaintiffs and third parties and internal electronic communications between Plaintiffs' personnel in violation of 18 U.S.C. 2511, Plaintiffs have been and continue to be injured in their business and property and have sustained and will continue to sustain substantial damage to their business, goodwill, reputation, and profits in an amount not presently known.  In addition, as a direct and proximate result of defendants' acts, defendants have been unjustly enriched in an amount not presently known.

71.    Plaintiffs have no adequate remedy at law against the defendants' acts of intercepting, disclosing, and using electronic communications between Plaintiffs and third parties and internal electronic communications between Plaintiffs' personnel in violation of 18 U.S.C. 2511.  Unless Defendants are preliminarily and permanently enjoined from their acts of intercepting, disclosing, and using electronic communications between Plaintiffs and third parties and internal electronic communications between Plaintiffs' personnel in violation of 18 U.S.C. 2511, Plaintiffs will continue to suffer irreparable harm.

## FIFTH CLAIM FOR RELIEF

### (Texas Common Law Trademark Infringement)

72.    BBG repeats and realleges the allegations of paragraphs 1 through 71 of the Complaint as if fully set forth herein.

73.    The actions of Defendants complained of herein constitute an infringement of Plaintiffs' common law rights in the BBG Marks, all of which constitute unfair, unlawful and fraudulent business practices.

74.     Upon information and belief, the acts and conduct of Defendants complained of constitute willful and deliberate unfair competition and will continue in willful and wanton disregard of Plaintiffs' valuable trademark rights.

75.     By reason of the foregoing, Plaintiffs are being damaged by Defendants' willful use of the BBG Marks in the manner set forth above and will continue to be damaged unless Defendants are enjoined from using the BBG Marks.  The foregoing acts of Defendants will continue unless Defendants are restrained by this Court. Plaintiffs are is therefore entitled to injunctive relief under Tex. Civ. Prac. & Rem. Code sec. 65.001, *et seq.*

76.     Plaintiffs will be irreparably injured by the continued acts of Defendants, unless such acts are enjoined.

77.     Plaintiffs have no adequate remedy at law.

## SIXTH CLAIM FOR RELIEF

### (Trademark Dilution – Tex. Bus. & Com. Code sec. 16.29)

78.     BBG repeats and realleges the allegations of paragraphs 1 through 77 of the Complaint as if fully set forth herein.

79.     The BBG Marks are distinctive marks in the State of Texas by virtue of their substantial inherent and acquired distinctiveness, extensive use in the State of Texas and the extensive advertising and wide spread publicity of the marks in the State of Texas.

80.     As a result of the BBG Marks' substantial inherent and acquired distinctiveness, extensive use in the State of Texas and the extensive advertising and publicity of the marks in the State of Texas, the BBG Marks have become strong and are widely renowned.

81.     The actions of Defendants complained of herein are likely to injure the business reputation and dilute the distinctive quality of Plaintiffs' famous BBG Marks.

82.    The foregoing acts of Defendants constitute dilution and injury to business reputation in violation of Section 16.29, Tex. Bus. & Com. Code.

83.    By reason of the foregoing, Plaintiffs are being damaged by Defendants' use of the BBG Marks and will continue to be damaged unless Defendants are immediately enjoined under Tex. Civ. Prac. & Rem. Code sec. 65.001, *et seq.* from using the BBG Marks.

84.    Plaintiffs will be irreparably injured by the continued acts of Defendants, unless such acts are enjoined.

85.    Plaintiffs have no adequate remedy at law.

## SEVENTH CLAIM FOR RELIEF

### (Misappropriation of BBG's Trade Secrets)

86.    BBG repeats and realleges the allegations of paragraphs 1 through 85 of the Complaint as if fully set forth herein.

87.    The BBG Confidential Information constitutes trade secrets protected under Texas law ("BBG Trade Secrets").

88.    The BBG Trade Secrets have substantial economic value to Plaintiffs in that they are crucial to Plaintiffs' marketing of highly competitive access services for the telecommunications industry.

89.    Plaintiffs have implemented a broad range of procedures and infrastructure to insure that the BBG Trade Secrets remain confidential and a secret.

90.    Plaintiffs have not authorized any of their employees, including former employees, to disclose the BBG Trade Secrets to NCIC.

91.    Plaintiffs are informed and believe, and upon such information and belief allege, that Defendants have actually acquired information about the BBG Trade Secrets by improper

means, including, without limitation, theft, misrepresentation, and by means of using an internet domain name BBGCOM.COM set up to receive all email sent to anyone at that domain name in order to improperly obtain such information.  Such acts constitute misappropriation of trade secrets under the trade secret laws of Texas..

