

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

FILED-CLERK
U.S. DISTRICT COURT

04 MAR 17 PM 4:18

TEXAS-EASTERN

BY

1. BBG COMMUNCIATIONS, INC.,
2. BBG HOLDINGS LIMITED,

           Plaintiffs,

v.

1. NETWORK COMMUNICATIONS
   INTERNATIONAL CORP.,
2. BLUE PHONE LIMITED,
3. WILLIAM POPE,
4. JAY WALTERS,
5. JEFFERY WALTERS

           Defendants.

Case No. 2:03-CV-227
(Ward)

---

## THIRD-PARTY DEFENDANTS RAFAEL GALICOT, RICARDO SINGER, AND GREGORIO L. GALICOT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

---

## I.  INTRODUCTION

In a futile attempt to delay and complicate this litigation, defendant Network

Communications International Corp. ("NCIC") has filed an amended counterclaim, purporting to

state causes of action against ten individuals residing all over the world.  This motion to dismiss

for lack of personal jurisdiction relates to three of those individual third-party defendants, Rafael

Galicot, Ricardo Singer, and Gregorio L. Galicot (collectively referred to hereinafter as the

"Individuals"), who are each residents of the State of California.  *See* Fed. R. Civ. P. 12(b)(2).

## II. NCIC HAS NOT MET ITS BURDEN TO ALLEGE SUFFICIENT FACTS CONCERNING THE INDIVIDUALS' PURPORTED MINIMUM CONTACTS WITH TEXAS

For a court to exercise personal jurisdiction over a defendant, federal due process requires, "(1) that [the] defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Revell v. Lidov*, 317 F.3d 467, 470 (5th Cir. 2002) (citations and quotations omitted). NCIC bears the burden of proof to establish a *prima facie* case that the Individuals have sufficient minimum contacts with Texas so as to subject them to personal jurisdiction in a Texas federal court. *See Kelly v. Syria Shell Petroleum Development B.V.*, 213 F.3d 841, 854 (5th Cir. 2000).

Federal due process requirements of personal jurisdiction "must be met as to each defendant over whom a state court exercises jurisdiction." *Rush v. Savchuk*, 444 U.S. 320, 332 (1980) (emphasis added). Therefore, NCIC must have alleged facts sufficient to establish a separate *prima facie* case for personal jurisdiction over each of the three Individuals. *See id; see also Kelly*, 213 F.3d at 854.

Allegations of a plaintiff concerning the basis for personal jurisdiction must generally be accepted as true. *See Panda Brandywine Corp. v. Potomac Electric Power Co.*, 253 F.3d 865, 868-869 (5th Cir. 2001). However, acceptance of the truth of allegations "does not automatically mean that a prima facie case for specific jurisdiction has been presented." *Id.* A plaintiff's allegations must still succeed in demonstrating a defendant's "purposeful availment of the benefits and protections of and minimum contacts with the forum state." *Id.* If the mere allegation that an

2

intentional tort's harmful effects were felt in a forum sufficed to establish jurisdiction, a defendant could be forced to defend in a forum "no matter how frivolous or groundless the suit may be." *Id.* at 870. Furthermore, a plaintiff must make more than mere "conclusory" allegations to support an assertion of jurisdiction – there must be some other alleged evidence of a defendant's contacts with a forum beyond pure conclusions. *Id.*

## A.   NCIC Has Attempted, But Failed, To Allege Facts Regarding The Effects Of The Individuals' Conduct Sufficient To Support Specific Personal Jurisdiction

Sufficient minimum contacts can support either "general" or "specific" personal jurisdiction. *Revell*, 467 F.3d at 470. General jurisdiction may exist "where a defendant's contacts with the forum state are substantial and continuous and systematic but unrelated to the instant cause of action." *Religious Technology Center v. Dell Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003).

