FILED
U. S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUN 0 1 2004

DAVID MALAND, CLERK
By
Deputy _____

**In the United States District Court**
**For the Eastern District of Texas**
**Marshall Division**

| | | |
|---|---|---|
| BBG Communications, Inc. | § | |
| BBG Holdings Limited | § | |
| v. | § | **Civil Action No. 2:03-CV-227** |
| | § | |
| 1) Network Communications | § | **(Hon. T. John Ward)** |
| International Corp.; | § | |
| 2) Blue Phones Limited; | § | |
| 3) William Pope; | § | |
| 4) Jay Walters; and | § | |
| 5) Jeffery Walters | § | |

DEFENDANT NETWORK COMMUNICATIONS INTERNATIONAL CORP.
("NCIC"), ET AL'S MEMORANDUM IN OPPOSITION TO
THIRD-PARTY DEFENDANTS RAFAEL GALICOT, RICARDO SINGER,
AND GREGORIO L. GALICOT'S MOTION TO DISMISS
FOR LACK OF PERSONAL JURISDICTION

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW NCIC, ET AL and ask this Court to deny Third-Party Defendants

Rafael Galicot, Ricardo Singer, and Gregorio L. Galicot's Motion to Dismiss for Lack

of Personal Jurisdiction and would show the Court the following:

## I. Introduction

NCIC filed an amended counterclaim stating causes of action against Third-

Party Defendants Rafael Galicot, Ricardo Singer, and Gregorio L. Galicot. These

Third-Party Defendants filed a motion to dismiss for lack of personal jurisdiction.

NCIC files this response asking the Court to deny their motion.

## II. Argument

**A.    Third-Party Defendants Have the Requisite Minimum Contacts with Texas to Support this Court's Exercise of Jurisdiction.**

A federal district court sitting in diversity may exercise personal jurisdiction over a foreign defendant if (1) the long-arm statute of the forum state[1] creates personal jurisdiction over the defendant; and (2) the exercise of personal jurisdiction is consistent with the due process guarantees of the United States Constitution. *Revell v. Lidov*, 317 F.3d 467 (5th Cir. 2002) (citations and quotations omitted). Since the Texas long-arm statute reaches as far as the limits of the Constitution, the inquiry centers on whether the exercise of jurisdiction over the non-resident defendant would offend due process. *Id.*

The Due Process Clause of the Fourteenth Amendment permits a court to exercise personal jurisdiction over a non-resident defendant when (1) the "defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Id.* at 470. (citations omitted). Sufficient minimum contacts will

---

[1]    The Texas long-arm statute reaches as far as the extent of the Due Process Clause. *Tuscano v. Osterberg*, 82 S.W.3d 457 (Tex. App.–El Paso 2002). The Texas long-arm statute provides that a non-resident defendant does business in the state [sufficient to meet the minimum contacts requirements] if the non-resident "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE § 17.042 (Vernon 2003).

2

give rise to either specific or general jurisdiction.

General jurisdiction exists "where a defendant's contacts with the forum state are substantial and continuous and systematic but unrelated to the cause of action." *Religious Technology Center v. Dell Liebreich*, 339 F.3d 369, 374 (5th Cir. 2003).

Specific jurisdiction exists where a non-resident defendant has "purposefully directed [his] activities at the forum state and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985).

The plaintiff bears the burden of establishing personal jurisdiction, but need only present prima facie evidence. *Kelly v. Syria Shell Petroleum Development & B.V.*, 213 F.3d 841, 854 (5th Cir. 2000). The plaintiff's allegations concerning the basis for personal jurisdiction must generally be accepted as true. *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868-69 (5th Cir. 2001).

NCIC's basis for jurisdiction over these defendants is two-fold. First, NCIC contends that these Third-Party Defendants committed intentional torts aimed at NCIC, a Texas Corporation, which caused foreseeable harm to NCIC in Texas. In other words, NCIC has felt the general effects of these tortious activities in Texas. *See Calder v. Jones*, 465 U.S. 783, 789-90, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984) (court may exercise personal jurisdiction over defendant consistent with due process when defendant is a primary participant in intentional wrongdoing–albeit extraterritorially–expressly directed at forum). Second, NCIC asserts that these

Third-Party Defendants have had substantial and continuous contacts with Texas–sufficient to support general jurisdiction. *Religious Technology*, 339 F.3d at 374. Third-Party Defendants allege that NCIC has not alleged facts to support general jurisdiction and thus no further inquiry should be made into the existence of general jurisdiction. (*See* Third Party Defendants' Motion to Dismiss ¶ 6). On the contrary, however, jurisdiction bases not raised in the pleadings could be raised in a response to a motion to dismiss. *See Malone v. Windsor Casino Ltd.*, 2001 WL 873749 *1 (6th Cir. 2001). In *Malone,* an unpublished decision, the Sixth Circuit indicated that failure to raise general jurisdiction in the complaint does not preclude raising such jurisdiction in the response to defendant's motion to dismiss. *Id.*

### 1. Rafael Galicot has Sufficient Minimum Contacts with Texas to Justify This Court's Exercise of Jurisdiction.

In its Amended Counterclaim, NCIC alleges claims against Rafael Galicot for, inter alia, tortious interference with existing and potential contractual relations, commercial bribery, and knowing participation in breach of fiduciary duty. First Amended Counterclaim ¶¶ 60-62, 83, 102.

