FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF TEXAS

JUN 11 2004

DAVID MALAND, CLERK
By
Deputy

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BBG COMMUNICATIONS, INC. | § | |
| V. | § | |
| NETWORK COMMUNICATIONS INTERNATIONAL CORP.; WILLIAM POPE; JAY WALTERS; and JEFFERY WALTERS | § | |
| V. | § | CIVIL ACTION NO. 2:03-CV-227-TJW |
| | § | (JUDGE WARD) |
| RONALD PEREZ, RICARDO SINGER, GREGORIO L. GALICOT, RAFAEL GALICOT, MICHAEL STOMPS, AWI FANG a/k/a SURIYANTO SURIYANTO, GORAN ALEXIEV, MICHAEL ALEXIEV, PATRICK MAUCHANT, KEVIN WATT, BBG HOLDINGS BERMUD d/b/a BBG COMMUNICATIONS (BERMUDA) LTD. | § | |

**REPLY OF THIRD-PARTY DEFENDANTS IN SUPPORT
OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

**I.**

**INTRODUCTION**

Defendant Network Communications International Corp.'s ("NCIC's") Opposition is a desperate attempt to toss up a hodgepodge of theories for asserting personal jurisdiction over individual third-party defendants Rafael Galicot, Ricardo Singer, and Gregorio L. Galicot (collectively referred to hereinafter as the "Individuals"), hoping that one will stick. NCIC's Opposition contains misrepresentations of the factual record, and is further built on tenuous assertions that are unsupported by authenticated evidence or appropriate legal precedent. Its attempts to subject the Individuals to personal jurisdiction in Texas do not satisfy the legal requirements for personal jurisdiction, and must fail.

## II.

## NCIC HAS NOT PROPERLY PLED OR ESTABLISHED GENERAL JURISDICTION

A.  *NCIC's Failure to Plead General Jurisdiction in its Complaint is Fatal to that Theory*.

Grasping for any shred of authority to support its assertion of general jurisdiction, NCIC cites an unpublished opinion from the Sixth Circuit. *See* Malone v. Windsor Casino, Ltd., 2001 WL 873749 (6th Cir. 2001) (attached as Exhibit A). NCIC claims Malone "indicated" that a failure to raise general jurisdiction in a complaint does not forbid a party from raising it in response to a motion to dismiss. *See* NCIC Opposition at page 4.

To the contrary, United States Supreme Court precedent conflicts with NCIC's interpretation of Malone, including in one of the very cases cited by Malone, entitled McNutt v. General Motors Acceptance Corp. of Indiana, Inc., 298 U.S. 178. 189 (1936). *See* Malone, 2001 WL 873749 at *2. The Supreme Court has declared that a plaintiff, "must allege in his pleading the facts essential to show jurisdiction. If he fails to make the necessary allegations he has no standing." McNutt, 298 U.S. at 189 (emphasis added) (dismissing a case based on failure to demonstrate subject matter jurisdiction). McNutt was followed by a case in which the Supreme Court stated that an action should be dismissed when "it cannot fairly be said that jurisdiction appears on the face of the complaint." KVOS, Inc. v. Associated Press, 299 U.S. 269 (1936) (emphasis added) (dealing with an assertion attempting to establish the amount in controversy needed for subject matter jurisdiction). The necessity of formally pleading assertions of jurisdiction is also analogously evident in the axiomatic "well-pleaded-complaint" rule, which requires that a plaintiff plead facts sufficient to establish federal-question jurisdiction on the face of the complaint. *See* Caterpillar, Inc. v. Williams, 482 U.S. 386, 392 (1987).

