**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

FILED
U. S. DISTRICT COURT
Eastern District of Texas

AUG 3 0 2004

DAVID MALAND, CLERK
By
Deputy

| | | |
|---|---|---|
| BBG COMMUNICATIONS, INC. | § | CIVIL ACTION NO. 2:03-CV-227 |
| And BBG HOLDINGS LIMITED | § | |
| | § | |
| V. | § | JUDGE WARD |
| | § | |
| NETWORK COMMUNICATIONS | § | |
| INTERNATIONAL CORP., | § | |
| BLUE PHONES LIMITED; | § | |
| WILLIAM POPE, JAY WALTERS, | § | |
| AND JEFFREY WALTERS | § | |

<u>**DEFENDANT NETWORK COMMUNICATIONS INTERNATIONAL CORP. , ET AL'S
("NCIC") MOTION TO COMPEL BBG COMMUNICATIONS, INC., ET AL ("BBG")
TO COMPLY WITH REQUEST FOR PRODUCTION AND TO SUPPLEMENT
RESPONSES TO DISCOVERY**</u>

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COMES, NCIC which files this Motion asking the Court to compel BBG to supplement its responses to discovery and show the Court as follows:

<u>**INTRODUCTION**</u>

BBG essentially has ceased responding to NCIC's Interrogatories, formal Requests for Production of Documents, requests for supplementation of prior requests for production and requests for disclosures, while continuing to file numerous similar requests upon NCIC. (See Exhibit "A"). NCIC has made repeated requests for such responses, however, NCIC has been unable to obtain responses to the requests, much less the subject discovery sought. Indeed, more than a dozen inquiries by NCIC with respect to these requests have resulted in no response whatsoever. NCIC has confirmed that such requests were received by counsel for BBG, however, for reasons best known to

1

BBG, BBG refuses to even directly address NCIC's attempts to create a dialogue on unanswered or inadequately answered discovery requests.

**I.      Discovery Requests Pertaining to Damages.**

At the inception of these proceedings, NCIC acknowledged the use of an internet domain name (BBGcom.com) which resulted in internet correspondence apparently intended for BBG being received by NCIC.  In addition to these facts, which cost an unenviable light upon NCIC and other recipients of this e-mail, some of the recipients, including Blue Phone, made spirited remarks about actions they should or would take in response to the information contained in the e-mails which were apparently intended for BBG recipients (Eg., "we need to go after Spain...").   Despite these unflattering circumstances, neither NCIC nor the other Defendants herein are aware of a single contract they obtained from BBG (or any other damage to BBG) in connection with any of these e-mails.  Moreover, NCIC ceased reviewing these e-mails for almost a year prior to commencement of this law suit.  Accordingly, NCIC immediately directed discovery in this matter to determine whether BBG possessed any viable damage claim arising out of the complained of conduct.

On or about April 7, 2004, NCIC propounded its First Set of Interrogatories to BBG, the first three of which seek discovery on whether BBG possesses any proof of damages.  BBG's responses were served on May 24, 2004, a copy of which is annexed hereto as Exhibit "B".  As set forth more fully in Exhibit "A",  BBG refuses to provide any substantive response to Interrogatory numbers. 2 or 3.  Moreover, in response to Interrogatory number 1, BBG provides a lengthy response, however, it merely restates the allegations of the complaint and the facts, acknowledged by NCIC, that e-mails were received by NCIC and were frequently accompanied by sophomoric, excited statements by the recipients, which in some cases included certain Defendants remarking about what they should or

2

could do with that information. This, of course, is the "choke point" of any damage claim which BBG might possess: NCIC and the other Defendants know of no contract obtained by them in connection with these e-mails or other damage caused to BBG. BBG's discovery responses to date, moreover, fail to specify (1) any act by any Defendant (or person for whom any of the Defendants are legally responsible); (2) an explanation of how that particular act caused damage to BBG[1] and; (3) a specification of how much damage was caused to BBG from the specified conduct. None of BBG's responses address these critical elements of a damage claim.