92.     Plaintiffs are informed and believe, and upon such information and belief allege, that Defendants have misappropriated and threatened to misappropriate, have used and threatened to use, and/or have disclosed and threatened to disclose the BBG Trade Secret information.

93.     As a proximate result of Defendants' actual and threatened misappropriation of the BBG Trade Secrets, Plaintiffs have suffered substantial damages.  Defendants have and will continue to receive the benefits of the BBG Trade Secrets, which have aided and will continue to aid Defendants and other competitors of Plaintiffs to compete unfairly against Plaintiffs in a highly competitive industry.

94.     The conduct of Defendants has caused and will continue to cause irreparable harm to Plaintiffs.  Unless enjoined, Defendants will continue to receive the benefits of the misappropriated BBG Trade Secrets, which have aided and will continue to aid Defendants to compete unfairly against Plaintiffs in a highly competitive industry.  Moreover, through the use of ill-gotten information, NCIC will continue to deceive the public, expand its business by soliciting agents and customers of Plaintiffs, and will disclose the BBG Trade Secrets to third parties.  Plaintiffs will forever lose the value of the significant investment in time and money in their trade secrets.  Plaintiffs' competitive position, based on their valuable knowledge, access and use of the BBG Trade Secrets will be irretrievably lost.  Plaintiffs have no adequate remedy at law.

95.     Plaintiffs are informed and believe, and based on such information and belief allege, that in misappropriating and threatening to misappropriate the BBG Trade Secrets, and engaging in the conduct and omissions alleged herein, Defendants are guilty of oppression, fraud and malice.  Plaintiffs are entitled to exemplary or punitive damages in an amount appropriate to punish Defendants pursuant to Tex. Civ. Prac. & Rem. Code sec. 41.001, *et seq.*

## EIGHTH CLAIM FOR RELIEF

### (Unfair Competition by Misappropriation)

96.     BBG repeats and realleges the allegations of paragraphs 1 through 95 of the Complaint as if fully set forth herein.

97.     The BBG Trade Secrets have substantial economic value to Plaintiffs in that they are crucial to Plaintiffs' marketing of highly competitive access services for the telecommunications industry.

98.     Plaintiffs are informed and believe, and upon such information and belief alleges, that Defendants have actually acquired information about the BBG Trade Secrets by improper means, including, without limitation, theft, misrepresentation, and by means of using an internet domain name BBGCOM.COM setup to receive all email sent to anyone at that domain in order to improperly obtain such information.

99.     By misappropriation, Defendants are and continue to reap the benefits of Plaintiffs' efforts without committing the time and resources to develop their own distinctive trademarks and business goodwill.

100.    As a direct and proximate result of Defendants' unlawful conduct alleged herein, Plaintiffs have sustained damages of an amount to be proved at trial.  Defendants' unlawful

FIRST AMENDED COMPLAINT

conduct alleged herein has caused and, unless enjoined, will continue to cause substantial competitive injury to Plaintiffs.

101.   Plaintiffs are entitled to exemplary or punitive damages in an amount appropriate to punish Defendants pursuant to Tex. Civ. Prac. & Rem. Code sec. 41.001, *et seq.*

### NINTH CLAIM FOR RELIEF

### (Intentional Interference with Existing Economic Relationships)

102.   BBG repeats and realleges the allegations of paragraphs 1 through 101 of the Complaint as if fully set forth herein.

103.   Defendants knew of various contractual and business relationships between Plaintiffs (directly or through a wholly owned subsidiary) and their customers.  For example, by registering the BBGCOM.COM domain name and setting it up to receive all email sent to anyone at that domain, Defendants learned of additional business relationships between Plaintiffs and customers.  In addition, Defendants knew that Plaintiffs had exclusive contracts with third parties (including without limitation telephone companies, hotels, seaports, and airports) throughout the world that entitled Plaintiffs to place international dialing instructions on telephones controlled by those third parties to assist consumers in making telephone calls to the United States and direct them to Plaintiffs' operator centers.

104.   Despite this knowledge, Plaintiffs are informed and believe and thereon allege that Defendants intended to and did interfere with Plaintiffs' contractual relations with their existing customers and sales agents.