As the fundamental jurisdictional basis for the Counterclaim, NCIC alleges, "This court has personal jurisdiction over all third-party defendants because they committed intentional torts aimed at NCIC, a Texas Corporation, causing foreseeable harm to NCIC in Texas." Counterclaim, ¶ 12. Neither in that statement nor anywhere else in its more targeted allegations does NCIC allege the Individuals have established anything resembling "substantial and continuous and systematic" contacts with the state of Texas. *See Religious Technology Center*, 339 F.3d at 374. Therefore, any further inquiry into the appropriateness of general jurisdiction is unnecessary – general jurisdiction has not been alleged or demonstrated by NCIC.

Specific jurisdiction may exist when a nonresident defendant has "purposefully directed" its activities at the forum state or its residents, and the litigation "results from alleged injuries that arise out of or relate to those activities," such that it would "reasonably anticipate" being haled into court in that forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 474 (1985); *see also Religious Technology Center*, 339 F.3d at 375. NCIC has asserted it felt the effects of the Individuals' alleged torts in Texas, which is an attempt to establish specific jurisdiction "arising from or related to" those discrete and particularized tortious activities. *See Burger King*, 471 U.S. at 472; *see also* Counterclaim, ¶24(a-d, f, u) (alleging the more specific tortious actions presented as bases for jurisdiction).

The basic "effects test" for establishing minimum contacts has been given some credence by the United States Supreme Court, which held that the Florida-residing author and editor of an allegedly libelous article were subject to personal jurisdiction in California because the effects of their article were felt by its subject (an actress named Shirley Jones) in California. *Calder v. Jones*, 465 U.S. 783, 784, 788-790 (1984). Importantly, the decision in *Calder* involved facts in which the allegedly libelous story concerned a California resident, impugned her television career (which was centered in California), was drawn from California sources with phone calls to California, was read in draft version to Jones' husband who was in her California home (to elicit his comments), and had the brunt of its harm felt in California. *Id.* at 785-786, 788-789. Moreover, the article's magazine had by far its largest circulation in California. *Id.* at 785. The Supreme Court stated, "In sum, California is the focal point both of the story and of the harm suffered. Jurisdiction over petitioners is therefore proper in California based on the 'effects' of their Florida conduct in

4

California." *Id.* at 789 (emphasis added). The Supreme Court also expressly pointed out the defendants were not charged with "mere untargeted negligence," but that their actions were "expressly aimed" at California. *Id.* Under those circumstances and facts, jurisdiction over the defendants was proper in California. *Id.* at 790.

Taking *Calder* as a foundation, the Fifth Circuit has further honed the "effects" test to deal with situations more like the one at hand. It has emphasized that the "effects" test "is but <u>one</u> <u>facet</u> of the ordinary minimum contacts analysis, to be considered as part of the defendant's full range of contacts with the forum." *Revell*, 317 F.3d at 473 (emphasis added). The "effects" test is <u>not</u> a substitute for demonstrating minimum contacts that amount to purposeful availment of the benefits of a forum. *Panda Brandywine*, 253 F.3d at 869.

The mere fact that a plaintiff resides in Texas and has suffered harm in Texas "will not alone support jurisdiction under *Calder*." *Revell*, 317 F.3d at 473. A defendant cannot broadly "purposefully avail [itself] of 'some forum someplace,'" but must "reasonably anticipate" being haled into a particular forum. *Id.* at 475 (citations omitted). Moreover, "foreseeability" of causing injury in a forum alone is not a "sufficient benchmark for specific jurisdiction" – there must be specific acts by the defendant directed toward the forum, suggesting reasonable anticipation of a potential suit. *Panda Brandywine*, 253 F.3d at 869. The fact that a plaintiff has been harmed by a nonresident defendant's tort in a particular forum does not alone trigger personal jurisdiction – there must be "something more." *See Management Insights, Inc. v. CIC Enterprises, Inc.*, 194 F.Supp.2d 520, 526 (N.D. Tex. 2001); *see also Panda Brandywine*, 253 F.3d at 869 (defendant must "purposefully

5

direct" its efforts toward forum state residents to be subject to personal jurisdiction); *Revell*, 317 F.3d at 473 (the forum must be the "focal point" of defendant's actions); *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 773 (5th Cir. 1988) (defendant must have "expressly aimed" its allegedly tortious activities at the forum, and the "mere fortuity" that a plaintiff who is injured by a defendant's actions happens to reside in a particular forum will <u>not</u> support jurisdiction).