### a. Specific Jurisdiction

Rafael Galicot's tortious conduct executed in various locations outside the United States had its biggest impact or "effect" here in the Eastern District of Texas. The "effects" theory is well-established by *Calder v. Jones, supra* and has been further defined by the Fifth Circuit. *See Revell v. Lidov,* 317 F.3d at 473*; Panda Brandywine Corp.,* 253 F.3d at 869*; see also; Prejean v. Sonantrach, Inc.*, 652 F.2d

1260, 1269 (5th Cir. 1981). In *Prejean,* the Fifth Circuit laid out a three-part test to be used when out-of-state acts cause effects within the state. *Id.* That test depends upon the interplay of three factors: (1) the existence and degree of purposefulness with which the effect in that forum was created; (2) whether the defendants have other substantial contacts with the forum unrelated to the suit and (3) the substantiality of the effect itself. *Id.*

Here, the purposeful creation was the knowing interference with NCIC's contractual relations in key markets where NCIC does business. NCIC promotes itself as a Texas-based company that has the ability to service markets in various locations all over the world. Rafael Galicot's conduct has injured NCIC's business and reputation not only in the various locations where the conduct occurred but also in NCIC's home-base and nerve center located in Longview, Texas.

Moreover, under *Prejean*, if the creation of the effect is purposeful and the effect is substantial, no other contacts are needed." *Id.* at 1269. Nevertheless, Rafael Galicot has had substantial contacts with Texas unrelated to this lawsuit. *See* Affidavit of Jay Walters attached hereto as Exhibit 1 ("Walters Affidavit"). Finally, under the third prong, the effect of this widespread conspiracy was substantial in that NCIC sustained economic losses as well as damage to its business reputation and good will.

Aside from the "effects" theory, another basis for specific jurisdiction exists with regard to Rafael Galicot's contacts with Texas. Those contacts include making

several trips to NCIC's Longview, Texas facility to discuss contracts. In at least one if not more of those meetings, Rafael Galicot took part in discussions regarding contracts for the Bahamas, the very territory in which NCIC alleges that he stole business that belonged to NCIC. *See* Walters Affidavit. A single act by a defendant can be enough for jurisdiction if that act gives rise to the claim being asserted. *See Brown v. Flowers Indus.*, 688 F.2d 328, 332-33 (5th Cir. 1982).

### b.    **General Jurisdiction**

In the alternative, even if this Court does not have specific jurisdiction, Rafael Galicot has had sufficient contacts with Texas such that this Court could exercise general jurisdiction over him. Rafael Galicot has made several trips to Texas to NCIC's facility and he has participated in several ICS board meetings. *See* Walters Affidavit.

### 2. **Ricardo Singer has Sufficient Minimum Contacts with Texas to Justify This Court's Exercise of Jurisdiction.**

In its Amended Counterclaim, NCIC alleges claims against Ricardo Singer for, inter alia, defamation, tortious interference with contractual relations, and knowing participation in breach of fiduciary duty. First Amended Counterclaim ¶¶ 54, 66, 83.

### a.    **Specific Jurisdiction**

NCIC incorporates the arguments previously made with respect to Rafael Galicot under the *Prejean* test. In addition, Ricardo Singer is one of the key persons that may have accessed NCIC's server in Longview, Texas. He is one of the major sales representatives and an exclusive agent of BBG. Some of the specific accounts

6

accessed were accounts that he handled for BBG. *See* Walters Affidavit.

### 3. Gregorio L. Galicot has Sufficient Minimum Contacts with Texas to Justify This Court's Exercise of Jurisdiction.

In its Amended Counterclaim, NCIC alleges claims against Gregorio Galicot for, inter alia, unfair competition, defamation, and knowing participation in breach of fiduciary duty. First Amended Counterclaim ¶¶ 26, 54, 83.

### a. Specific Jurisdiction

NCIC incorporates the arguments previously made with respect to Rafael Galicot under the *Prejean* test. In addition, NCIC asserts that Gregorio Galicot has sufficient contacts with Texas to satisfy the second prong of the *Prejean* test. *See* Walters Affidavit.

### b. General Jurisdiction

In the alternative, NCIC asserts that Gregorio Galicot has had "continuous and systematic" contacts with Texas to satisfy general jurisdiction. *Religious Technology Center,* 339 F.3d at 374. He has visited Longview, Texas several times to discuss various business arrangements with NCIC. In addition, he has sent several electronic mails to Longview, Texas in connection with his recruitment of Ronald Perez away from NCIC.

## B. The Fiduciary Shield Doctrine Does Not Apply in This Case.

The Third-Party Defendants will likely argue that since they were acting in their capacity as employees/agents of BBG, the fiduciary shield doctrine should apply to any actions taken on their part that resulted in harm to NCIC. NCIC contends,

7

however, that that doctrine should not apply in this case.