In light of Supreme Court precedent set forth above, general jurisdiction cannot be alleged as an afterthought aimed at trying to make some sort of personal jurisdiction adhere to the Individuals. In fact, the holding in the one unpublished case from the Sixth Circuit cited by NCIC as authority for its general jurisdiction argument actually upheld a district court's decision to dismiss an action based on the plaintiffs failure to allege a valid basis for personal jurisdiction. *See* Malone, 2001 WL 873749 at *2 (attached as Exhibit A). Malone never directly addressed the issue of whether general jurisdiction can be alleged post-pleading. *See id.*

Moreover, the unpublished Malone decision should not be considered true "precedent" under Fifth Circuit Rule 47.5.4, and could at most be "persuasive." See Exhibit B at page 3. To cite Malone as persuasive precedent, NCIC was required to attach a copy of the opinion to its Opposition. *See id.* NCIC failed to attach such a copy, thereby violating the Fifth Circuit Rule regarding citation of unpublished opinions. *See id.*; *see also* Johnson Decl., Exhibit H at page 4, ¶11. Moreover, under Sixth Circuit Rule 28(g), citation of an unpublished opinion such as Malone would be "disfavored." See Exhibit C at page 1.

Thus, the Malone case is weak authority at best, and is decimated by its contradiction of the Supreme Court precedent cited above. It was also improperly utilized in NCIC's Opposition. Therefore, NCIC's failure to so much as generically allege general jurisdiction in its counterclaim prevents it from raising general jurisdiction at this juncture.

B.   General Jurisdiction is Not Supported by the Facts.

Even if an inquiry into general jurisdiction were proper, NCIC's evidence and arguments do not establish a basis for general jurisdiction. General jurisdiction requires "substantial and continuous and systematic" contacts with the forum state. Religious Technology Center v. Dell Liebreich, 339 F.3d 369, 374 (5th Cir. 2003). At most, NCIC's allegations regarding the

Individuals' contacts with Texas set forth minor, sporadic, and unassociated contacts that in no way amount to the sort of ongoing, significant contacts contemplated by general jurisdiction. *See* Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 413-419 (1984) (a corporation's actions in sending its chief executive officer to Texas for a contractnegotiation session, accepting into its New York bank account checks drawn on a Texas bank, purchasing helicopters, equipment, and training services from a Texas company for substantial sums, and sending personnel to that companies facilities in Texas for training were not "continuous and systematic" contacts that would support general jurisdiction).

NCIC's Opposition does not even attempt to set forth any factual allegations regarding R. Singer that would support general jurisdiction. See NCIC Opposition at pages 6-7. It seems NCIC has conceded a lack of general jurisdiction with respect to R. Singer. *Id.*

As for G. Galicot, the unauthenticated e-mails cited by NCIC in Exhibit 3 to its Opposition in no way demonstrate that G. Galicot sent or received any e-mails to or from Longview, Texas (NCIC is even confused on that point, as the Walters Affidavit states "from" Texas and the Opposition states "to" Texas). *See* Walters Affidavit at page 2, ¶7; NCIC Opposition at page 7. Furthermore, the alleged "visiting [of] the ICS facility in Longview, Texas to discuss various business contracts" contains no substantive or logical basis for a conclusion that G. Galicot's visit (which NCIC's Opposition baselessly describes as "several" visits) amounts to "substantial and continuous and systematic" contacts with Texas. *See id., see also* Religious Technology Center, 339 F.3d at 374; Helicopteros, 466 U.S. at 413-419.

Similarly, the allegations regarding R. Galicot's "several" trips to Texas and (telephonic) participation in ICS board meetings that took place in Texas are not proof of "substantial and continuous and systematic" contacts with Texas. *See* Walters Affidavit at pages 2-3, ¶6; NCIC

Opposition at page 6; *see also* Religious Technology Center, 339 F.3d at 374. At most, they would demonstrate a few rare instances in which R. Galicot's activities have led to some peripheral connection with Texas uncharacteristic of general jurisdiction.

### III.

### NCIC HAS NOT ALLEGED A SUFFICIENT BASIS FOR SPECIFIC JURISDICTION OVER THE INDIVIDUALS

A.   NCIC's Allegations Regarding the Actions of the Individuals Do Not Satisfy the "Effects" Test for Establishing Specific Jurisdiction.