NCIC now has traveled to San Diego to take 30(b)(6) Depositions of BBG on two occasions in an attempt to obtain discovery on these matters in another form inasmuch as BBG refuses to supplement its Answers to Interrogatories. However, in the case of both 30(b)(6) Depositions, BBG was unable to specify any evidence of the amount of damages or facts pertaining to causation attributable to any Defendant. As a result of this, NCIC and other Defendants have continually requested that BBG supplement its discovery response, and BBG refuses to respond. It is quite possible that BBG possesses no evidence of causation or damage. However, NCIC believes that BBG must have *some* theory of damage and facts it will marshal in support thereof in an attempt to obtain a Judgment against it. If this is the case, BBG's refusal to provide discovery responses to these requests, more than a year after filing its lawsuit and after the original trial setting of this matter begins to create the appearance that it is intentionally concealing its damage theory and evidence until the last moment in order to disadvantage NCIC and the other Defendants. A discovery deadline looms as of October 29, 2004 and no damage disclosure has been made by BBG. NCIC is fearful

---

[1]BBG claims in certain circumstances, without elaboration, NCIC **delayed** BBG's successful negotiation of a contract. Presumably, BBG is able to show specific acts which caused the delay and an approximate date by which BBG would have obtained the contract absent such action by NCIC or

3

that gamesmanship may be afoot whereby BBG will wait until the last moment (perhaps when this Court rules on this Motion to Compel) and disclose its facts, with witnesses spread far from across the globe, resulting in NCIC and the other Defendants having inadequate time and resources to address these belated discovery responses. Accordingly, in the absence of some sound and persuasive reason being advanced for BBG's failure to provide timely discovery responses on damages, NCIC respectfully requests that this Court consider imposing appropriate sanctions, including the exclusion of evidence based upon untimely damages disclosures, in order to prevent prejudice to NCIC and the other Defendants arising out of dilatory discovery tactics.

## II.   Request for Production of June 29, 2004.

On June 29, 2004, counsel for NCIC sent a letter Request for Production to BBG containing twelve (12) specific categories of documents with respect to which it seeks disclosure. (See Exhibit "C".) On July 9, 2004, counsel for BBG sent a terse response refusing to provide *any* of the requests documents on the basis of blanket assertions that such documents were not relevant to any claim or defense in the case (See Exhibit "D".) As BBG is keenly aware, the discovery requests are directed to NCIC's First Affirmative Defense, asserted from the inception of this litigation, of equitable estoppel or "unclean hands" by BBG. From NCIC's perspective, any claim for damages, and, in particular, any claim for equitable relief, such as injunctive relief, by BBG on the basis of alleged unlawful "stickering" or bribing of foreign telephone operators would appear to be highly suspect if not clearly barred as a result of BBG's reputation for engaging in such conduct on a broader basis than any other entity in the international telecommunications industry. The requests for production of June 29 are squarely directed to this issue, as BBG is well aware. Not only does BBG refuse to

other Defendants. Its discovery responses fail to provide such information.

produce any documents responsive to this request, despite numerous communications directed to BBG since June 29 asking it to reconsider its position, it immediately thereafter filed a Motion for Injunctive Relief arising out of alleged stickering. The documents requested would be directly relevant to BBG's entitlement to Injunctive Relief at that hearing now set for September 2, 2004. However, BBG improperly refuses to produce discovery in conjunction therewith. At a minimum, BBG should be required to produce documents responsive to these requests prior to the hearing for its Preliminary Injunction set for September 2, 2004.

**III.    Discovery Requests Pertaining to Stickering.**

On April 24, 2003, Gregorio Galicot began sending electronic mails directly to William Pope ("Pope") accompanied by photographs of what purported to be phones in Italy bearing stickers with 800 numbers. (See Exhibit "E".) These electronic mails were sent directly to Pope at regular intervals over the next two months. At the 30(b)(6) deposition held on May 24, 2004, in San Diego, one of the topics specified dealt with proof of unlawful stickering. At that deposition, counsel for NCIC asked Gregorio Galicot, (BBG's designated representative) about "stickering" activities in Italy, but he could not identify any one at NCIC who was allegedly engaged in any stickering. (See Excerpt from Galicot Deposition attached as Exhibit "F".)