105.   By reason of Defendants' unjustified and wrongful interference with Plaintiffs' contracts (either directly or through a wholly owned subsidiary) with their customers and agents and as a proximate result of the actions of Defendants alleged herein, Plaintiffs have suffered

FIRST AMENDED COMPLAINT

extensive damage, the precise amount of which is presently uncertain. Plaintiffs will seek leave of this Court to amend their complaint to reflect the true amount of the damage when it becomes known.

106.   In doing the acts alleged herein, Defendants acted intentionally and with oppression, fraud and malice, and Plaintiffs are entitled to punitive damages from Defendants pursuant to Tex. Civ. Prac. & Rem. Code sec. 41.001, *et seq*.

## TENTH CLAIM FOR RELIEF

### (Intentional Interference with Prospective Economic Relationships)

107.   BBG incorporates the allegations of paragraphs 1 through 106 of this complaint as though fully set forth herein.

108.   Defendants knew of various economic relationships between Plaintiffs (either directly or through a wholly owned subsidiary) and their customers, containing a probable future economic benefit or advantage to Plaintiffs. For example, by registering the BBGCOM.COM domain name and setting it up to receive all email sent to anyone at that domain, Defendants learned of economic relationships between Plaintiffs and customers, containing a probable future economic benefit or advantage to Plaintiffs. In addition, Defendants knew that Plaintiffs had exclusive contracts (either directly or through wholly owned subsidiaries) with third parties (including without limitation telephone companies, hotels, seaports, and airports) throughout the world that entitled Plaintiffs to place international dialing instructions on telephones controlled by those third parties to assist consumers in making telephone calls to the United States and direct them to Plaintiffs' operator centers. Thus, Defendants knew that consumers would be likely to follow the instructions located on a third party telephone and enter into an economic relationship with Plaintiffs to effect an international telephone call.

-27-

109.   Despite their knowledge, Defendants intentionally engaged in wrongful conduct designed to interfere with or disrupt the relationship between Plaintiffs and their prospective customers.

110.   As the result of Defendants' actions, the economic relationship between Plaintiffs and their prospective customers was actually interfered with or disrupted, as alleged above. Defendants' wrongful conduct was designed to and did interfere with or disrupt these relationships, resulting in damage to Plaintiffs.

111.   Defendants' conduct was wrongful by some measure beyond the fact of the interference, in that Defendants engaged in a number of unlawful acts including without limitation (a)seeking to exclude Plaintiffs from engaging in competitive activities; (b) intercepting Plaintiffs' emails and electronic communications; (c) placing stickers bearing NCIC's international toll free telephone calling numbers over those of Plaintiffs' contracted telephones in various countries throughout the world; (d) defacing or destroying Plaintiffs' instructions placed on phones in contracted in locations throughout the world (including hotels, airports, seaports, etc.) so that consumers will be directed to utilize NCIC's international telephone calling numbers; and (e) bribing telephone operators in hotels under exclusive contract with Plaintiffs to divert calls to NCIC's international operator centers, all in furtherance of their efforts to further their business efforts and market share, thereby constituting an act of unfair competition.

112.   As a proximate result of Defendants' actions, Plaintiffs have lost prospective economic advantage, and have been damaged substantially, the precise amount of which is presently uncertain.  Plaintiffs will seek leave of this Court to amend their complaint to reflect the true amount of the damages when the same have become known.

113.   In doing the acts herein alleged, Defendants acted intentionally and with oppression, fraud and malice, thereby entitling Plaintiffs to an award of punitive damages pursuant to Tex. Civ. Prac. & Rem. Code sec. 41.001, *et seq.*

## TENTH CLAIM FOR RELIEF

### (Conversion)

114.   BBG incorporates the allegations of paragraphs 1 through 113 of this complaint as though fully set forth herein.

115.   On information and belief, Defendants converted Plaintiffs' personal property by means of using an internet domain name set up to receive all email sent to anyone at the BBGCOM.COM domain name in order to improperly obtain Plaintiffs' trade secret information.

116.   As a direct and proximate result of Defendants' acts of conversion, Plaintiffs have sustained damages of an amount to be proved at trial.  Plaintiffs have also suffered irreparable injury as a result of Defendants' conversion and will continue to suffer irreparable injury unless Defendants are enjoined from utilizing the fruits of their conversion.

117.   Each of the acts of conversion were done willfully and maliciously by Defendants, entitling Plaintiffs to punitive damages pursuant to Tex. Civ. Prac. & Rem. Code sec. 41.001, *et seq.*

WHEREFORE, BBG Comm. and BBG Holdings respectfully pray that this Court enter judgment in their favor and against Defendants as follows:

A.   Enter judgment that Defendants have infringed upon Plaintiffs' rights in the BBG Marks through the use of "BBG" in the internet domain name BBGCOM.COM which is a substantially indistinguishable mark in the use, promotion and sale of their goods.