Overall, the Fifth Circuit has stated a long-standing formulation: "Whether there is purposeful availment when an out of state act causes effects within the state depends upon the interplay of three factors: (1) the existence and degree of purposefulness with which the effect in that forum was created; (2) whether the defendant has other substantial contacts with the forum unrelated to the suit; and (3) the substantiality of the effect itself. In all cases the effect must to some degree be purposefully created." *Prejean v. Sonantrach, Inc.*, 652 F.2d 1260, 1269 (5th Cir. 1981).

Under those standards, NCIC's allegations fall far short of what is required to establish a basis for personal jurisdiction under the "effects" test.

## B.    NCIC Has Not Established A *Prima Facie* Case For Personal Jurisdiction In Texas As To Any of the Individuals

Because jurisdiction must be analyzed as to each individual defendant, the alleged minimum contacts of each Individual will be addressed separately. *See Rush v. Savchuk*, 444 U.S. at 332. As a preface to those individual examinations, it should be noted that, NCIC has generally alleged the effects of the Individuals' actions were felt by NCIC in Texas, asserting that personal jurisdiction over them should hold in Texas because "they committed intentional torts aimed at NCIC, a Texas corporation, causing foreseeable harm to NCIC in Texas." Counterclaim, ¶12.

6

Those conclusory allegations are not themselves sufficient to establish personal jurisdiction under

Fifth Circuit precedent. *See Panda Brandywine*, 253 F.3d at 868-869.


1. *NCIC Has Not Alleged Facts Sufficient To Demonstrate Rafael Galicot's Minimum Contacts with Texas*

NCIC alleges in the Counterclaim, ¶24(u):


> "In August, 2003, Rafael Galicot offered $400,000.00 to Berlin Key, a joint venturer with NCIC for NCIC Bahamas in exchange for Mr. Key causing NCIC to cease its activities in the Bahamas. Additionally, Rafael Galicot offered a substantial but yet unknown sum of money to Charles Lightbourne, also a joint venturer with NCIC Bahamas who subsequently closed the business operations of NCIC Bahamas without notice to NCIC. NCIC phones in the Bahamas have now been reprogrammed to BBG without any compensation or notice to NCIC."

(Emphasis added).


It is important to remember that NCIC bears the burden of establishing a *prima facie*

case of Rafael Galicot's ("R. Galicot's") minimum contacts with Texas. *See Kelly*, 213 F.3d at 854.

R. Galicot is a resident of California. Dec. R. Galicot, ¶2. NCIC has not only failed to allege R.

Galicot's conduct created minimum contacts with Texas – aside from the general "effects" theory

stated in the Counterclaim, ¶12, it has failed to allege R. Galicot's conduct created any contacts with

Texas.


The mere fact that NCIC resides in Texas and allegedly suffered injury in Texas from

R. Galicot's actions "will not alone support jurisdiction." *See Revell*, 317 F.3d at 473. Unless R.

Galicot "expressly aimed" his allegedly tortious conduct at Texas, the "mere fortuity" that NCIC

resides in Texas will not support personal jurisdiction over R. Galicot in Texas. *See Southmark*, 851 F.2d at 773. For personal jurisdiction to hold based on harmful effects, R. Galicot must have "purposefully directed" his conduct towards Texas, making it the "focal point of is actions." *See Panda Brandywine*, 253 F.3d at 869; *Revell*, 317 F.3d at 473.