The fiduciary shield doctrine provides that corporate officers are not subject to jurisdiction in a foreign forum where their actions are taken in a representative capacity. *Stuart v. Spademan*, 772 F.2d 1185, 1197 (5th Cir. 1985); *Amoco Chem. Co. v. Tex. Tin Corp.*, 955 F.Supp. 1192, 1201 (S.D. Tex. 1996). An exception to this doctrine exists where an individual officer or agent of the corporation would be personally liable to any third person they injured by virtue of their tortious activity even if such acts were performed within the scope of their employment. *McCaskey v. Continental Airlines, Inc.*, 159 F.Supp.2d 562 (S.D. Tex. 2001); *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996); *Keyser v. Miller*, 47 S.W.3d 728 (Tex. App.– Houston [1st Dist.] 2001, n.p.h.). In other words, some courts are willing to attribute to an individual the corporation's contacts with the forum state on this rationale of a corporate officer's individual liability for tortious conduct against third parties. *Odell v. Signer*, 169 So.2d 851, 853-54 (Fla. Ct. App. 1964), writ discharged, 176 So.2d 94 (Fla. 1965). Here, BBG has several contacts with Texas, including but not limited to, a call center located in Longview, Texas, as well as a website that is accessible in Texas. *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119 (W.D. Pa. 1997).

### III. Conclusion

For the foregoing reasons, NCIC asks this Court to deny Third-Party Defendants Rafael Galicot, Ricardo Singer, and Gregorio L. Galicot's Motion to

Dismiss.

Respectfully submitted,

Tom Henson–**Attorney-in-Charge**
State Bar Card No. 09494000
**Sharon O. Small**
State Bar Card No. 24042773
**RAMEY & FLOCK, P.C.**
100 E. Ferguson, Ste. 500
Tyler, TX  75702
(903) 597-3301
Fax:  (903) 597-2413

**Jerry Harper**
Louisiana Bar No. 6585
**JERALD R. HARPER, PLC**
504 Texas St., Ste. 405
Shreveport, LA  71101
(318) 221-1004
Fax: (318) 221-0008

ATTORNEYS FOR DEFENDANTS, NETWORK
COMMUNICATIONS INTERNATIONAL CORP.,
BLUE PHONES LIMITED, WILLIAM POPE,
JAY WALTERS, AND JEFFERY WALTERS

## Certificate of Service

I certify that on the 1st day of June, 2004 a copy of this document was served, via the indicated method, on the following:

Gregory P. Love          **(Via CM-RRR No. 7002 0860 0001 0493 1331)**
WELLBORN, HOUSTON, ADKISON, MANN,
 SADLER & HILL, L.L.P.
P.O. Box 1109
Henderson, TX 75653-1109

Tawnya R. Wojciechowski    **(Via CM-RRR No. 7002 0860 0001 0493 1348)**
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Dr., 4th Floor
Costa Mesa, CA 92626-1925

Frank J. Johnson, Jr.      **(Via CM-RRR No. 7002 0860 0001 0493 1355)**
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12544 High Bluff Dr., Ste. 300
San Diego, CA 92130-3051

Eric M. Albritton         **(Via CM-RRR No. 7002 0860 0001 0493 1362)**
ALBRITTON LAW FIRM
109 W. Tyler St.
Longview, TX 75601

Scott E. Stevens          **(Via CM-RRR No. 7002 0860 0001 0493 1379)**
BUNT, WRIGHT & STEVENS, PLLC
P.O. Box 3969
Longview, TX 75606-3969

SHARON SMALL

# 167241.1

10

**In the United States District Court**
**For the Eastern District of Texas**
**Marshall Division**

| | | |
|---|---|---|
| BBG Communications, Inc. | § | |
| BBG Holdings Limited | § | |
| v. | § | Civil Action No. 2:03-CV-227 |
| | § | |
| 1) Network Communications | § | (Hon. T. John Ward) |
|    International Corp.; | § | |
| 2) Blue Phones Limited; | § | |
| 3) William Pope; | § | |
| 4) Jay Walters; and | § | |
| 5) Jeffery Walters | § | |

AFFIDAVIT IN SUPPORT OF THIRD-PARTY PLAINTIFFS
NCIC, ET AL'S MEMORANDUM IN OPPOSITION TO
MOTION TO DISMISS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF SMITH | § |

BEFORE ME, the undersigned authority, personally appeared Jay D. Walters who, being by me duly sworn, deposed as follows:

1.  "My name is Jay D. Walters and I am of sound mind, capable of making this Affidavit and I have personal knowledge of all matters stated herein.

2.  I am an individual residing in Longview, Gregg County, Texas.

3.  I am the Vice President of Network Communications International Corp. ("NCIC"). I have been employed with NCIC since September 1, 1996.

4.  NCIC is a telecommunications company incorporated in the state of Texas.

5.  Beginning sometime in the spring of 2003, Rafael Galicot, Gregorio Galicot and Ricardo Singer along with other BBG affiliates, began a concerted effort to destroy NCIC as a competitor for telecommunication services in the international markets by,

EXHIBIT
1

amongst other things, targeting NCIC's network of agents and/or joint venturers and offering them substantial cash payments to cease efforts on behalf of NCIC and promote BBG services instead.