NCIC's Opposition completely fails to address the overwhelming weight of precedent cited by the Individuals which establishes that, unless the Individuals "expressly aimed" their allegedly tortious conduct at Texas, the "mere fortuity" that NCIC resides in Texas will not support personal jurisdiction over them in Texas. *See* Southmark Corp. v. Life Investors, Inc., 851 F.2d 763, 773 (5th Cir. 1988). For personal jurisdiction to hold based on harmful effects, the Individuals must have "purposefully directed" their conduct towards Texas, making it the "focal point of [their] actions." *See* Panda Brandywine Corp. v. Potomac Electric Power Co., 253 F.3d 865, 869 (5th Cir. 2001); Revell v. Lidov, 317 F.3d 467, 470 (5th Cir. 2002). NCIC continues to misconstrue that precedent by asserting that the Individuals' "purposeful creation" was their "knowing interference" with NCIC's contracts "in key markets where NCIC does business." NCIC Opposition at page 5. Again, NCIC fails to allege that the Individuals purposefully created effects in Texas, which is the entire crux of the "effects" test. *See* Panda Brandywine, 253 F.3d at 869. Thus (at least as to R. Singer and R. Galicot), it has failed to establish the first Prejean requirement of purposeful creation of effects "in that forum" (Texas). *See* Prejean v. Sonantrach, Inc., 652 F.2d 1260, 1269 (5th Cir. 1981).

As to the second Prejean factor regarding "other substantial contacts with the forum,"

NCIC's allegations about occasional trips to and communications with persons in Texas are, at most, assertions of sporadic and meager instances of attenuated contacts with Texas which (as demonstrated above under the discussion regarding general jurisdiction) are not "substantial." *See id.; see also* NCIC Opposition at page 5; Walters Affidavit at pages 2-3, ¶¶6-8. Thus, NCIC fails to demonstrate the "substantiality" of contacts with Texas by the Individuals.

Finally, NCIC continues to fail at providing any evidence of the third Prejean factor regarding the "substantiality of the effect itself." *See* Prejean, 652 F.2d at 1269. The best that NCIC offers in its Opposition is an unauthenticated, vague, and generic statement that NCIC "sustained economic losses as well as damage to its business reputation and good will." NCIC Opposition at page 5. That unspecific assertion gives no indication as to the "substantiality" or seriousness of any such effects, leaving the Court unable to assess the level of effects or apply the Prejean test properly. *See* Prejean, 652 F.2d at 1269. Because no allegation as to substantiality is made, and because NCIC bears the burden of establishing a prima facie case for personal jurisdiction, the Court should find that a basis for jurisdiction has not been established. *See* Kelly v. Syria Shell Petroleum Development B.V., 213 F.3d 841, 854 (5th Cir. 2000).

For all of those reasons, specific jurisdiction over the Individuals is improper based on an "effects" test justification.

B.  <u>Allegations that the Individuals May Have Accessed NCIC's Server Are Unfounded and Insufficient to Establish Specific Jurisdiction.</u>

Suggestions by NCIC that the Individuals "may have accessed" NCIC's Texasbased server are disingenuous and contradicted by concrete deposition testimony. Both G. Galicot and R. Galicot testified at length in depositions that independent agents of BBG were the ones who merely accessed databases containing records of their own proprietary call volume traffic while at BBG's offices. *See* G. Galicot Depo., Exhibit D at pages 26:18-44:7, 87:13-93:2; R. Galicot

Depo., Exhibit E at pages 100:23-105:7, 114:20-116:22, 122:16-128:23, 132:1-139:17; G. Galicot Depo., Exhibit F at pages 7:10-31:11, 44:3-47:21. The records accessed reflected the independent agents' own business they had previously processed through NCIC and were switching to BBG. *See id.*

The lawful acts of those agents in accessing their own information do not provide even an attenuated basis for subjecting the Individuals to personal jurisdiction in Texas. The Individuals themselves never took the actions alleged. G. Galicot expressly denies under oath ever accessing NCIC's server, and R. Singer has never been identified as one who accessed NCIC's server. G. Galicot Depo., Exhibit D at pages 35:10-39:18; R. Galicot Depo., Exhibit E at pages 134:2-139:17; G. Galicot Depo. Exhibit F at pages 46:4-47:21. The only instance in which R. Galicot accessed call volume information was in an authorized visit to the database of a company named United Shipping through a link that had been provided to him. R. Galicot Depo., Exhibit E at pages 103:14-104:17; 125:16-128:23. Thus, explicit testimony contradicts NCIC's claim that the Individuals "may have accessed" its server in authorized and/or unauthorized capacities.