On July 5, 2004, counsel for BBG, in an electronic mail, stated that she had "newly discovered" information concerning "stickers" allegedly placed by NCIC's agents on BBG phones in Italy. This e-mail was not accompanied by any of this "new information". (See Exhibit "G".) Counsel for NCIC promptly responded by requesting that BBG supplement its discovery responses and pointing out that Gregorio Galicot's electronic mails to Bill Pope do not constitute appropriate, sworn disclosures. (See Exhibit "G".) BBG did not respond. On July 12, 2004, NCIC's counsel

5

again sent an electronic mail to BBG's counsel requesting supplemental responses regarding the "new evidence." (See Exhibit "H".) On July 21, 2004, counsel for NCIC again sought such supplemental responses. (See Exhibit "I".) Again no response from BBG. On July 22, 2004, counsel for NCIC again (for the fourth time) requested supplemental discovery responses. (See Exhibit "J".) On July 25, 2004, BBG filed a Motion for a Temporary Restraining Order on—surprisingly—the issue of "stickering" of phones in Italy. BBG is in receipt of Interrogatories, formal Requests for Production and is subject to mandatory discovery obligations on this subject. It apparently has no intention to supplement these responses outside that which it chooses to reveal in its surprise Motion, <u>until</u> <u>that</u> <u>Motion</u> <u>is</u> <u>heard</u>. Full supplemental responses as requested on four occasions prior to the Motion should be provided, prior to September 2, 2004.

### 1. Telecom Italia Report.

In depositions held on August 17, 2004, Aldo Albino referred to an investigation that was conducted by Telecom Italia regarding "illegal stickering." Based on Mr. Albino's testimony, companies suspected of unlawful stickering, including possibly BBG, are identified in this document. A copy of that report was forwarded to BBG but despite its obvious relevance and significance, has not been produced to NCIC . (See Exhibit "K"). Because of the impending hearing date, NCIC has reiterated its request for this document, to no avail. A copy of such report should be produced prior to the hearing on September 2, 2004.

### IV. Stipulation of the Law Firm of Sheppard Mullin Regarding May 15 and 16, 2003.

On May 15 and 16, 2003, the law firm of Sheppard Mullin was actively involved in the process of BBG's hiring NCIC agents and its recipient of confidential NCIC documentation. Discovery reveals that the law firm was involved in decisions on when and how to make NCIC

aware that their agents and fiduciaries were now working in direct competition with them. (See Exhibits "L, "M" & "N".) As acknowledged by BBG's principals, the first meeting between NCIC's then-current agents and BBG's President took place at the Sheppard, Mullin offices for most of the day on May 15. NCIC believes confidential NCIC information was delivered on that date and on May 16, 2003. However, the only BBG representative present, Mr. Gregorio Galicot, claims to have little or no recollection of the events that transpired at that critical meeting and has testified on at least two occasions that he cannot remember the names of the Sheppard, Mullin lawyers who were present nor their precise participation in this meeting. (See Exhibit "O".) Moreover, Mr. Gregorio Galicot seems to have lost his memory of the date and time when BBG allegedly first consulted the Sheppard, Mullin law firm with a possibility of asserting a claim against NCIC, an event which apparently occurred in the weeks after May 15, 2003. The time of this event is critical inasmuch as the participation of Sheppard, Mullin's counsel in the events involved in hiring NCIC's agents and obtaining its confidential agents can in no way be deemed to be subject to the work product rule prior to the date that Sheppard, Mullin was enlisted to handle potential litigation in favor of BBG against NCIC.