B.      Enter judgment that Defendants' use of "BBG" in the internet domain name BBGCOM.COM is likely to cause confusion, to cause mistake or to deceive and is an infringement of Plaintiffs' rights in BBG Comm.s' federally registered trademarks and a violation of 15 U.S.C. § 1125(a).

C.      Enter judgment that Defendants' use of the BBG Marks on competing telecommunications services or in a domain name used for any manner, including but not limited for email addresses is likely to cause dilution of Plaintiffs' rights in BBG Comm.'s famous federally registered trademarks in violation of 15 U.S.C. § 1125(c).

D.      Enter judgment that Defendants use of "BBG" within the internet domain name BBGCOM.COM constitutes cybersquatting and order the transfer of the BBGCOM.COM domain name to BBG Comm.

E.      Enter judgment that Defendants' use of the BBG Marks is likely to cause dilution of Plaintiffs' rights in their famous trademarks in violation of Tex. Bus. & Com. Code sec. 16.29.

F.      Enter judgment that Defendants' use of the BBG Marks constitutes unfair competition in violation of Texas law.

G.      Enter judgment that Defendant's use of "BBG" in connection with an email account set up to receive all email sent to anyone at the BBGCOM.COM domain name constitutes misappropriation of trade secrets under Texas law.

H.      Grant temporary, preliminary and permanent injunctive relief restraining Defendants, their agents, servants, employees, officers, associates, attorneys, and all persons acting by, through, or in concert with any of them, from:

-30-

1. Directly or indirectly infringing the BBG Marks or any marks similar thereto, as fully described in this Amended Complaint, in any manner, including generally, but not limited to using any internet domain name BBGCOM.COM, and similar domain names, and setting up any domain name with the intent to intercept email directed to Plaintiffs' personnel;

2. Using any trademark, trade name, logo or design that falsely represents that, or is likely to confuse, mislead, or deceive purchasers, Defendants' are associated with Plaintiffs or are in some way connected or affiliated with Plaintiffs.

3. Engaging in any conduct that falsely represents that, or is likely to confuse, mislead, or deceive customers, end users and Plaintiffs sales representatives, and/or members of the public to believe that the actions of Defendants are connected with Plaintiffs, are sponsored, approved or licensed by Plaintiffs, or are in some way connected or affiliated with Plaintiffs.

I.      Order an accounting by Defendants of all gains, profits and advantages derived from their wrongful acts;

J.      Award BBG all of Defendants' profits (including cost savings) and all damages sustained by Plaintiffs as a result of Defendants' wrongful acts, and such other compensatory damages as the Court determines to be fair and appropriate, pursuant to 15 U.S.C. § 1117;

K.      Award treble damages in the amount of Defendants' profits (including cost savings) or Plaintiffs' damages, whichever is greater, for willful infringement pursuant to 15 U.S.C. § 1117;

W97-SD:DFF\51319811.1                                                 FIRST AMENDED COMPLAINT

L.      Award statutory damages in the maximum amount permitted under the relevant statutes;

M.     Award exemplary and punitive damages;

N.      Award applicable interest, costs, disbursements and attorneys' fees, pursuant to 15 U.S.C. § 1117 and Texas law; and

O.      Award such other and further relief as the Court deems just and proper.

Respectfully submitted,

_Otis Carroll_ by perm.

Otis W. Carroll
Texas Bar No. 03895700
Wesley Hill
Texas Bar No. 24032294
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway Ave., Suite 500
Tyler, Texas 75703
(903) 561-1600
(903) 581-1071 (fax)

ATTORNEYS FOR PLAINTIFFS
BBG COMMUNICATIONS, INC. and
BBG HOLDINGS LIMITED

OF COUNSEL

TAWNYA R. WOJCIECHOWSKI
CAL. BAR NO. 180,063
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California  92626-1925
Telephone:    (714) 513-5100
Facsimile:    (714) 513-5130

FRANK J. JOHNSON, JR.
CAL. BAR NO. 174882
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12544 High Bluff Drive, Suite 300
San Diego, California  92130-3051
Telephone:    858-720-8900
Facsimile:    858-509-3691

FIRST AMENDED COMPLAINT

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all parties via United States mail and electronic delivery this _15th_ day of _March_, _2004_.

Wesley Hill