For instance, in the *Southmark* case, even though the plaintiff Southmark Corporation (a Texas resident) accused the nonresident USLICO Corporation of tortiously interfering with a stock options contract Southmark had with Life Investors, Inc., the Fifth Circuit held that Southmark's alleged suffering of harmful effects in Texas from the alleged interference was not sufficient to establish personal jurisdiction over USLICO in Texas. *Southmark*, 851 F.2d at 771-773. The contract at issue was not made in Texas, to be performed in Texas, or governed by Texas law. *Id.* at 772. The other party to the agreement was not a Texas resident and the company with the stock at issue did not do business in Texas, nor was the stock purchased or located in Texas. *Id.* at 773. Under those facts, the Court declined to find personal jurisdiction: "In short, nothing in the record indicates that USLICO expressly aimed its allegedly tortious activities at Texas, or that Texas is even the focal point of USLICO's tortious conduct." *Id.* (emphasis added) Specific personal jurisdiction was denied because the defendant's contact with Texas rested on the "mere fortuity" that the plaintiff happened to be a resident of the forum. *Id.;*

Like the contracts at issue in *Southmark*, NCIC has not alleged and cannot allege here that the Bahaman contract deals were to have been made in Texas or governed by Texas law, or that the deals were to be performed in Texas or carried out by residents of Texas. *See Southmark*, 851 F.2d at 772-773. Also similar to *Southmark*, NCIC has not alleged R. Galicot committed acts purposefully directed at Texas such that he would "reasonably anticipate" being sued in Texas, and its general allegation that the harm was "foreseeable" is insufficient under Fifth Circuit precedent. *See Panda Brandywine*, 253 F.3d at 869; *see also* Counterclaim, ¶12. NCIC's allegations relate entirely to actions directed at the <u>Bahamas</u>, so its allegation of the foreseeability of harm in Texas is ineffectual. Also, the general allegation that R. Galicot aimed his conduct at NCIC is of no import – R. Galicot must have aimed his conduct specifically at <u>Texas</u>. *See* Counterclaim, ¶12; *see also Southmark*, 851 F.2d at 773; *Panda Brandywine*, 253 F.3d at 869; *Revell*, 317 F.3d at 473.

Any reasonable reading of the allegations against R. Galicot leads to the conclusion that the focal point of his alleged conduct was the <u>Bahamas</u>, not Texas. *See* Counterclaim, ¶24(u). R. Galicot allegedly took actions harming NCIC's business that were purposefully directed at the <u>Bahamas</u> and were expressly aimed to affect operations in the <u>Bahamas</u>. *See id.* Also, like the allegedly slanderous call in *Management Insights* directed at a forum other than the one in which personal jurisdiction was sought, R. Galicot's alleged interferences were directed at the Bahamas (not Texas), and there are no allegations that NCIC lost contracts in Texas or that R. Galicot's comments were purposefully directed at Texas – thus, the "something more" beyond mere effects being felt in Texas is lacking here. *See Management Insights*, 194 F.Supp.2d at 525-526. The "mere fortuity" that NCIC resides in Texas and allegedly felt some harmful effects there while R. Galicot was

allegedly committing tortious acts with the sole geographic focus of the Bahamas is not sufficient to establish personal jurisdiction over R. Galicot in Texas. *See Southmark*, 851 F.2d at 773.

The fact that harmful effects of R. Galicot's conduct may have been felt in Texas is only one facet of the minimum contacts analysis, and there are no allegations that R. Galicot has any other contacts with Texas at all. *See Revell*, 317 F.3d at 473. There are no allegations that R. Galicot regularly visits Texas, makes sales pitches or actual sales in Texas, owns property in Texas, or is a party to any contracts governed by Texas law – nor could it even make such allegations. *See* Dec. R. Galicot, ¶¶3-6. NCIC has relied purely upon its allegations that the tangential effects of R. Galicot's conduct were felt by NCIC in Texas, and has failed to allege that R. Galicot has other, even minor contacts with Texas. Because the "effects" test is not to be used as "a substitute for demonstrating minimum contacts that amount to purposeful availment of the benefits of a forum," NCIC's failure to allege R. Galicot has any contacts with Texas besides the alleged effects he created there further dooms NCIC's assertion of personal jurisdiction. *See Panda Brandywine*, 253 F.3d at 869.