6.   Rafael Galicot's contacts with Texas include:

a.   routing the calls from the Bahamas through its call center Centris Information Systems in Longview, Texas after stealing NCIC's business in the Bahamas;

b.   communicating via telephone, facsimile and electronic mail with several employees at NCIC's Longview facility (**See Exhibit 1**);

c.   making several trips to NCIC's facility to discuss business contracts , including contracts in the Bahamas, and the operations of NCIC;

d.   telephonically participating in ICS board meetings in Longview Texas;

e.   being one of a few persons at BBG who may have accessed NCIC's server in Longview, Texas. NCIC's server was accessed from Internet Protocol (IP) addresses belonging to BBG on multiple occasions beginning in January of 2001. (**See Exhibit 2**). Those IP addresses were traced to BBG's office in San Diego, California. While BBG has not admitted to the specific person(s) who accessed NCIC's server, it has admitted that "either BBG or it's exclusive agents have accessed NCIC's server." (Transcripts from that deposition are not yet available and will be provided by NCIC upon leave of this court to Supplement). Rafael Galicot is the Vice President of BBG and has significant decision-making powers at BBG. At a minimum, he would have had knowledge of such access and he would also be in a position to prohibit or approve such access;

2

  f.  making several trips to BBG's call center Centris Information Services located in Longview, Texas.

7.  Gregorio Galicot's contacts with Texas include:

  a.  visiting the ICS facility in Longview, Texas to discuss various business contracts;

  b.  sending and receiving electronic mails from Longview, Texas in the course of his recruitment of Perez from NCIC. (**See Exhibit 3**);

  c.  being one of a few persons at BBG who may have accessed NCIC's server in Longview, Texas. In recent depositions conducted in San Diego, Gregorio Galicot was asked whether or not he had any explanation for the unauthorized access of NCIC's servers. He responded that he did not. Gregorio Galicot is the President of BBG and has significant decision-making powers at BBG. At a minimum, he would have had knowledge of such access and he would also be in a position to prohibit or approve such access.

8.  Ricardo Singer's contacts with Texas include:

  a.  being one of a few persons at BBG who may have accessed NCIC's server in Longview, Texas. Ricardo Singer is one of the major sales representatives and exclusive agent for BBG and he handles some of the same accounts that were accessed from NCIC for BBG."

Further affiant sayeth not.

IN WITNESS HEREOF, the undersigned has executed this affidavit on _June 1_ ,

2004.

_Jay D. Walters_

JAY D. WALTERS

Sworn and subscribed to before me this _1st_ day of _June_ , 2004 to certify

which witness my hand and official seal.

TERRI L. HARVEY
Notary Public
STATE OF TEXAS
My Comm. Exp. 12-5-2007

_Terri L. Harvey_

Notary Public in and for the State of Texas

# 167327.1

4

# REDACTED

**From:** Jorge Macari Lopez
**To:** delma@bbgcomm.com ; 'Rafael Galicot' ; 'Rebeca S.'
**Sent:** Monday, February 24, 2003 5:03 PM
**Subject:** RV: faltaron estos cheques

Delms:

De costa rica, llego todo bastante bien, me hicieron falta estos cheques unicamente, me los mandan a Cr directo? Solo avisenme cuando salgan...gracias,

Jorge

-----Mensaje original-----
**De:** Ricardo Macari [mailto:bbgcostarica@hotmail.com]
**Enviado el:** Lunes, 24 de Febrero de 2003 01:05 p.m.
**Para:** jorge a macari
**Asunto:** faltaron estos cheques

### Estas propiedades falto cheque

|              |                         |                  | comision | llamada |
|--------------|-------------------------|------------------|----------|---------|
| 506 111 5059 | ECOTOURS                | ALEXANDER ROJAS  | $  7.00  | 3       |
| 506 111 9531 | HOTEL CASA DOBLE B&B     | VALERIE TOWNLEY  | $  7.00  | 9       |
| 506 111 9538 | SELVA TOUR ARENAL PUBLICO | Randall Castro  | $  7.00  | 3       |
| 506 111 2329 | Aguila de Osa           | Isla Fantasma, S.A. | $  7.00 | 14    |
| 506 111 9818 | Costa de Papito         | Eddie Ryan       | $  7.00  | 6       |
| 506 111 9570 | zuma rent a car         | REWA Jacó S.A/   | $  7.00  | 21      |



CONFIDENTIAL

# REDACTED

From: "ORLY" <orly@bbgcomm.com>
To: <rafael@bbgcomm.com>
Sent: Thursday, June 19, 2003 7:07 PM
Subject: Fwd: FW: Incentive Pricing Reductions


>
> >From: "Brian Rhys" <brianr@bbgcomm.com>
> >To: "'Rafael Galicot" <rafael@bbgcom.com>,
> >        "Orly \(Orly\)" <orly@bbgcomm.com>
> >Subject: FW: Incentive Pricing Reductions
> >Date: Tue, 18 Mar 2003 09:32:17 -0800
> >X-Mailer: Microsoft Outlook, Build 10.0.4510
> >Importance: Normal
> >X-OriginalArrivalTime: 18 Mar 2003 17:29:45.0171 (UTC)
> >FILETIME=[F7A6A230:01C2ED73]
> >
> >
> >
> >-----Original Message-----
> >From: Kevin Sprake [mailto:ksprake@red-usa.com]
> >Sent: Tuesday, March 18, 2003 5:32 AM
> >To: Brian Rhys
> >Cc: Jeanine Brandenburg
> >Subject: RE: Incentive Pricing Reductions
> >
> >Brian,
> >
> >I will take care of this for you.  We did make the decision, on good faith,
> >that your rate would be in effect at FNBO for your first deposit which took
> >place last week.
> >
> >I will provide you with a break down of the costs and provide you with the
> >percentages that we have agreed too.
> >
> >Thank you for working through the details of this conversion with us.  I
> >know that you will be pleased.
> >
> >Kevin J. Sprake
> >EVP Client Services
> >Retail Decisions - USA
> >Phone:  (732) 847-6278
> >Fax:  (732) 335-9304
> >
> >  -----Original Message-----
> >From:  Brian Rhys [mailto:brianr@bbgcomm.com]