Furthermore, the attempts in the Walters Affidavit and NCIC's Opposition to establish specific jurisdiction based on what "may have" happened are absurd. *See* Walters Affidavit at pages 2-3, ¶¶6-8; NCIC Opposition at page 6. NCIC bears the burden of establishing a prima facie case of personal jurisdiction. *See* Kelly, 213 F.3d at 854. Flinging ambivalent allegations around that the BBG Individuals "may have" had certain contacts with Texas is a frivolous attempt to meet that burden. If persons could be hailed into a forum based on equivocal allegations about what they "may have" done, any plaintiff could draw up generalized, unsubstantiated allegations about what a defendant "may have" done in a forum, and thereby force that defendant to appear. Such a license would stretch the boundaries of the personal

jurisdiction power beyond any meaningful limits.

Personal jurisdiction requires acts amounting to "purposeful availment" such that a defendant would "reasonably anticipate" being hailed into a particular forum. *See* Panda Brandywine, 253 F.3d at 868-869; Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 474 (1985). If NCIC cannot even expressly claim that the Individuals took specific, purposeful actions without qualifying its allegations (and trying to make the Individuals guilty by association with others about whose actions they "would have had knowledge"), it certainly cannot use those vague assertions as a foundation for claiming the Individuals purposefully availed themselves of the Texas forum or reasonably foresaw being hailed into Texas. *See* Walters Affidavit at pages 2-3, ¶¶6-8; NCIC Opposition at pages 6-7.

NCIC's claims are also unreasonably vague and ambivalent, especially considering the fact that a separate affidavit of Mr. Walters claims that Michael Stomps also "may have" been a person who accessed its server. *See* Walters Affidavit, Exhibit G at pages 2-3, ¶7. If such tenuous allegations supported personal jurisdiction, there would be no end to the parade of persons NCIC could hail into the Texas forum. NCIC could blindly claim that the janitor on the night shift at BBG "may have" accessed NCIC's server from a plug at the BBG offices, and force that janitor to defend a suit in Texas without any solid allegations of wrongdoing.

NCIC's claims about what the Individuals "may have" done are contradicted by sworn deposition testimony of which NCIC was aware when it filed its Opposition, and are incredibly equivocal anyway. Such claims do not establish a basis for specific jurisdiction over the Individuals.

C.  Rafael Galicot's Trip to Texas to Discuss Bahaman Contracts Is Not Sufficient to Establish Specific Jurisdiction.

NCIC's attempt to hook specific jurisdiction on R. Galicot by alleging that he took place in discussions regarding contracts for the Bahamas at NCIC's facility in Texas. *See* Walters Affidavit at page 2, ¶6; NCIC Opposition at pages 5-6. NCIC seems to be trying to establish that R. Galicot's discussion supports specific jurisdiction because it is "arising from or related to" the claim being asserted regarding his allegedly tortious actions related to Bahaman contracts. *See id.*

However, NCIC has not alleged or argued that R. Galicot's trips to the NCIC facility involved the actual instance(s) of tortious behavior of which he is accused. *See id.* The fact that R. Galicot may have been in Texas at one time discussing contracts for the Bahamas and at another time took allegedly tortious actions with respect to contracts for the Bahamas does not establish that the cause of action regarding his alleged torts is "arising from or related to" his original trip(s) to the NCIC facility to "discuss" the Bahaman contracts.

NCIC has not established that R. Galicot took his allegedly tortious actions regarding Bahaman contracts while on his trip to NCIC's Texas facility. *See id.* Therefore, it has not established that specific jurisdiction should hold as arising out of or related to that trip.

D.  The Fiduciary Shield Doctrine and its Exceptions Are Not Useful for Determining Personal Jurisdiction Over the Individuals.