Because of Mr. Galicot's alleged inability to recall the events occurring at these critical times in May, 2003 and in an effort to avoid the necessity of requesting discovery from opposing counsel, NCIC has repeatedly requested a Proposed Statement of Fact from the Sheppard, Mullin law firm about the events which occurred on May 15, May 16 and immediately thereafter, subject to appropriate claims of privilege. (See Exhibit "P".) Despite the sensitive nature of this request, information on this subject is critical to the prosecution and defense of this case and the events which occurred on that date will be the subject of considerable scrutiny at the trial of this matter. Sheppard,

Mullin has indicated on several occasions that it would consider the possibility of providing such a proposed stipulation, but, as with all of the discovery responses, such a proposed stipulation has never been forthcoming. NCIC respectfully requests the Court's assistance in obtaining either a proposed stipulation or some other means of obtaining the information sought in a manner consistent with the proper role of counsel in this litigation and privileges to which clients are entitled under the applicable rules of professional conduct.

## V.    AEO Designations

In an effort to move discovery forward, NCIC has undesignated all of its production from AEO status. NCIC requested that BBG respond in kind with the understanding that the protective order would adequately protect the parties from misuse herein. This would alleviate some of the burden on the Court. (See Exhibit "Q". ) NCIC is also willing to have an independent expert conduct the review for both sides. BBG has refused this offer.

## VI.    Alleged Bribing of Operators

NCIC recently concluded a Rule 30(b)(6) deposition of BBG (again, in San Diego, and not where BBG initiated this lawsuit) on all facts it possesses about alleged bribing of operators by NCIC (as alleged by BBG in its amended lawsuit), and learned that BBG had no facts connecting NCIC with such practices. Moreover, during this deposition Mr. Galicot admitted to carrying out a "sting operation" whereby BBG actually hired an employee to bring "bribed operator" traffic to BBG. (See Exhibit "R.") A report of this "sting operation" was generated but not produced to NCIC, despite its requests. After returning to Longview, BBG, through its counsel, again notified NCIC that it now had "newly discovered evidence" to support claims of "direct involvement of NCIC" in bribing operators. Once again, NCIC has asked that outstanding discovery requests,

including interrogatories, be supplemented to provide all "newly discovered evidence" associated with this claim. One letter, from a Jesus Torres (a person apparently unknown to NCIC) is attached to BBG's recent letter (see Exhibit "S"), but no attempt is made to comprehensively supplement discovery responses, to resubmit a representative for a 30 b(6) examination or provide documents evidencing BBG's "investigation" has been forthcoming. Before any other action is taken by BBG, including another emergency motion for injunctive relief, the supplemental response should be forthcoming. NCIC respectfully requests this court's intervention and assistance on this matter, as well.

## VII.    Producing BBG's Exclusive Agents, the Alexievs.

Goran and Michel Alexiev are parties to this suit and became exclusive agents of BBG on May 15, 2003, when they traveled to San Diego at BBG's request. (See Exhibit "O"). The Alexievs were present at Sheppard Mullin's (BBG's counsel) San Diego offices when NCIC's database was illegally accessed on May 15 - 16, 2003. (See Exhibit "O"). The Alexievs provided NCIC's confidential information to BBG at BBG's request while still NCIC's agents. The Alexievs immediately responded to the Subpoena issued by this Court, but, at BBG's request waived service of subpoenas duces tecum in August 2003. NCIC has been asking BBG to produce the Alexievs since the fall of 2003. Initially, BBG refused. Then in July, BBG stated it would forward a letter asking the Alexievs to appear. To the best of NCIC's knowledge no letter was sent.

NCIC has offered to take the Alexievs' depositions either in Texas or in Prague, Czech Republic. NCIC is willing to pay for their airfare and hotel expenses and has agreed not to serve the lawsuit on them.

### Argument and Authorities

Pursuant to the Federal Rules of Civil Procedure a court may compel responses to discovery if a party does not do any of the following: (i) answer questions submitted under Federal Rule of Civil Procedure 30 or 31; (ii) make a designation under Rule 30(b)(6) or 31(a); (iii) answer an interrogatory submitted under Federal Rule of Civil Procedure 33; or (iv) respond to a request for production or inspection under Federal Rule of Civil Procedure 34. FED. R. CIV. P. 37(a)(2)(B).