Accordingly, NCIC has failed to fulfill its burden to establish a *prima facie* case of minimum contacts between R. Galicot and Texas. *See Kelly*, 213 F.3d at 854. At most, NCIC has alleged R. Galicot's actions directed at the Bahamas harmed it in Texas because of the "mere fortuity" that its business resides in Texas, which is not alone enough to establish personal jurisdiction over R. Galicot. *See Southmark*, 851 F.2d at 773. This motion to dismiss for lack of personal jurisdiction over R. Galicot should therefore be granted.

2.   *NCIC Has Not Alleged Facts Sufficient To Demonstrate Ricardo Singer's Minimum Contacts with Texas*

Although Ricardo Singer ("Singer") has been accused of several misdeeds, none of the allegations against him are sufficient to establish a basis for personal jurisdiction over Singer in Texas. Again, NCIC bears the burden of establishing a *prima facie* case of minimum contacts between Singer and Texas. *See Kelly*, 213 F.3d at 854. Singer is a resident of California. Dec. Singer, ¶2. As with R. Galicot, NCIC has totally failed to allege Singer has any contacts with Texas other than the purported fact his conduct aimed at fora other than Texas created harmful effects which were ultimately felt in Texas in some way, which allegations are not sufficient to establish personal jurisdiction over Singer in Texas. *See Southmark*, 851 F.2d at 773.

Here, NCIC's allegations each involve conduct by Singer aimed at geographic locales in the Caribbean, or conduct that was generally directed at NCIC customers without any allegation of where those customers may have been – NCIC does not allege Singer's conduct was purposefully directed at <u>Texas</u>. *See* Counterclaim, ¶24(a, b, c, f). Singer allegedly made defamatory comments that were dispersed to NCIC customers in general with <u>no</u> <u>specific</u> <u>target</u> <u>locale</u> <u>alleged</u> (Counterclaim, ¶24(a)), were aimed at <u>Martinique</u> in the Caribbean (Counterclaim, ¶24(b)), or were aimed at <u>Aruba</u> (Counterclaim, ¶24(f)), and he allegedly acted to interfere with contracts specifically in <u>St. Maarten</u> in the Caribbean (Counterclaim, ¶24(c)).

The common thread is clear – NCIC has again failed to allege any conduct by Singer "purposefully directed" at Texas or with Texas as its "focal point," which would be necessary for its "effects" test allegations to create personal jurisdiction over Singer in Texas. *See Panda*

11

*Brandywine*, 253 F.3d at 869; *Revell*, 317 F.3d at 473. The mere fact that NCIC resides in Texas and has allegedly suffered injury in Texas as a result of Singer's actions "will not alone support jurisdiction." *See Revell*, 317 F.3d at 473. Unless Singer "expressly aimed" his allegedly tortious conduct at Texas, the "mere fortuity" that NCIC resides in Texas will not support personal jurisdiction over Singer in Texas. *See Southmark*, 851 F.2d at 773. Because each of NCIC's allegations purport that Singer engaged in conduct aimed at Caribbean fora (not Texas) or that was without any alleged aim, NCIC has failed to meet its burden to prove that Singer "expressly aimed" his actions toward Texas such that personal jurisdiction in Texas would be constitutionally proper. *See id.* NCIC has not alleged Singer committed acts purposefully directed at Texas such that he would "reasonably anticipate" being sued in Texas, and its general allegation that the harm was "foreseeable" is insufficient under Fifth Circuit precedent. *See Panda Brandywine*, 253 F.3d at 869; *see also* Counterclaim, ¶12. NCIC's allegations relate entirely to actions directed at places in the Caribbean or to the very generalized group of NCIC customers, and the general allegation that Singer aimed his conduct at NCIC is of no import – Singer must have aimed his conduct specifically at Texas. *See* Counterclaim, ¶12; *see also See Southmark*, 851 F.2d at 773; *Panda Brandywine*, 253 F.3d at 869; *Revell*, 317 F.3d at 473.