CONFIDENTIAL

1

BBG 000173

> >Sent:  Monday, March 17, 2003 10:36 PM
> >To:    Kevin Sprake
> >Cc:    Jeanine Brandenburg
> >Subject:    RE: Incentive Pricing Reductions
> >
> >Kevin,
> >
> >We met with Rafa today and everything looks good to present to the board
> >less the fact that we should be getting this new rate from day 1 at FMBO.
> >
> >Also, can one of you put together a small spreadsheet showing what was
> >deposited and then subsequently extracted from our account by cost item?
> >
> >We want to get a good understanding of the process from the beginning..
> >
> >Please confirm both items...
> >
> >Thanks,
> >Brian
> >
> >——Original Message——
> >From: Kevin Sprake [mailto:ksprake@red-usa.com]
> >Sent: Monday, March 10, 2003 6:56 PM
> >To: Brian Rhys
> >Cc: Jeanine Brandenburg
> >Subject: RE: Incentive Pricing Reductions
> >
> >Brian,
> >
> >Thanks for the response.  Based on the growth projections you provided I
> >only created two tiers.  I can make a third tier over 1,872,757 and $75
> mil
> >at ($.10 plus 2.00%).  I would imagine that a 4th and 5th tier would
> require
> >BBG to purchase Retail Decisions to be cost effective.  But, if you want
> to
> >build those tiers in I will?
> >
> >As far as rebates are concerned, from an accounting perspective I am told
> >that ReD can not do this because of the accruals that needed to be made
> on a
> >month to month basis.  It also effects the way that the Company can
> >recognize revenue.  This is the reason I am reducing your processing rate
> >now by 10% and providing additional reductions that you receive the
> benefit
> >of in perpetuity.
> >
> >I am available tomorrow around 11 PT to discuss further?  Beyond that I
> am
> >traveling to the East Coast and back in the office on Wednesday.  Let me
> >know what will work for you.
> >
> >Thank you.
> >
> >Kevin J. Sprake
> >Managing Director
> >Retail Decisions, Inc.
> >Phone:  (732) 847-6278
> >
> >
> >——Original Message——
> >From: Brian Rhys [mailto:brianr@bbgcomm.com]
> >Sent: Thursday, March 06, 2003 6:22 PM
> >To: Kevin Sprake

CONFIDENTIAL

2

BBG 000174

> >Cc: Jeanine Brandenburg
> >Subject: RE: Incentive Pricing Reductions
> >
> >
> >Kevin,
> >
> >As promised, back with some questions...
> >
> >1) 3rd Tier of pricing - Its seams that your 75mil should be 65mil.
> Please
> >confirm if this was a error in the calculation.   We noticed it because
> the
> >average ticket price for the first two tiers were at $40.06 and Tier 3
> >jumped to $46.  Also, I don't see a change in the pricing from Tier 2 to
> >Tier 3.  Was this a mistake?  If so, please show us that pricing.
> >
> >2) 4th (and 5th) Tier pricing - I agree that this should be a system that
> we
> >can live with for many years to come.   Why not throw more Tiers in there
> as
> >well.  I can foresee a day in the not too distant future, god willing,
> when
> >we surpass the 75mil mark.
> >
> >3) How do we receive the reduction and on what basis?   In our
> discussions,
> >you mentioned a Rebate at the end of each quarter that I assumed would be
> >compared to the Quarter from the year past.  Has this changed?.   Also,
> I
> >assume that the reduction as a form of a rebate, would be on all the
> >transactions.  Need some clarification.
> >
> >Please try to get me clarification on this as soon as possible so we can
> put
> >this one to bed.....
> >
> >Thanks,
> >Brian
> >
> >
> >
> >-----Original Message-----
> >From: Kevin Sprake [mailto:ksprake@red-usa.com]
> >Sent: Tuesday, March 04, 2003 2:12 PM
> >To: Brian Rhys
> >Cc: Jeanine Brandenburg
> >Subject: RE: Incentive Pricing Reductions
> >
> >Brian,
> >
> >Please review the attached document. If you have any questions please
> call
> >me on my cell, or tomorrow anytime.  I think you will like what I have
> >proposed.  I have been very aggressive and taken a forward thinking
> approach
> >to reducing BBG costs, growth in the BBG business and an escalation in
> the
> >services you receive from ReD.
> >
> >I look forward to hearing from you.
> >
> >
> >
> >-----Original Message-----