The fiduciary shield doctrine holds that individuals are shielded from personal jurisdiction in a forum where their actions were taken in a representative capacity on behalf of a corporation, which the Individuals' actions here were. *See* Stuart v. Spademan, 772 F.2d 1185, 1197-1198 (5th Cir. 1985). However, an exception exists, such that a corporation's contacts with a forum may be attributed to an individual when that individual would be personally liable for

tortious activities performed on behalf of the corporation, which NCIC's Counterclaim and Opposition seem to assert. *See id.; see also* NCIC Counterclaim generally; NCIC Opposition at pages 7-8.

Based on Stuart and the logic of the cases it cites, it seems the exception to the fiduciary shield doctrine should only function to attribute a corporation's specific jurisdictional contacts regarding the relevant matter to a corporate representative, as opposed to all of a corporation's general jurisdictional contacts. *See id.* at 1197-1199. Otherwise, a plaintiff would need only allege tortious acts of a corporate representative defendant on behalf of a corporation in order to automatically claim that all of a corporation's broad general jurisdiction-type contacts with a forum (no matter how unrelated to the relevant matter) should apply in assessing personal jurisdiction over the individual. Such a rule would create an unfair, perverse incentive for plaintiffs to allege that corporate representatives have committed tortious acts on behalf of their corporations.

By limiting the attributable corporate contacts to specific jurisdiction-type contacts relevant to the immediate action, the fiduciary shield doctrine and its exception should retain viability. The doctrine and its exception can together protect corporate representatives from personal jurisdiction based on general acts taken on behalf of a corporation, unless those acts on the corporation's behalf would also trigger independent personal liability of the representatives (in which case, the acts of the corporation relevant for assessing specific jurisdiction would be attributable to the representatives for purposes of personal jurisdiction, as an exception to the fiduciary shield doctrine). See id. Moreover, it seems that this very obscure exception is greatly overshadowed by (and perhaps largely intermingled with) a companion exception in which attribution of corporate contacts to representatives is allowed where the representative is the alter

ego of a corporation. *See id.; see also* Patin v. Thoroughbred Power Boats, Inc., 294 F.3d 640, 653 (5th Cir. 2002).

Here, NCIC's Opposition provides no argument as to how the Individuals may be alter egos of BBG or independently personally liable for tortious conduct such that the contacts of BBG with Texas should be attributed to the Individuals. Even if such arguments are considered viable based on NCIC's Counterclaim, it seems that, at most, the specific jurisdiction-type contacts of BBG relevant to the allegations in this case are what might potentially be attributed to the Individuals, not all of BBG's other generalized contacts with Texas. *See* Spademan, 772 F.2d at 1197-1199. Because BBG's contacts in this case relating to specific jurisdiction are essentially synonymous with those of the Individuals, personal jurisdiction cannot hold on that sort of attribution theory, because, as demonstrated above, the contacts of the Individuals with Texas are insufficient to support specific personal jurisdiction.

## IV.

## CONCLUSION

NCIC has not presented any arguments amounting to prima facie evidence that personal jurisdiction over the Individuals should hold in Texas. Accordingly, the Individuals respectfully request that this Motion to Dismiss be granted as to each of them.

Respectfully submitted,

By: _____
Gregory P. Love
Texas Bar No. 24013060
WELLBORN, HOUSTON, ADKISON,
MANN, SADLER & HILL, LLP
300 W. Main Street
Henderson, Texas 75652
Telephone: (903) 657-8544
Facsimile: (903) 657-6108

Frank J. Johnson, Jr. – Attorney-in-charge
California Bar No. 174882
SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP
12544 High Bluff Drive, Suite 300
San Diego, CA 92130-3051
Telephone: 858-720-8900
Facsimile: 858-509-3691

Tawnya R. Wojciechowski
California Bar No. 180,063
SHEPPARD, MULLIN, RICHTER
& HAMPTON LLP
650 Town Center Drive, 4th Floor
Costa Mesa, CA 92626-1925
Telephone: 714-513-5100
Facsimile: 714-513-5130

ATTORNEYS FOR PLAINTIFFS
BBG COMMUNICATIONS, INC
BBG HOLDINGS LIMITED

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document was served on all parties via United States certified mail, return receipt requested on this __10__ day of June, 2004.