This Court should grant NCIC's motion to compel because BBG has not complied with the discovery process. FED. R. CIV. P. 37(a)(2)(B); *R.W. Int'l Corp. v. Welch Foods, Inc.*, 937 F.2d 11, 17-19 (1st Cir. 1991). By engaging in the dilatory tactics set forth herein, BBG is impeding NCIC's ability to conduct discovery and to properly prepare a defense in this case. Accordingly, because attempts by NCIC to resolve this issue have so far proved futile, this Court should grant NCIC's Motion to Compel.

Moreover, this Court should impose sanctions upon BBG for abusing the discovery process. The purpose of sanctions is to secure compliance with the discovery rules, to deter violation of discovery rules by others, and to punish parties for discovery violations. *See National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643, 96 S.Ct. 2778, 2781, 49 L.Ed.2d 747 (1976). When considering sanctions, the Court should ensure that any discovery sanction comports with due process. *See Hammond Packing Co. v. Arkansas*, 212 U.S. 322, 349-54, 29 S.Ct. 370, 379-81, 53 L.Ed. 530 (1909). The sanctions imposed must have a direct relationship to the offensive conduct.

NCIC asks that this Court award sanctions against BBG for abusing the discovery process. Such sanctions should be in the form of attorneys fees and costs involved in preparing and filing this

10

motion to compel. Fed. R. Civ. P. 37(b)(2). This is the least oppressive sanction available under the Rules and would effectively punish BBG for its discovery violations.

## Conclusion

For all the foregoing reasons, NCIC respectfully requests that this Court grant its motion to compel and impose sanctions upon BBG.

Respectfully submitted,

_by permission of Tom Henson_

**Tom Henson–Attorney-in-Charge**
State Bar Card No. 09494000
**Sharon O. Small**
State Bar Card No. 24042773
**RAMEY & FLOCK, P.C.**
100 E. Ferguson, Ste. 500
Tyler, TX 75702
(903) 597-3301
Fax: (903) 597-2413

**Jerry Harper**
Louisiana Bar No. 6585
**JERALD R. HARPER, PLC**
504 Texas St., Ste. 405
Shreveport, LA 71101
(318) 221-1004
Fax: (318) 221-0008

ATTORNEYS FOR DEFENDANTS, NETWORK COMMUNICATIONS INTERNATIONAL CORP., BLUE PHONES LIMITED, WILLIAM POPE, JAY WALTERS, AND JEFFERY WALTERS

## Certificate of Conference

Pursuant to Local Rule CV-7(h), counsel for NCIC has contacted opposing counsel and was informed that opposing counsel is opposed to the relief requested herein. Accordingly, this matter is submitted to the Court for determination.

SHARON SMALL

12

## Certificate of Service

I certify that on the 30th day of August, 2004 a copy of this document was served, via the indicated method, on the following:

Gregory P. Love          (Via PDF to gpl@wellbornhouston.com)
WELLBORN, HOUSTON, ADKISON, MANN,
 SADLER & HILL, L.L.P.
P.O. Box 1109
Henderson, TX 75653-1109

Tawnya R. Wojciechowski    (Via PDF to tawnya@sheppardmullin.com)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
650 Town Center Dr., 4th Floor
Costa Mesa, CA 92626-1925

James J. Mittermiller      (Via PDF to jmittermiller@sheppardmullin.com)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
501 W. Broadway, 19th Floor
San Diego, CA 92101

Betty J. Santohigashi      (Via PDF to bsantohigashi @sheppardmullin.com)
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
12544 High Bluff Dr., Ste. 300
San Diego, CA 92130-3051

Eric M. Albritton          (Via PDF to eric@albrittonlawfirm.com)
ALBRITTON LAW FIRM
109 W. Tyler St.
Longview, TX 75601

Scott E. Stevens           (Via PDF to sstevens@bwslawfirm.com
BUNT, WRIGHT & STEVENS, PLLC
P.O. Box 3969
Longview, TX 75606-3969

                                SHARON SMALL

#171909

13