Like the alleged defamatory article in *Revell* that in no way targeted Texas or Texas individuals "as distinguished from [individuals] in other states," none of the allegations against Singer show that he targeted Texas with his alleged defamatory statements or aimed his alleged falsities at NCIC customers in Texas as opposed to its customers elsewhere – to the contrary, NCIC's allegations assert that Singer's comments were directed specifically at places in the Caribbean or

were made generally to NCIC's customers, without any alleged targeted forum. *See Revell,* 317 F.3d at 469-474. Analogies also apply between the facts of this case and the facts of *Archer and White, Inc. v. Tim Tishler, DDS,* 2003 U.S. Dist. LEXIS 19010 at 2, 9 (N.D. Tex. 2003) (defamatory comments made about dentist's drill held "insufficient" to establish personal jurisdiction because there was no "intent to target or focus on" Texas individuals as opposed to individuals in other states) and *Management Insights,* 194 F.Supp.2d at 521-526 (allegedly slanderous call directed at a forum other than the one in which personal jurisdiction was sought did not support personal jurisdiction), in that NCIC has not alleged Singer's comments were targeted at Texas customers of NCIC, thus attempting to base personal jurisdiction in Texas solely on the alleged generalized harmful effects that may have found their way to Texas is inappropriate.

Furthermore, like the contracts in *Southmark,* it is not alleged here that NCIC's contract deals in St. Maarten with which Singer allegedly interfered were to have been made in Texas or governed by Texas law, or that the deals were to be performed in Texas or carried out by residents of Texas. *See Southmark,* 851 F.2d at 772-773. Also, like the financing agreements in *Panda Brandywine* that were not governed by Texas law, not to be performed in Texas, and had no relation to Texas other than the "fortuity" that the plaintiffs resided in Texas, torts involving Caribbean contracts are insufficient bases for personal jurisdiction in Texas. *See* 253 F.3d at 867, 869-870. There are no allegations here that Singer aimed his alleged defamations at Texas or at NCIC customers in Texas, that any of the contracts affected were made in Texas, governed by Texas law, or to be performed by Texas residents, that NCIC lost business in Texas from Singer's comments, or that Singer attempted to single out NCIC's operations or customers in Texas as

13

opposed to other geographic fora. *See Southmark*, 851 F.2d at 772-773; *Management Insights*, 194 F.Supp.2d at 521-526. Therefore, the "something more" beyond mere effects of Singer's conduct percolating to Texas is lacking here, and the "mere fortuity" that NCIC resides in Texas while Singer's acts were directed at other fora is not sufficient to establish personal jurisdiction over Singer in Texas. *See Management Insights*, 194 F.Supp.2d at 521-526; *Southmark*, 851 F.2d at 772-773; *see also Panda Brandywine*, 253 F.3d at 867, 869-870.

The fact that harmful effects of Singer's conduct may have been felt in Texas is only one facet of the minimum contacts analysis, and there are no allegations Singer has any other contacts with Texas at all. *See Revell*, 317 F.3d at 473. There are no allegations Singer has ever visited Texas for any business or personal reason, communicates regularly with anyone in Texas, owns property in Texas, or is a party to any contracts governed by Texas law – nor could such allegations even be made. *See Dec. Singer*, ¶¶3-7. NCIC has relied purely upon its allegations that the tangential effects of Singer's conduct were felt by NCIC in Texas, and has failed to allege that Singer has other, even minor contacts with Texas. Because the "effects" test is not to be used as "a substitute for demonstrating minimum contacts that amount to purposeful availment of the benefits of a forum," NCIC's failure to allege that Singer has any contacts with Texas besides the alleged effects he created further solidifies the conclusion that NCIC's assertion of personal jurisdiction offends constitutional standards. *See Panda Brandywine*, 253 F.3d at 869.

Accordingly, NCIC has failed to fulfill its burden to establish a *prima facie* case of minimum contacts between Singer and Texas. *See Kelly*, 213 F.3d at 854. At most, NCIC has

alleged Singer's actions directed at the Caribbean or at NCIC customers in general harmed it in Texas because of the "mere fortuity" that its business resides in Texas, which is not alone enough to establish personal jurisdiction over Singer. *See Southmark*, 851 F.2d at 773. This motion to dismiss for lack of personal jurisdiction over Singer should therefore be granted.