CONFIDENTIAL

3

BBG 000175

> >From: Brian Rhys [mailto:brianr@bbgcomm.com]
> >Sent: Friday, February 28, 2003 6:15 PM
> >To: Kevin Sprake
> >Subject: RE: Incentive Pricing Reductions
> >
> >
> >Get some Rest!!!   I need you healthy if you are going to be working with
us
> >for the next 10 years....
> >
> >I will look for your numbers on Monday as per your message below.....
> >
> >Have a great weekend..
> >
> >Brian
> >
> >——Original Message——
> >From: Kevin Sprake [mailto:ksprake@red-usa.com]
> >Sent: Friday, February 28, 2003 3:04 PM
> >To: Brian Rhys (E-mail)
> >Subject: Incentive Pricing Reductions
> >
> >Brian,
> >
> >As per our conversation last night, I have worked through out the day to
> >provide you with a creative and lasting incentive plan.  I am know blind!
> >
> >The concept is to provide you with an incentive that will remain with BBG
as
> >our relationship grows over the years. I am still working on the tiered
> >targets, but as they are met your ReD processing fee will be reduced in
> >perpetuity.  That way, a good year in 2003 will carry over to 2004 and so
> >on.... I have the CFO running the analysis for me and will have a
logical
> >detail that I can explain by Monday.
> >
> >I have completed your set-up at FNBO and used the discounted pricing we
> >discussed last night.  We have received the test file from Orly for FNBO
via
> >the FTM and so good.
> >
> >I will make myself available to you on Monday evening to discuss the
> >Incentive Proposal (I will send it to you Monday) and any questions you
have
> >with the contract.
> >
> >Hope you have a good weekend.
> >
> >Thank you.
> >
> >Kevin J. Sprake
> >Managing Director
> >Retail Decisions, Inc.
> >Phone:  (732) 847-6278
>

CONFIDENTIAL

4

BBG 000176

| RecID | ReportDate | Account | Report | RemoteHost | Password |
|---|---|---|---|---|---|
| 1127936 | 1/1/01 14:48 | 4022,4023 | TextINTER | 63.84.66.60 | ruben |
| 1117935 | 1/3/01 11:16 | 4022,4023 | TextINTER | 63.84.66.60 | ruben |
| 1117966 | 1/4/01 10:33 | 4022,4023 | TextINTER | 63.84.66.60 | ruben |
| 1118685 | 1/5/01 14:13 | 4022,4023 | TextINTER | 63.84.66.60 | ruben |
| 1127079 | 1/9/01 21:30 | 4022 | TextINTER | 63.84.66.89 | ruben |
| 1127200 | 1/9/01 21:36 | 4023 | TextINTER | 63.84.66.89 | ruben |
| 1117511 | 1/10/01 12:25 | 4023 | TextINTER | 63.84.66.89 | ruben |
| 1117636 | 1/10/01 12:39 | 4023 | TextINTER | 63.84.66.89 | ruben |
| 1116319 | 1/10/01 15:49 | 4022,4023 | TextINTER | 63.84.66.89 | ruben |
| 1117034 | 1/11/01 10:42 | 4022,4023 | TextINTER | 63.84.66.149 | ruben |
| 1118132 | 1/11/01 11:11 | 4023 | TextINTER | 63.84.66.149 | ruben |
| 1115495 | 1/12/01 11:11 | 4022,4023 | TextINTER | 63.84.66.149 | ruben |
| 1112473 | 1/17/01 9:30 | 4022,4023 | TextINTER | 63.84.66.69 | ruben |
| 1112711 | 1/18/01 9:47 | 4022,4023 | TextINTER | 63.84.66.69 | ruben |
| 1112500 | 1/18/01 11:04 | 4022,4023 | TextINTER | 63.84.66.69 | ruben |
| 575306 | 11/27/01 20:31 | 555001 | TextINTER | 208.239.6.132 | omni |
| 660083 | 11/27/01 20:32 | 555001 | TextINTER | 208.239.6.154 | omni |
| 877073 | 4/12/02 15:18 | 6446 | TextINTER | 65.204.164.49 | platforma |
| 877074 | 4/12/02 15:19 | 6446 | Completes | 65.204.164.49 | platforma |
| 877210 | 4/12/02 15:19 | 6446 | Incompletes | 65.204.164.49 | platforma |
| 650912 | 4/15/02 16:58 | 6446 | TextINTER | 65.204.164.49 | platforma |
| 651287 | 4/15/02 16:58 | 6446 | Completes | 65.204.164.49 | platforma |
| 651291 | 4/15/02 17:01 | 6446 | TextINTER | 65.204.164.49 | platforma |
| 650914 | 4/15/02 17:01 | 6446 | Incompletes | 65.204.164.49 | platforma |
| 668513 | 4/18/02 15:35 | 7551 | TextINTER | 208.239.6.149 | bird |
| 585939 | 4/18/02 15:36 | 7551 | Completes | 208.239.6.149 | bird |
| 668391 | 4/18/02 15:37 | 7551 | Traffic | 208.239.6.149 | bird |
| 585943 | 4/18/02 15:37 | 7551 | Completes | 208.239.6.149 | bird |
| 585944 | 4/18/02 15:38 | 7551 | Traffic | 208.239.6.149 | bird |
| 585947 | 4/18/02 15:40 | 7551 | DaySum | 208.239.6.149 | bird |
| 585948 | 4/18/02 15:40 | 7551 | TrafficAccount | 208.239.6.149 | bird |
| 668519 | 4/18/02 15:40 | 7551 | Completes | 208.239.6.149 | bird |
| 585949 | 4/18/02 15:41 | 7551 | Traffic | 208.239.6.149 | bird |
| 668392 | 4/18/02 15:41 | 7551 | Completes | 208.239.6.149 | bird |
| 668393 | 4/18/02 15:42 | 7551 | Completes | 208.239.6.149 | bird |
| 767968 | 4/22/02 18:35 | 6446 | TextINTER | 63.84.67.245 | PLATFORMA |
| 767969 | 4/22/02 18:35 | 6446 | Completes | 63.84.67.245 | PLATFORMA |
| 768120 | 4/22/02 18:36 | 6446 | Completes | 63.84.67.245 | PLATFORMA |
| 767890 | 4/22/02 18:39 | 6446 | TextINTER | 63.84.67.245 | PLATFORMA |
| 767892 | 4/22/02 18:39 | 6446 | Incompletes | 63.84.67.245 | PLATFORMA |