_____
Gregory P. Love

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BBG COMMUNICATIONS, INC. | § | |
| V. | § | |
| NETWORK COMMUNICATIONS INTERNATIONAL CORP.; WILLIAM POPE; JAY WALTERS; and JEFFERY WALTERS | § § § § § | |
| V. | § § | CIVIL ACTION NO. 2:03-CV-227-TJW (JUDGE WARD) |
| RONALD PEREZ, RICARDO SINGER, GREGORIO L. GALICOT, RAFAEL GALICOT, MICHAEL STOMPS, AWI FANG a/k/a SURIYANTO SURIYANTO, GORAN ALEXIEV, MICHAEL ALEXIEV, PATRICK MAUCHANT, KEVIN WATT, BBG HOLDINGS BERMUD d/b/a BBG COMMUNICATIONS (BERMUDA) LTD. | § § § § § § § § § | |

### AFFIDAVIT OF GREGORY P. LOVE IN SUPPORT OF REPLY OF THIRD-PARTY DEFENDANT S IN SUPPORT OF THEIR MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Before me, the undersigned authority, did on this day personally appear Gregory P. Love, who, after being duly sworn, did state the following:

"I am an attorney with WELLBORN ★HOUSTON, LLP, attorneys of record for third-party defendants Gregorio L. Galicot, Rafael Galicot, and Ricardo Singer (collectively referred to hereinafter as the "Individuals").

If called as a witness, I could and would competently testify to all facts within my personal knowledge except where stated upon information and belief.

This affidavit is submitted in support of the Reply of Third-Party Defendants in Support of Their Motion to Dismiss for Lack of Personal Jurisdiction.

Attached as Exhibit A is a true and correct copy of an unpublished opinion from the

electronic case law database, entitled "Malone vs. Windsor Casino, Ltd., 2001 WL 873749 (6th Cir. 2001)."

Attached as Exhibit B is a true and correct copy of Rule 47 of the Fifth Circuit Rules I caused to be printed from the LexisNexis Mathew Bender Online database.

Attached as Exhibit C is a true and correct copy of Rule 28 of the Sixth Circuit Rules I caused to printed from the LexisNexis Mathew Bender Online database.

Attached as Exhibit D are copies of selected portions of the Deposition of Gregorio Galicot of May 24, 2004 which, based on my review, are true and correct copies of the official deposition transcript, marked to identify the relevant portions.

Attached as Exhibit E are copies of selected portions of the Deposition of Rafael Galicot of May 25, 2004 which, based on my review, are true and correct copies of the official deposition transcript, marked to identify the relevant portions.

Attached as Exhibit F are copies of selected portions of the Rough Draft of the Deposition of Gregorio Galicot of May 27, 2004 which I caused to be printed from the electronic file sent to me by court reporter who reported the deposition, Laura Bollschweiler. The copies are, based on my review, true and correct copies of the electronic file sent to me by Ms. Bollschweiler, The Rough Draft portions are attached because, to my knowledge, the official transcript of this deposition is not yet completed.

Attached as Exhibit G is a copy of the Affidavit of Jay D. Walters regarding Michael Stomps. This copy is a true and correct copy of the electronic file of the Affidavit that I retrieved from this Court's electronic database.

Based on my review of the Opposition and supporting exhibits of Network Communications International Corporation ("NCIC") to the Individuals' Motion to Dismiss for

Lack of Personal Jurisdiction which was retrieved from this Court's electronic database, NCIC failed to attach a copy of the unpublished opinion of the United States Court of Appeals for the Sixth Circuit entitled, "Malone vs. Windsor Casino, Ltd, 2001 WL 873749 (6th Cir. 2001)" to its Opposition."

Executed on the 11th day of June, 2004.

Gregory P. Love

SUBSCRIBED AND SWORN TO BEFORE ME, the undersigned authority by GREGORY P. LOVE on the 11th day of June, 2004.


MICHELLE L. HARRIS
MY COMMISSION EXPIRES
January 12, 2007

Michelle L. Harris
Notary Public in and for the State of Texas

EXHIBITS NOT SCANNED

ORIGINALS ARE IN THE

CLERK'S OFFICE