3. *NCIC Has Not Alleged Facts Sufficient To Demonstrate Gregorio L. Galicot's Minimum Contacts with Texas*

NCIC alleges Gregorio L. Galicot ("G. Galicot") told a mutual customer of NCIC and BBG an NCIC-controlled company in Texas named "ICS" was charging the customer higher rates than those allowed by a contract. NCIC alleges that, in reality, BBG was the company charging that customer rates above contract price, while using the fictitious name "ICS." *See* Counterclaim, ¶24(d).

Once more, NCIC bears the burden to prove a *prima facie* case of minimum contacts between G. Galicot and Texas. *See Kelly*, 213 F.3d at 854. G. Galicot is a resident of California. Dec. G. Galicot, ¶2. While NCIC does allege G. Galicot directed his purported defamatory comments at an NCIC affiliate in Texas, it still fails to demonstrate *prima facie* evidence of G. Galicot's minimum contacts with Texas, because it has not displayed that G. Galicot "purposefully availed" himself of the Texas forum. *See Burger King,* 471 U.S. at 475-476; *Prejean*, 652 F.2d at 1269.

Here, it is important to recall the Fifth Circuit's long-standing test: "Whether there is purposeful availment when an out of state act causes effects within the state depends upon the

15

interplay of three factors: (1) the existence and degree of purposefulness with which the effect in that forum was created; (2) whether the defendant has other substantial contacts with the forum unrelated to the suit; and (3) the substantiality of the effect itself. In all cases the effect must to some degree be purposefully created." *Prejean*, 652 F.2d at 1269. Moreover, "if the effect of minimally purposeful creation is not substantial, other substantial contacts must exist" and the relative strength of purposefulness is inversely proportional to the strength of showing needed as to the existence of other contacts and the substantiality of the effect. *Id.*

Here, even though NCIC has alleged G. Galicot directed his comments at business operations in Texas, it must also make at least some showing as to other contacts and as to the substantiality of the effects felt in Texas. *See Prejean*, 652 F.2d at 1269. NCIC has made no allegation as to either.

First, NCIC has not alleged G. Galicot has <u>any</u> other contacts with Texas besides his one purported comment to an NCIC customer. As with R. Galicot and Singer, there are no allegations G. Galicot regularly visits Texas for any business or personal reason, communicates regularly with anyone in Texas, owns property in Texas, or has ever made any sales in Texas – nor could such allegations even be made. *See* Dec. G. Galicot, ¶¶3-7. NCIC has relied purely upon a single out-of-state comment by G. Galicot to establish a basis for personal jurisdiction, and has failed to allege G. Galicot has other, even minor contacts with Texas, as is required by *Prejean*. *See id.*

Second, nowhere does NCIC make any allegation as to the substantiality of the effect of G. Galicot's comment. It merely states that G. Galicot "deceived the customer," then makes the

16

general allegation that "BBG" continues to use a fictitious name that confuses the public and "damages the reputation of NCIC." Counterclaim, ¶24(d); see also ¶¶53-58 (alleging damages in general due to the alleged tortious conduct). NCIC does not allege any amount of money it lost, any amount of business that was destroyed, or any specific amount of damage caused directly by the comment of G. Galicot. Even in its claims for relief, NCIC makes no more than general assertions it has been damaged by G. Galicot's conduct. *See* Counterclaim, ¶¶29-112. A plaintiff must make more than mere "conclusory" allegations to support an assertion of jurisdiction, and a broad assertion of "damage" without some allegation as to the amount or nature of damage should not suffice to fulfill the *Prejean* prong requiring some demonstration of the substantiality of the effects felt by NCIC. *See Panda Brandywine*, 253 F.3d at 868-869; *Prejean*, 652 F.2d at 1269.

Therefore, even given the fact NCIC has alleged G. Galicot directed his comments at Texas, the force of that single comment's purposefulness is not dispositive of the personal jurisdiction issue, and NCIC has made neither of its necessary allegations as to other contacts G. Galicot may have with Texas, or as to the substantiality of the effect felt in Texas emanating from G. Galicot's alleged comment. *See Prejean*, 652 F.2d at 1269. As such, NCIC has failed to meet its burden to establish a *prima facie* case of minimum contacts between G. Galicot and Texas, and this motion to dismiss for lack of personal jurisdiction should be granted as to G. Galicot. *See Kelly*, 213 F.3d at 854.