REDACTED

| From: | rperez [rperez@telconetcorp.com] |
|---|---|
| Sent: | Tuesday, June 17, 2003 10:56 AM |
| To: | gregorio@bbgcomm.com |
| Subject: | RE: Re: RE: Telcell St. Marteen |

Gregorio,

Aun no me reuno con Jorge, debe de estar por llegar en unas cuantas horas.

En caso que necesites llamarme, lo puedes hacer a:

758-284-8588.

Ronald
>--- Original Message ---
>From: "Gregorio Galicot" <gregorio@bbgcomm.com>
>To: "rperez" <rperez@telconetcorp.com>
>Date: 6/17/03 10:15:12 AM
>
>Ronald,
>
>No que es lo que quieran... pero se me hace buena idea llevarlos a visitar
>un lugar.... puedes organizarlo con Jorge Macari ya que el les puede dar
>buen show en Cancun.
>
>Preguntale a ver que opina......
>
>Goyo
>
>----- Original Message -----
>From: "rperez" <rperez@telconetcorp.com>
>To: <gregorio@bbgcomm.com>
>Sent: Tuesday, June 17, 2003 8:28 AM
>Subject: FW: RE: Telcell St. Marteen
>
>
>>
>> Estimado Gregorio,
>>
>> Telcell quiere visitar algun lugar donde tengamos servicio actualmente.
>> A donde podriamos llevarlo? Pienso que talvez quiera dinero tambien,
>> no crees?
>>
>> Espero tus comentarios para responderles respectivamente.
>>
>> Ronald
>>
>> >--- Original Message ---
>> >From: Carmen Lake-Reyes <creyes@telem.an>
>> >To: 'Ronald Perez' <rperez@telconetcorp.com>
>> >Date: 6/16/03 1:45:31 PM
>> >
>> I went over the contract with Brian and he wants to make to do

1

CONFIDENTIAL



EXHIBIT
3

BBG 001264

```
 >> a site
 >> >(reference) visit to any of the island you have the service
 >> set up before
 >> >signing the contract.  I see that you've but NCIC St. Lucia
 >> as the company
 >> >we will be signing che contract with, perhaps he could visit
 >> you in St.
 >> >Lucia first which would allow him to thoroughly test your
product
 >> before
 >> >signing off.
 >> >
 >> >Let me know when and nd if this is possible.
 >> >
 >> >Regards,
 >> >
 >> >Carmen
 >> >
 >> >-----Original Message-----
 >> >From: Ronald Perez [mailto:rperez@telconetcorp.com]
 >> >Sent: Sunday, June 15, 2003 12:34 AM
 >> >To: 'Carmen Lake-Reyes'
 >> >Cc: 'Brian Mingo'
 >> >Subject: FW: NCIC
 >> >
 >> >
 >> >
 >> >Dear Carmen,
 >> >
 >> >
 >> >
 >> >We did not received your comments to our agreed contract
on
 >> Friday. I am
 >> >including it once more time just in case you did not received
 >> the previously
 >> >sent.
 >> >
 >> >
 >> >
 >> >We are ready to come and visit you to sign this agreement
and
 >> initiate the
 >> >programming of our access number. Please be so kind to let
me
 >> know the best
 >> >date for this signature. I am planning to come to the island
 >> next Friday
 >> >June 20th. Is this acceptable?
 >> >
 >> >
 >> >
 >> >I await your kind reply.
 >> >
 >> >
 >> >
 >> >Regards,
 >> >
 >> >
 >> >
 >> >Ronald Perez
 >> >
 >> >Tel: 281-354-5024 Ext 201
 >> >
 >> >Fax: 281-354-4094
```