## III. **CONCLUSION**

For the reasons set forth above as to each Individual, NCIC has failed to provide specific allegations sufficient to establish *prima facie* cases of minimum contacts between the Individuals and Texas that would support the assertion of personal jurisdiction over them.

Accordingly, the Individuals respectfully request that this Court grant this motion to dismiss for lack of personal jurisdiction as to each of the three Individuals.

Respectfully submitted,

Otis W. Carroll
Texas Bar No. 03895700
Wesley Hill
Texas Bar No. 24032294
IRELAND, CARROLL & KELLEY, P.C.
6101 South Broadway Ave., Suite 500
Tyler, Texas 75703
(903) 561-1600
(903) 581-1071 (fax)

ATTORNEYS FOR THIRD-PARTY DEFENDANTS
RAFAEL GALICOT, RICARDO SINGER, AND
GREGARIO GALICOT

OF COUNSEL

TAWNYA R. WOJCIECHOWSKI
CAL. BAR NO. 180,063
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, California 92626-1925
Telephone:    (714) 513-5100
Facsimile:    (714) 513-5130

FRANK J. JOHNSON, JR.
CAL. BAR NO. 174882
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12544 High Bluff Drive, Suite 300
San Diego, California 92130-3051
Telephone:    858-720-8900
Facsimile:    858-509-3691

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule CV-7(h), no certificate of conference is required for this pleading.

Wesley Hill

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document

was served on all parties via United States mail and electronic delivery this _17th_ day of

_March_ , _2004_.

Wesley Hill

## DECLARATION OF RAFAEL GALICOT

I, Rafael Galicot, declare as follows:

1.    I am over the age of 18 and am otherwise competent to make this declaration. I have personal knowledge of the facts hereinafter stated and could and would testify competently thereto if sworn as a witness.

2.    I am a resident of the State of California.

3.    I do not personally own any property in the State of Texas.

4.    I have never made any sales pitches in Texas, nor have I ever made any actual sales in Texas.

5.    I do not regularly visit Texas, for business or personal affairs.

6.    I am not personally a party to any contracts governed by Texas law.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: 03|12|04                                                                
RAFAEL GALICOT

1

## DECLARATION OF RICARDO SINGER

2

3        I, Ricardo Singer, declare as follows:

4

5    1.   I am over the age of 18 and am otherwise competent to make this declaration.  I

6         have personal knowledge of the facts hereinafter stated and could and would testify

7         competently thereto if sworn as a witness.

8

9    2.   I am a resident of the State of California.

10

11    3.   I do not personally own any property in the State of Texas.

12

13    4.   I have never made any sales pitches in Texas, nor have I ever made any actual sales

14        in Texas.

15

16    5.   I do not regularly visit Texas for business or personal affairs.

17

18    6.   I am not personally a party to any contracts governed by Texas law.

19

20    7.   I do not regularly communicate with anyone residing in Texas.

21

22        I declare under penalty of perjury under the laws of the State of California that the

23    foregoing is true and correct.

24

25    Dated:  3 | 15 | 2004                    _____

26                                              RICARDO SINGER

27

28

## DECLARATION OF GREGORIO D. GALICOT

I, Gregorio D. Galicot, declare as follows:

1.  I am over the age of 18 and am otherwise competent to make this declaration. I have personal knowledge of the facts hereinafter stated and could and would testify competently thereto if sworn as a witness.

2.  I am a resident of the State of California.

3.  I do not personally own any property in the State of Texas.

4.  I have never made any sales in Texas.

5.  I do not regularly visit Texas, for business or personal affairs.

6.  I am not personally a party to any contracts governed by Texas law.

7.  I do not regularly communicate with anyone residing in Texas.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Dated: __63/15/04__        _____
                                    GREGORIO D. GALICOT

-1-