2

CONFIDENTIAL

BBG 001265

```
>> >
>> >rperez@ncic.com
>> >
>> >NCIC
>> >
>> >
>> >
>> >-----Original Message-----
>> >From: Ronald Perez [mailto:rperez@telconetcorp.com]
>> >Sent: Wednesday, June 11, 2003 10:39 PM
>> >To: 'Carmen Lake-Reyes'
>> >Cc: 'Brian Mingo'
>> >Subject: RE: NCIC
>> >
>> >
>> >
>> >Dear Carmen,
>> >
>> >
>> >
>> >Thanks for your information.
>> >
>> >
>> >
>> >We have reviewed your contract draft and basically are in
agreement
>> >with the
>> >content of it. We have made some small changes reflecting
our
>> >requirements.
>> >Please review it and let me know so we can schedule a meeting
>> >for proper
>> >signature of it.
>> >
>> >
>> >
>> >In regards to the questions made by your team, I would like
>> >to confirm that
>> >NCIC will cover all advertising expenses to incur with the
marketing
>> >of the
>> >service.
>> >
>> >
>> >
>> >I look forward to your comments and response. Thanks for
the
>> >opportunity
>> >given.
>> >
>> >
>> >
>> >Regards,
>> >
>> >
>> >
>> >Ronald Perez
>> >
>> >Tel: 281-354-5024 Ext 201
>> >
>> >Fax: 281-354-4094
>> >
>> >rperez@ncic.com
>> >
>> >NCIC
```

3

CONFIDENTIAL

BBG 001266

BBG 001267

```
>  ^
>  ^
>  ^
>  ^
>  ^
>  ^
>> ------Original Message------
>> >From: Carmen Lake-Reyes [mailto:CREYES@TELEM.AN]
>> >Sent: Wednesday, June 11, 2003 9:41 AM
>> >To: Ronald Perez (E-mail)
>> >Cc: Brian Mingo
>> >Subject: FW: NCIC
>> >
>> >
>> >Attached is the adjusted contract, our legal dept. also had
>> some question,
>> >
>> >so I've forwarded those as well as part of the email.
>> >
>> >I will wait to hear from you with regards to setting up a
> meeting
>> with Brian
>> >
>> >while he is at CANTO next week.
>> >
>> >
>> >
>> >
>> >Regards,
>> >
>> >
>> >Carmen
>> >
>> >
>> >
>> >
>> >
>> >     ------Original Message------
>> >
>> >> From:       Marieke Van Zadelhoff
>> >>
>> >> Sent:       Monday, May 26, 2003 12:05 PM
>> >>
>> >> To:    Carmen Reyes
>> >>
>> >> Cc:    Brian Mingo
>> >>
>> >> Subject:    RE: NCIC
>> >>
>> >>
>> >>
>> >> I adjusted the agreement sort of according to the one we
> have
>> >> with Global
>> >>
>> >> Link. (They provide exclusive services on TelEm's public
> payphones
>> >> on
>> >>
>> >> behalf of TelEm. )
>> >>
>> >> I do have some questions. Who is taking care of the advertising?
>> The
>> >>
>> >> revenues, if we talk about 'billed calls' that means that
```

                                    CONFIDENTIAL

                                            4

```
>> Telcell will
>> >
>> >> loose money for all connections made but not billed. We
can
>> change that by
>> >
>> >> charging for all completed calls and of course describe
completed
>> calls.
>> >
>> >> The exclusivity is not completely possible due to the 0801
>> service we also
>> >
>> >> have to provide via the mobile platform. Do you want to
charge
>> a security
>> >
>> >> deposit. The company does not have a local address, how
well
>> do we know
>> >
>> >> the company?? Does this company have an agreement with
Smitcoms
>> for the
>> >
>> >> international part, if yes, is the amount Smitcoms wants
for
>> the service
>> >
>> >> calculated in the revenues??
>> >
>> >>
>> >
>> >> That brings me to another question. Is it the intention
that
>> this service
>> >
>> >> is going to be billed via a 0801 number?
>> >
>> >>
>> >
>> >> Regards,
>> >
>> >> Marieke van Zadelhoff
>> >
>> >>
>> >
>> >>   <<telcell service contract ncic.doc>>
>> >
>> >>
>> >
>> >>
>> >
>> >
>>
>>
>>
>
>
>
```

CONFIDENTIAL

EBG 001268

**In the United States District Court
For the Eastern District of Texas
Marshall Division**

| | | |
|---|---|---|
| BBG Communications, Inc. | § | |
| BBG Holdings Limited | § | |
| v. | § | **Civil Action No. 2:03-CV-227** |
| | § | |
| 1) Network Communications | § | **(Hon. T. John Ward)** |
| International Corp.; | § | |
| 2) Blue Phone Limited; | § | |
| 3) William Pope; | § | |
| 4) Jay Walters; and | § | |
| 5) Jeffery Walters | § | |

**ORDER REGARDING THIRD-PARTY DEFENDANTS' MOTION TO DISMISS
AND THIRD-PARTY PLAINTIFFS' MEMORANDUM IN OPPOSITION TO
MOTION TO DISMISS**

Upon consideration of Third-Party Defendants Rafael Galicot, Ricardo Singer, and Gregorio L. Galicot's Motion to Dismiss for Lack of Personal Jurisdiction and Third-Party Plaintiffs' Memorandum in Opposition to that Motion to Dismiss, it is the Court's opinion that the Third-Party Defendants' Motion should be denied.

It is, therefore, ORDERED that Third-Party Defendants Rafael Galicot, Ricardo Singer, and Gregorio L. Galicot's Motion to Dismiss is hereby DENIED.

Signed on this the _____ day of _____, 2004.

_____
UNITED STATES DISTRICT JUDGE

# 167537.1