# Exhibit
# O

1          A.     No.

2          Q.     None?

3          A.     None.

4          Q.     How long did you meet with these gentlemen on

5     the 15th of May?

6          A.     It was pretty much an all-day thing.

7          Q.     What time of the morning did you start?

8          A.     I don't remember the time of the morning we

9     met at the offices of Sheppard, Mullin downtown.   We

10    negotiated everything, so maybe it was like until -- it was          10:5

11    it had to have been late because it took a long time to

12    produce the documents and print them up and get the

13    signatures.   After that, we went to the office for a very

14    little time.   And also, the next day they were in and out

15    of the offices.

16         Q.     On the 16th, they were in and out of the

17    offices?

18         A.     Yeah, I believe so.

19         Q.     Let's break it down.   You believe on the 15th

20    that you were here with Mr. Stomps and Mssrs. Alexiev for

21    most of the day at the Sheppard, Mullin office?          10:5

22         A.     Not in Del Mar office, in Sheppard, Mullin

23    downtown.

24         Q.     And you believe you were there from early in

25    the morning until 5:00 o'clock or so?

1          A.     I do t know about 5:00 o'clock, ut I

2     remember it had to have been a long time because we did a

3     lot of stuff.

4          Q.     Who participated in those meetings at the

5     Sheppard, Mullin offices?

6          A.     It was Mr. Michael Stomps, Mr. Michel Alexiev

7     Mr. Goran Alexiev.  It was a lady from Sheppard, Mullin.          10:5

8          Q.     You don't recall her name?

9          A.     I'm sorry.  I don't recall her name.  It was

10    Brian Rhys for a little while and then myself.

11         Q.     Were you with Mr. Stomps and Mr. Alexiev

12    through most of the day?

13         A.     I would say so, yes.

14         Q.     So they didn't retire to another conference          10:5

15    room for discussions or private negotiations during the

16    day?

17         A.     They might have.

18         Q.     Do you recall that happening?

19         A.     I don't remember.  It wasn't -- I don't

20    remember the -- if they had a -- we might have stepped out.

21    They might have talked to each other.  I don't think we had

22    two different conference rooms.  It was one conference

23    room, but I'm sure they had their own conversations without

24    us being present for sure.                                       10:5

25         Q.     Did they have their laptops with them, any of

PETERSON & ASSOCIATES COURT REPORTING & VIDEO SERVICES

1    them?

2         A.     I don't know.

3         Q.     You don't recall?

4         A.     (Witness shakes head.)

5         Q.     What time of day did you leave the Sheppard,

6    Mullin offices to go to the BBG offices on the 15th?

7         A.     After we finished the contracts, basically.

8         Q.     What time of day would that be, your best

9    estimate?

10        A.     It had to be after 4:00 or 5:00, 6:00, 7:00.      10:5

11   I don't know.

12        Q.     How long did you remain at the BBG offices

13   that evening?

14        A.     I don't know.  I don't remember.  You're

15   talking about the --

16        Q.     The 15th.

17        A.     -- the first day that we met?

18        Q.     Yes, sir.

19        A.     I don't know, but we stayed very late in our

20   offices.

21        Q.     Was that business or was there some sort of

22   celebration that evening?

23        A.     There was no celebration, definitely.

24        Q.     No fun?

25        A.     Unfortunately, I have the bad characteristic      10:5

1    of having no fun.  That's kind of my characte -stic.

2         Q.    Is this a new development or something that

3    you always suffered with?

4         A.    Basically I suffered with that constantly so.

5         Q.    Did you ask any of these individuals to

6    validate in any fashion the traffic volume information they

7    gave you?

8         A.    No.  Basically, we did the traffic agreement.

9    In the traffic agreement, there was some assignations of          10:5

10   properties.  There was a sales agreement, which basically

11   they could put whatever they want in that lists, wish lists

12   or things, whatever they wanted to achieve or sell.  That

13   was it.

14        Q.    How did you arrive at the designation of the

15   properties that would be covered by the agreement?

16        A.    They did it.  I did not -- I did not --               10:5

17   basically, I asked them to include the property that they

18   were going to assign.  They made their lists and that was

19   it.

20        Q.    Put them in the agreements?

21        A.    Yeah.

22        Q.    Did you look at that?

23        A.    I might have looked at it.

24        Q.    So you weren't concerned enough to even look

25   at what properties they were bringing with them?

1       A.    Basi lly --

2              MS. WOJCIECHOWSKI:   Object to form.

3              THE WITNESS:   These gentlemen come from out of

4       town, and they mentioned they have traffic.   They had this        11:0

5       business.   They are preoccupied about getting -- about Blue

6       Phone not respecting their settlements.   In reality, they

7       began with a real big sales pitch and they thought we were

8       interested in things that we were not interested in.   And

9       at the end, basically, they made the deal because they no

10      longer wanted to be with -- sending their traffic with Blue      11:0

11      Phone or NCIC and they were looking for options, and they

12      thought we were the best option and I mentioned that we

13      were willing to do it, but not at any price.

14      BY MR. HARPER:

15             Q.    How did you know what the right price was?

16             A.    They -- Mr. Goran Alexiev and Michel Alexiev

17      have all very big numbers of things that they think about

18      it, and basically the only thing that I was interested in      11:0

19      is I would go maximum at protecting, giving them that

20      insurance policy that they were requesting.   Other than

21      that, I was not willing to give them anything else.

22             Q.    Well, you were willing to give them 150,000.

23             MS. WOJCIECHOWSKI:   Object to form.

24             THE WITNESS:   They're not one group.   There's

25      two groups.   There's Michael Stomps and there's Benchmark.

74

# Exhibit
# P

# Jerald R. Harper, PLC

A Professional Law Corporation
504 Texas Street, Suite 405
Shreveport, LA 71101
(318) 221-1004
(318) 221-0008 Fax
harper@mmw-law.com

May 6, 2004

Mr. Frank J. Johnson, Jr.                       **Via facsimile 858-509-3691**
Sheppard, Mullin, Richter & Hampton             **and Via First Class U.S. Mail**
12544 High Bluff Drive, Suite 300
San Diego, California 92130-3051

    Re:   BBG Communications, Inc. v. Network Communications International Corp.

Dear Frank:

Please allow me to respond to your facsimile of yesterday afternoon. Your letter contains a number of inaccuracies, and I will make no attempt to address all of them. Accordingly, the failure to address such inaccuracies should in no way be deemed to be an acquiescence or acceptance of them (see my e-mail to Tawyna dated April 9, 2004). However, in an effort to respond promptly, please allow me to address some of them:

1. Depositions of Jay Walters and Bill Pope. You are correct that we have received deposition notices for Jay Walters and Bill Pope for May 13 and May 14. What your letter does not address is that we have indicated that if these witnesses are made available at all, they will not be available on May 13 or May 14. If you have been following the correspondence in this case, you will know that we held a conference with Tawyna in mid April to address deposition dates for both Plaintiffs and Defendants in this action. As a result of that discussion, Defendants provided eleven (11) deponents and deposition dates and BBG provided one (1), to be conducted only after the other depositions were completed. Obviously, Tanwya was unsatisfied with this rather one-sided approach to the discovery needs of NCIC and forwarded additional deposition notices for Jay Walters and Bill Pope for May 13 and May 14, without any agreement with respect thereto. Frankly, NCIC wonders what benefit it is to engage BBG in discussions about mutually convenient deposition dates when, at the conclusion of those discussions, no matter how one-sided, BBG thereafter simply pursue additional deposition notices as it sees fit.

Additionally, you are also correct that we have attempted to obviate additional motion practice by agreeing to make Jeff Walters and Bill Pope for some additional, reasonable time. You have rejected these offers and have indicated that BBG will be satisfied only with seven and one-half (7.5) full hours of running time for each deponent. No doubt, if the rule contemplated eleven (11) hours for each deponent, BBG would seek this amount of time as well. Although BBG's approach to these discovery matters has been consistent, I ask you to please re-access the amount of time, if

Frank J. Johnson
May 6, 2004
Page 2


my, for which you need these deponents and let me know what a reasonable amount of time would be given your actual needs, and we will discuss them in good faith. I do not currently have, nor do I anticipate having large blocks of time for depositions at any time prior to May 25 or May 26.

2. Contracts between NCIC's former agents and BBG. We have asked and continue to ask that BBG "un-designate"AEO designations which are not consistent with the protective order. This includes its current contracts with its agents. Moreover, failing such relief, we have asked that these contracts be redacted to permit access by my clients to them as a compromise. Once again, BBG rejects all compromise and refuses to redact any portion of these documents. It is our belief that these documents should be produced in their entirety without any redaction or AEO designation whatsoever. We will be filing a motion within the next day or so on this matter.

3. Deposition of "Debra Clayton". My office sent a deposition notice for Debra Clayton, an employee of BBG. You have feigned a lack of knowledge as to who this person might be and asked for information with respect to her identity. As your client is aware, this person apparently is Delma Clayton and a revised deposition notice has been sent to you.

4. Mexico contracts. Approximately two (2) months ago, BBG agreed to provide us with copies of its contacts in Mexico as an indication of its good faith in making an extraordinarily broad request of all of NCIC's telephone traffic in that country. We were assured that copies of these contracts would reflect that a broad request was justified, albeit one perhaps more modest than the original scope of BBG's request. We were assured that these contracts would be provided to us promptly, but in any event prior to requiring the production of documents from ICS and NCIC to BBG. The undertaking in your letter of May 4, to "produce them when they are available..." is disingenuous.

5. Answer on behalf of Blue Phone. Thank you for your reminder on this item.

6. You are correct that we have agreed to provide an index of account numbers. Upon completion of NCIC's responses to outstanding discovery we will address this informal request. I have no doubt that we will provide this data on a more timely basis than BBG has provided NCIC with such information (see Item 4 above).

7. NCIC's IP address. BBG is in possession of this information and has been in possession of it for quite some time.

8. Deposition of Rosa Perez. This matter was discussed with Scott and Tawyna at the depositions taken in Eric Albritton's office several days ago. I certainly agree with you that the more courteous practice is to discuss deponents and deposition dates prior to sending deposition notices. (see Item 1, above).

Frank J. Johnson
May 6, 2004
Page 3

9. AEO designation. Thank you for addressing this subject. I have raised it on numerous occasions in the past. There has been an over-designation of documents by BBG since the inception of discovery of this case "AEO" documents. Under separate cover, we are suggesting the wholesale removal of AEO designations from documents by all parties in this case. This will include a "temporary designation of documents by ICS in connection with its response to a Subpoena Duces Tecum propounded by your clients. In this connection, let me also ask, once again, that BBG remove the redactions of documents reflecting communications between NCIC former agents and BBG representatives and the Sheppard, Mullin law firm. In past correspondence, I have pointed out examples of these types of communications, but have received no meaningful response to them. Please let me know immediately whether BBG will take action or we shall be filing a motion with the court within the next couple of days on this subject.

10. Deposition of Jerry Gumpel. Your letter is accurate with respect to the deposition of Jerry Gumpel. Mr. Gumpel is unquestionably a witness to transactions which form an important part of the claims made by NCIC in this case. We believe that BBG should consider submitting a proposed stipulation on the facts possessed by Mr. Gumpel. The issue that I have raised is whether or not his possession of information with respect to these matters is merely redundant. It is not our desire to move to disqualify your law firm and we are making every effort to determine whether this information can be obtained from other witnesses. On the other hand, we wish to raise this matter formally with you at this time so that if a motion is required later, there can be no claim of surprise or that this issue has been raised belatedly.

I am available to discuss all of the foregoing by telephone tomorrow.

Very truly yours,

S/ Jerry /mone

Jerald R. Harper

JRH:md
Enclosures

cc:   Bill Pope (via facsimile)
      All counsel of record (via facsimile)

# Exhibit Q

**From:**     "Harper" <harper@mmw-law.com>
**To:**       <tawnya@sheppardmullin.com>, <gpl@wellbornhouston.com>
**Date:**     7/20/04 2:57PM
**Subject:**  Re:AEO

Consistent with Judge Ward's directives and the terms of the protective order, you may consider all documents marked by NCIC as "attorneys eyes only" to be redesignated as "confidential" and subject to the terms of the protective order under that category. This redesignation will be effective immediately. You will recall that we have made similar offers in the past, provided BBG will do the same. BBG has never accepted these offers. We now make this change in designations unilaterally. We ask that BBG also redesignate it's AEO documents (which have been overdesignated since the inception of this litigation) immediately so as to unburden the court form it's task in reviewing these documents. This will allow all parties to move forward with trial preparation without inappropriate risk if the protective order is complied with properly. Thank you.


**CC:**       <sstevens@albrittonlawfirm.com>, <internet>

# Exhibit
# R

1         A.    I hav  not reread it.

2         Q.    Why don't you take a moment to reread it,

3    please.

4               MS. WOJCIECHOWSKI:  Eric, just for your

5    edification, this is BBG3598, Exhibit No. 5 to the

6    deposition of Gregorio Galicot taken on March 3, 2004.          13:2

7               THE WITNESS:  Is it proper to make a

8    correction of something that I recall that I might have not

9    stated properly?

10   BY MR. HARPER:

11        Q.    Is there something about your testimony you

12   would like to change, sir?

13        A.    Yes.

14        Q.    What is it?

15        A.    I recall when you were asking me about the

16   operators if BBG had given money or something to pay off

17   operators, and I want to make an explanation of that.  Is          13:2

18   that possible?

19        Q.    Certainly.  Tell me how you would like to

20   clarify your testimony.

21        A.    Basically, we did an operator sting.  We did a

22   sting in approximately 2001, 2002, with regards to -- we

23   knew that our traffic volumes were coming down and we had

24   received -- we were noticing from certain properties, the

25   traffic was not what it should be.  And we got in contact          13:2

133

1    with a person who  pproached us mentioning tl  , if we were

2    interested in operator stolen business.  And basically, we

3    hired that person for approximately a year because we

4    wanted to find out how was it that the calls were being

5    stolen from our hotel's PBX.  So I wanted to make that          13:2

6    correction.

7          Q.    What's the significance of that to this

8    lawsuit, sir?

9          A.    Basically, you asked me if BBG has ever paid

10   off operators.  We did not directly pay off operators.  But

11   this lady did approach BBG in 2001 in order to offer us

12   operator traffic, and we took that opportunity to find out

13   how was it in the systems and what was happening in order     13:2

14   for the operator traffic to be stolen.  And that was the --

15   that's why it's relevant.

16         Q.    Who was this lady?

17         A.    This lady's name is called Suky.

18         Q.    And who is Suky?

19         A.    I think she looks kind of like Minnie Mouse,

20   this lady.  I don't know.

21         Q.    How well do you know Suky?                          13:2

22         A.    Not very well.

23         Q.    How long have you done business with Suky?

24         A.    We don't do business with Suky.

25         Q.    Have you ever done business with Suky?

1          A.     Yes.  During the sting operation   we hired

2    her.  We tried to learn the system, and after we knew what

3    we needed to know for that moment, we basically got rid of

4    her.

5          Q.     Was she a customer?

6          A.     She was not a customer because she was part of

7    the sting operation.  So I would not consider her a                    13:2

8    customer.  We might have treated her as a customer, but she

9    was not a customer.

10         Q.     Did you pay her anything?

11         A.     Yes, her commissions for like a year.

12         Q.     So was she an agent?

13         A.     She was -- I don't know what document or what

14   contract we signed with her.  I don't think she was an

15   agent.  I don't think we signed an agreement with her.  I'm

16   not sure.

17         Q.     You were paying her periodic commissions?                 13:2

18         A.     I think we had to pay her every week or two

19   weeks because she had to pay the operators or something.

20         Q.     If you were paying her commissions for traffic

21   for a year or so --

22         A.     Yes.

23         Q.     -- what would you describe that relationship

24   as?

25         A.     Operator sting operation.  That's the way I

1    would describe it   And after that, we got ri  of her when

2    we learned how was it that this thing was happening.

3         Q.    How to pay off operators?                          13:2

4         A.    How they were paying off -- in our hotels, we

5    had exclusive contracts and the traffic of our properties

6    was very regular.  For example, a property that does

7    normally 30 calls a day suddenly was starting to do ten

8    calls a day compared to another property that you're having

9    30 calls a day with the same occupancy, same type of

10   people, same everything.

11        Q.    Who had BBG was charged with the

12   responsibility of overseeing this sting operation?

13        A.    I oversaw it myself.                                13:2

14        Q.    You did?

15        A.    Yes.

16        Q.    So this resulted in you identifying operators

17   who were circumventing your system and cheating you out of

18   money?

19        A.    My objective of the sting operation was to see

20   if I could find a system where I could stop the operators

21   from stealing from the hotels.

22        Q.    And so you did your investigation and you

23   found out that operators were stealing from the hotels and

24   you?

25        A.    That's correct.

136

1        Q.    Some      ere you reduced those finc  gs to          13:2

2   writing?

3        A.    Did I reduce the findings to writing?

4   Actually, we did.

5        Q.    Could you provide us with a copy of that?

6        A.    Yes.

7        Q.    When you concluded your sting operation, you

8   contacted law enforcement, right?

9        A.    No, we did not.

10       Q.    Oh.

11       A.    And the reason we did that not is because it's

12  very -- it's very difficult to stop -- to prove in Mexico    13:2

13  that a call is being stolen that's being billed in the

14  United States.  Stealing calls is not a priority for any

15  law enforcement.  So we looked at our options and what we

16  tried to do is in some cases is tried to shut down the AT&T

17  number.  In other cases, to do a shopper, where we would

18  stay in hotels, make test calls, try to find an operator

19  that way.  It's very difficult to do a sting operation to

20  call law enforcement where you have to prove to hotels that  13:2

21  the call was actually stolen.

22       Q.    What did you do with this information in terms

23  of getting rid of these operators?

24             MS. WOJCIECHOWSKI:  Don't reveal any

25  privileged conversations.

1          MR. .RPER:  Excuse me?

2          MS. WOJCIECHOWSKI:  I said don't reveal any

3   privileged conversations.

4          MR. HARPER:  I thought we had an understanding

5   without prompting from counsel that you were not to reveal

6   any.  We don't need for you to tell the witness that.

7          MS. WOJCIECHOWSKI:  At this juncture, I just

8   thought it was worth a good reminder.                        13:2

9          MR. HARPER:  Let's not suggest testimony to

10   the client at any juncture.

11          MS. WOJCIECHOWSKI:  I haven't suggested any

12   testimony to the client.  I just reminded him --

13          MR. HARPER:  We're here for the witness's

14   testimony, not yours, Counsel.  Let's not lean over and

15   whisper to the witness when there's a question pending.

16          MS. WOJCIECHOWSKI:  There was no whispering.

17   I was just telling him that he was not to reveal any

18   privileged communications.

19          MR. HARPER:  Thank you.  He understands it.

20   BY MR. HARPER:

21          Q.   Do you understand that, Mr. Galicot?

22          A.   Yes, I do.

23          Q.   Did you understand that before?

24          A.   Yes, but in the heat of the moment, I might

25   have revealed it.

138

1          Q.    Migh  ave let it slip out.                    13:2

2          A.    That's right.

3          Q.    Do any of your agents still work with Suky?

4          A.    No.  Not to my knowledge, no.

5          Q.    On how many instances did you find that NCIC

6    was paying off operators in this sting?

7          A.    Actually, at that moment, we did not focus on

8    who was doing it in the U.S. side.  We were more focused on    13:3

9    how it was being done and if we could take legal action

10   with the operators in Mexico.

11         Q.    Did you take any legal action against the

12   operators in Mexico?

13         A.    We discussed it with our attorneys, but we

14   didn't know exactly who it was who was doing.

15         Q.    Did you find any instances where NCIC was

16   paying off operators in that sting operation?

17         A.    No, we did not investigate that part.         13:3

18         Q.    Calvin Waltman, does he work with Legacy

19   Operator Services in San Diego?

20         A.    I think you need to ask him.

21         Q.    Do you know?  If he were here, I could ask

22   him.  But you're here and I'm asking you the question.  Do

23   you know?

24         A.    I have no idea.  I know that he sends his

25   traffic of operator access to NCIC.  That I know.  If he

                                                              139

1    works with Legacy  that I don't know.                                    13:3

2         Q.    Are you familiar with the BBG report for --

3    with the BBB here in San Diego, San Diego Better Business

4    Bureau?

5         A.    Yes, I've seen it.

6         Q.    Are these reports to the Better Business

7    Bureau here in San Diego a problem for your company?

8              MS. WOJCIECHOWSKI:   Object as to form.

9              THE WITNESS:   How do you define a problem?

10   BY MR. HARPER:

11        Q.    Well, is it a source of irritation?                           13:3

12             MS. WOJCIECHOWSKI:   Object as to form.

13   BY MR. HARPER:

14        Q.    For your company?

15        A.    How do you define "source of irritation"?

16        Q.    Does it disrupt your business?  Does it

17   diminish your business in any way?

18             MS. WOJCIECHOWSKI:   Object as to form.

19             THE WITNESS:   I think the report when it's

20   disseminated with malicious intent in order to reflect the

21   reliability of our company to third parties where that was

22   not an issue, I think that it definitely affects us.

23   Specifically, NCIC disseminating this report throughout the    13:3

24   world in order to affect the credibility of BBG, in that

25   instance, it does.  But here in San Diego, the report by

# Exhibit
# S

# WELLBORN✳HOUSTON, L.L.P.

### _____ATTORNEYS AT LAW_____

### P.O. BOX 1109-300 WEST MAIN STREET
### HENDERSON, TEXAS 75653-1109

**GREGORY P. LOVE**
ATTORNEY AT LAW

Phone 903/657-8544
Fax   903/657-6108
Email: gpl@wellbornhouston.com

August 16, 2004

*VIA FACSIMILE AND U.S. MAIL*

Jerry Harper
Jerald R. Harper, Plc
504 Texas Street, Suite 405
Shreveport, LA 71101

Sharon Small, Esq.
Ramey & Flock
100 E. Ferguson #500
Tyler, TX 75702

Re:   <u>BBG v NCIC –Hotel Operators in Mexico</u>

Dear Jerry and Sharon:

As Mr. Gregorio Galicot indicated in his most recent deposition, we have been conducting an investigation into the activities of your client and its agents in Mexico, and have confirmed that NCIC and its agents are indeed contracting with various individual hotel operators to divert call traffic from exclusively contracted BBG hotel properties. We have produced a number of documents to you throughout our document production which evidence our current investigation into these activities. As we now are aware of NCIC's direct involvement in such activities, we are writing you to request that you instruct your clients and their agents to immediately cease these activities.

Attached hereto is a letter sent by a purported Mr. Jesus Torres which several of BBG's exclusively contracted hotels have received on an unsolicited basis. As you can see, this letter offers to pay $15 per call to a hotel operator who diverts a call from the authorized BBG hotel PBX system to the NCIC call center. The telephone number associated with this letter is in fact the telephone number associated with the business conducted at the website www.operatoraccess.com by Mr. David Escobar, which bears the NCIC logo.

We have placed several test calls and have determined that the diverted call traffic from such operators are processed by NCIC, in a significant volume. We have also contacted

RECEIVED AUG 1 8 2004

individuals who confirmed that they were in fact guests staying in various exclusively contracted BBG hotels whose calls were diverted by hotel operators and processed by NCIC. Attached hereto are credit card records which show that NCIC processed calls originating from BBG's exclusively contracted hotels. Now that you have produced some of the account numbers (albeit a limited number) associated with NCIC's agents, we have been able to identify some, but not all, of this diverted traffic. Again, we demand that you supplement your master account list to identify all of NCIC's agents/customers account numbers.

As such, we request that you conduct an immediate investigation into your clients' and your clients' agents/customers' activities in this regard. Absent your attention to this matter and your client's cessation of this unfair method of competition, we will request the Court's intervention. Moreover, we ask that your client refrain from the modification, editing or deletion of any of its business records during this litigation which are relevant to the above inquiry. Please contact me if you have any questions.

Sincerely,

Gregory P. Love

GPL:la

cc:   Tawnya Wojciechowski **Via E-Mail and US Mail**
      Betty Santohigashi **Via E-Mail and US Mail**
      James Mittermiller **Via E-Mail and US Mail**
      Eric Albritton **Via E-Mail and US Mail**
      Scott Stevens **Via E-Mail and US Mail**

*Afore*  *Geneva*

Av. Insurgentes Sur 856, Col. Del Valle, México, D.F., C.P. 03100, Tel: (55) 56555615

ORLANDO CARRILLO
HOTEL CLUB LAS PERLAS
BLVD.KUKULKAN KM.2.5, ZONA HOTELERA
CANCUN, QUINTANA ROO
C.P. 77500

NO PONGAS PRETEXTOS A TU FUTURO, TU PUEDES GANAR MUCHO DINERO HOY.

Envía las llamadas por cobrar a EE.UU. que te piden los huéspedes del hotel a nuestro centro de operadoras y nosotros te pagaremos 15 dólares por cada llamada, es muy buen negocio para ti. Tu puedes poner cualquiera de estos pretextos:

1.- En mi hotel vigilan mucho a las operadoras inclusive todo se tarifica y me pueden despedir si envío llamadas por cobrar a otra operadora.

En Operator:Access tenemos un sistema que es totalmente INDETECTABLE para cualquier tarificador, esto te lo garantizamos la llamada nunca pasa por el tarificador, en algunos hoteles te dirán que todo se tarifica pero es una mentira solo para espantarte. Si no pasa por el tarificador no se tarifica.

2.- Ya lo estoy haciendo pero con otra compañía no con ustedes.

Esta objeción es peor que la anterior, ¿cada cuando te pagan? nosotros pagamos puntualmente cada 15 días, ¿te pagan todas las llamadas que envías? si ellos te prometen una comisión mas alta pero solo te pagan la mitad de las llamadas que envías entonces la comisión real es la mitad de la que te prometen, nosotros tenemos 7 años haciendo esto con operadoras felices en todo el país.

3.- En el hotel me piden pocas llamadas por cobrar.

Con tan solo una llamada diaria que envíes puedes duplicar tu sueldo, si nuestra comisión es de 15 dólares por llamada, por 30 días tendría 450 dólares de comisión.

4.- Para que me arriesgo mejor apoyo al hotel.

Pero el hotel no te apoya a ti, si trabajas 7 años para el hotel y por cualquier otra cosa te despiden te darán la miserable cantidad de 9,000 pesos, eso si es que te dan algo, con nosotros ganas eso en 15 días.

PIÉNSALO BIEN, nosotros te pagamos 15 dólares de comisión por cada llamada que te piden los huéspedes del hotel, pueden ser llamadas por cobra a USA y Canadá, con cargo a cualquier tarjeta de crédito, o con cargo a cualquier callingcard, si lo envías con nosotros puedes ganar mucho dinero. Si quieres puedes probarnos durante 15 días sin ningún compromiso, sabemos que te quedaras con nosotros.

**¡LLAMA AHORA!**
No requieres tarjeta para llamarnos de teléfonos públicos
LADA SIN COSTO 01800-0540468
de lunes a viernes de 9:00 a.m. y hasta 8:00 p.m

A T E N T A T E N T A M E
Lic. Jesús Torres
GERENTE GENERAL

*AFORE [LOGO] GENEVA*

*South Insurgentes Ave. 856, Col. Del Valle, Mexico, D.F., C.P. 03100, Tel: (55) 56555615*

ORLANDO CARRILLO
HOTEL CLUB LAS PERLAS
BLVD. KUKULKAN KM 2.5, ZONA HOTELERA
CANCUN, QUINTANA ROO
C.P. 77500

**DO NOT MAKE PRETEXTS FOR YOUR FUTURE, YOU CAN EARN A LOT OF MONEY TODAY.**

Send collect calls to the United States which the guests of the hotel request from you to our operators center and we will pay you 15 dollars for each call, it is a very good business for you.   You can make any of the following excuses:

**1. - In my hotel they monitor the operators a lot everything is registered and they can fire me if I send collect calls to another operator.**

At Operator Access we have a system which is totally UNDETECTABLE by any registering equipment, this we guarantee to you the call never goes through the registering equipment, in some hotels they will tell you that everything is registered but that is a lie only to scare you.  If it does not go through the registering equipment it is not registered.

**2. - I am already doing it but with another company not with you.**

This objection is worse than the one before, how often are you paid?  we pay you on time every 15 days, do they pay you for all the calls you send? if they promise you a higher commission but only pay you for half of the calls you send then the real commission is half of what they promise you, we have 7 years doing this with happy operators in all of the country.

**3. - At the hotel they ask me for few collect calls.**

With only one call you send per day you can duplicate your salary, if our commission is of 15 dollars per call, for 30 days you will have 450 dollars of commission.

**4. - Why take a risk better to support the hotel.**

But the hotel does not support you, if you work 7 years for the hotel and they fire you for whatever other reason they will give you the miserly amount of 9,000 pesos, that is if they give you anything, with us you earn that in 15 days.

**THINK WELL ABOUT IT,** we pay you 15 dollars in commission for every call that the guests of the hotel request, they can be collect calls to the USA and Canada, with charge to any credit card, or with charge to any callingcard, if you send it to us you can earn a lot of money.  If you want you can try us out for 15 days without any obligation, we know you will stay with us.

**CALL NOW!**
You do not require a [calling] card to call us from public telephones
TELEPHONE NUMBER WITHOUT CHARGE 01800-0540468
from Monday to Friday from 9:00 a.m. till 8:00 p.m.

S I N C E R E L Y
Lic. Jesus Torres
GENERAL MANAGER

ATTACHMENT "1"

 **Cards**

Close Window

# Cash Rebate Card
## Account Summary and Details
This is not a billing statement.

| Prepared for: | Closing Date: May 18, 2004 | Account Number: XXXX-XXXXXX-81004 |
|---|---|---|
| Member Since: 2003 | | |

**Account Summary**

| Previous Balance $ | Payments/Credits $ | New Charges $ | Outstanding Balance $ |
|---|---|---|---|
| -0.72 | 0.00 | 46.58 | 45.86 |

**Credit Line Summary**

| Total Credit Line $ | Available Credit Line $ | Cash Advance Limit $ | Available Cash Limit $ |
|---|---|---|---|
| 3,000.00 | 2,953.00 | 600.00 | 600.00 |

Available Credit is updated in real time and will reflect all account activity, including any outstanding authorizations. Recent Activity information is updated nightly and may not match your Available Credit information.

| Payments | Amount $ |
|---|---|
| Total Payment Activity | 0.00 |

| New Activity | Amount $ |
|---|---|
| Transactions : Card #: XXXX-XXXXXX-81004 May 7, 2004 NCIC.COM PHONE CALLLONGVIEW TX 0000-0507 PHONE SRV /EQUIP-UTIL 05/07/04 Reference: 0050120040507 | 46.58 |

| Activity for | New Charges: | 46.58 |
|---|---|---|

| Total New Activity | 46.58 |
|---|---|

Close Window

myPaySystems                                                    Page 1 of 1

 **Systems**                              Home | FAQ | Privacy

Welcome

To identify your charge, you will need to log in with your credit card or checking information. This information is here used to identify your purchase.

All information submitted to this site is confidential and protected. For further information concerning the use and protection of your data, please refer to our **privacy policy**.

### Please select one of the following options:


You made your online purchase using your credit card. Please enter your credit card number as well as one of the following: order number, amount charged or email address.


You made your online purchase via check. Please enter your routing number, account number as well as one of following: order number, amount, email address.

**Credit Card Number:** 4888603170856835          **Routing Number:**

                                                   **Bank Account Number:**

**Order Number/Free Trial:**                       **Order Number:**

**Amount Charged:** 46.58                          **Amount Charged:**

**E-mail:**                                         **E-mail:**

                CONTINUE                                    CONTINUE

|  Routing No.  |  Bank Account No.  |
|---------------|--------------------|
|  011000111    |  011000111         |



Home | FAQ | Privacy | Log

## MY CHARGES

All Charges | Repeat Charges | Free Trials

Because the information you provided was not specific to one charge, we have displayed all charges associ credit card number you gave us. To get more detailed information about a single charge, click the order nu left.

| Order Number | Date | Vendor | Product Name | Type |
|---|---|---|---|---|
| 100007151390 | May 01, 1994 | XXX | 100000-131390 | One time |

Copyright 2003

## Online Banking

Bank of America **Higher Standards**

You Have Mail · Mail · Help · Sign Off

| Accounts | Bill Pay & e-Bills | Transfer Funds | Customer Service |

Accounts Overview     Account Activity     Account Summary

## Transaction Detail

**Customer Service**

Request a Balance Transfer
Order Convenience Checks

| | |
|---|---|
| Account: | Alaska Air Visa Platinum-6835 |
| Type: | Purchase |
| Transaction Description: | MYPAYSYSTEMS.COM |
| Transaction Date: | 05/07/2004 |
| Posting Date: | 05/11/2004 |
| Reference Number: | 24801904129129416580032 |
| Amount: | $46.58 |

| Dispute Transaction | Request Sales Slip Copy | Return to Account Activity |

🔒 **Secure Area**

Accounts · Bill Pay & e-Bills · Transfer Funds · Customer Service · Mail · Help · Sign Off

Bank of America, N.A. Member FDIC. Equal Housing Lender 🏠
© 2003 Bank of America Corporation. All rights reserved.



Bank of America  Higher Standards

# Online Banking

You Have Mail · You Have e-Bills · Mail · Help · Sign Off

| Accounts | Bill Pay & e-Bills | Transfer Funds | Customer Service |

Accounts Overview      Account Activity      Account Summary

## Transaction Detail

**Customer Service**

Order Convenience Checks

| | |
|---|---|
| Account: | Alaska Air Visa Platinum-5835 |
| Type: | Purchase |
| Transaction Description: | LD *CALL 6103974688 CA |
| Transaction Date: | 06/10/2004 |
| Posting Date: | 06/15/2004 |
| Reference Number: | 24418004189166152087307 |
| Amount: | $40.50 |

Dispute Transaction      Request Sales Slip Copy      Return to Account Activity

🔒 **Secure Area**

Accounts · Bill Pay & e-Bills · Transfer Funds · Customer Service · Mail · Help · Sign Off

Bank of America, N.A. Member FDIC.  Equal Housing Lender 🏠
© 2004 Bank of America Corporation. All rights reserved.



Zero Plus dialing, inc.

Page  4 of 4
Account Number   513-397-4698 695  8
Billing Date   Jun 4, 2004

Questions?   1 888 537-0732

## Important Information

This portion of your bill is provided as a service to the company
identified above. Please review all charges appearing in this section.
If you have any questions or concerns, call the telephone number shown
above.

## Current Charges

__Itemized Charges and Credits__

Item

| No. | Date | Description | |
|-----|------|-------------|--|
| 1. | 5-04 | NCIC SET-USE FEE | 1.99 |
| 2. | 5-04 | NCIC NON-SUBSCRIBER FEE | 2.99 |
| 3. | 5-04 | USF CARRIER ADMINISTRATIVE FEE | 3.50 |
| 4. | 5-04 | FEDERAL UNIVERSAL SERVICE FEED | 4.26 |
| | | Total Itemized Charges and Credits | 12.74 |

__Long Distance__

Item

| No. | Date | Time | Place Called | Number | Code | Min | |
|-----|------|------|--------------|--------|------|-----|--|

Billed on Behalf of NCIC

Itemized Calls

| No. | Date | Time | Place Called | Number | Code | Min | |
|-----|------|------|--------------|--------|------|-----|--|
| 5. | 5-04 | 247P | MEXICO | 529358919 | R30 | 6.0 | 40.50 |

__Taxes__

| | |
|--|--|
| 6. Federal | 1.60 |
| 7. Local | .64 |
| Total Taxes | 2.24 |

Key to Calling Codes

| B  Collect | O  Oper-Dial Rates | R  Standard |
|------------|--------------------|-------------|

| Total Zero Plus Dialing Current Charges | 55.48 |
|------------------------------------------|-------|



WB SECu #885.
789 C. SMITH
LA CULLAN COURT 900

account Number    555-455-444-58 0
Billing Date    Jul   2004

questions    888 50- 57

### Account Information

The nature of your call is provided as a service to the customer
identified above. Please review all charges appearing in this section.
If you have any questions or concerns, call the telephone number shown
above.

### Itemized Charges

Itemized Charges and Credits
Item
No. Date  Description
  1 7-16  WCTI SET-USE FEE                        1.95
  2 7-16  WCTI NON-SUBSCRIBER FEE                 1.95
  3 7-16  USF CARRIER ADMINISTRATIVE FEE          1.95
  4 7-16  FEDERAL UNIVERSAL SERVICE FUND          4.15
  Total Itemized Charges and Credits            15.15

Long Distance
Item
No. Date  Time  Place Called  Number    Code   Min
Billed on Behalf of WCTI
Premium Calls
  1 7-16  12PM  MEXICO      132224CII   538    7.15    40.66

Taxes
  1 Federal                                   .40

Key to Calling Codes
 1 Direct         -  Person to Person     3 Standard

Total Zero Plus Dialing Current Charges    5.84

_____ One

MASTERCARD ACCOUNT

5291-0717-3299-2017

APR 22   MAY 21, 2004

Page 1 of 2

## Account Summary

| | |
|---|---|
| Previous Balance | $.00 |
| Payments, Credits and Adjustments | $.00 |
| Transactions | $93.16 |
| Finance Charges | $.00 |
| | |
| New Balance | $93.16 |
| Minimum Amount Due | $10.00 |
| Payment Due Date | June 21, 2004 |
| | |
| Total Credit Line | $2,800 |
| Total Available Credit | $2,706.84 |
| Credit Line for Cash | $2,800 |
| Available Credit for Cash | $2,706.84 |

## At your service

To call Customer Relations or to report a lost or stolen card:

**1-800-903-3637**

Send payments to:
Attn: Remittance Processing
Capital One Service
P.O. Box 60000
Seattle, WA 98190 6000

Send Inquiries to:

Capital One Service
P.O. Box 85015
Richmond, VA 23285 5015

## Payments, Credits and Adjustments

### Transactions

| 1 | 07 MAY | NCIC.COM PHONE CALL TEL:9003822887 TX | $16.58 |
|---|---|---|---|
| 2 | 10 MAY | NCIC.COM PHONE CALL TEL:8003822887 TX | 46.58 |

Paid Vitolo 6/8/04

## Finance Charges

*Please see reverse side for important information*

| | Balance rate applied | Periodic rate | Corresponding APR | FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $.00 | .04240% F | 15.51% | $.00 |
| CASH | $.00 | .04240% F | 15.51% | $.00 |

ANNUAL PERCENTAGE RATE applied this period     0.00%

▶  PLEASE RETURN PORTION BELOW WITH PAYMENT     ▶

2c103-074

 

WELLS FARGO

Account Number:   4465 3900 0193 7296
Statement Closing Date:   06/09/04

## Transactions

| Trans | Post | Reference Number | Description | Credits | Charges |
|-------|------|------------------|-------------|---------|---------|
| 05/12 | 05/12 | 2432300GN2JS4T03S | SUSHI ITTO SAN DIEGO CA | | 28.00 |
| 05/17 | 05/17 | 2469216GS00GJMM3O | PPL*MEMBERSHIP - R   800-654-7757 OK | | 26.00 |
| 05/28 | 05/28 | 2440369H74ARHFQBT | UFO UPHOLSTERY FABRIC 1ST NATIONAL CITY | | 160.55 |
| 06/02 | 06/02 | 2165216HA00FM23EQ | AMZ*SUPERSTORE AMAZON.COM WA | | 54.93 |
| 06/03 | 06/03 | 2469216HB00JQQ0S9 | AMZ*SUPERSTORE AMAZON.COM WA | | 202.62 |
| 06/04 | 06/04 | 2441600HF4L74GJ9L | LD *CALL 6194822119 CA  800-5959694 TX | | 40.50 |
| 06/09 | 06/09 | 7446539HE25WKXKAF | PAYMENT THANK YOU | 372.67 | |

PERIODIC *FINANCE CHARGE* PURCHASES  $0.00 CASH ADVANCE  $0.03

MINIMUM *FINANCE CHARGE*                                           2.00




# Up to $20 off a weekly or weekend rental and a discount too!

(M)ention PC# 952781 and your discount CDP# 65331 when reserving and renting a Premium or higher class vehicle (Class G or higher) for at least two days at Hertz Standard or Leisure Weekly or Weekend Rates. At the time of rental, present your Wells Fargo credit card or Hertz Discount Savings Card for identification. You'll save $5 per day, up to $20 off, and then receive your discount. This offer expires December 31, 2004. (F)or reservations, visit hertz.com, call your travel agent or call Hertz at 1-800-654-2210.

WELLS FARGO                                    Hertz

Hertz rents Fords and other fine cars. ® Reg. U.S. Pat. Off. © 2004 Hertz System, Inc. 134-04

Important Rental Information: Advance reservations are required as blackout periods may apply. Normal weekly and weekend restrictions for the renting city apply. This offer is redeemable at participating Hertz locations in the US. (excluding weekend rentals in Hawaii), Canada and Puerto Rico and is subject to vehicle availability. This offer has no cash value and may not be used with any other CDP#, coupon, discount, rate or promotion. Hertz standard driver and credit qualifications for the renting location apply and the car must be returned to that location. Minimum rental age is 25 (exceptions apply). Taxes, tax reimbursement, airport-related fees, vehicle license fees and optional service charges, such as refueling, are not subject to discount. This offer is available for rental vehicle pickup through December 31, 2004. Wells Fargo & Company, its affiliates and subsidiaries are not liable for any damages resulting from the provision of, or failure to provide, the services or benefits. Call for details.

Citibank Unbilled Activity



Priva
Careers  •  Use Credit Wisely  •  citicards.c

## Unbilled Activity

Wednesday, May 12, 2004

XXXX-XXXX-XXXX-4127

The following transactions have been posted to your account since your last statement.
This list may not include your most recent transactions.

| | |
|---|---|
| Current Balance | $693.29 |
| Next Statement Date | 05/12/04 |

### Payments/Adjustments and Credits

| Sale Date | Post Date | Description | Amount |
|---|---|---|---|
| 04/26/04 | 04/26 | NEVADA PAYMENT | $500.00 |
| | | | $500.00 |

1 transaction.

### Transactions

| Sale Date | Post Date | Description | Amount |
|---|---|---|---|
| 04/17/04 | 04/17 | | |
| 04/18/04 | 04/18 | | |
| 04/25/04 | 04/25 | | |
| 04/25/04 | 04/25 | | |
| 05/09/04 | 05/09 | | |
| 05/09/04 | 05/09 | | |
| 05/09/04 | 05/09 | | |
| 05/10/04 | 05/10 | NCIC..COM PHONE CALL TEL8003822887 TX | $46.58 |

8 transactions.

### Cash Advances and Checks

| Sale Date | Post Date | Description | Amount |
|---|---|---|---|

No activity.

Close this window

U.S. Bank Internet Banking

# Credit Card
Account ending in 2988
ACCOUNT INFO | ACCOUNT NICKNAMES

| CURRENT BALANCE | AVAILABLE CREDIT |
|---|---|
| $124.36 | $8,374.64 |
| MINIMUM PAYMENT DUE | NEXT PAYMENT DATE |
| $0.00 | 05/15/04 |

Make a Payment to this account

Download transaction data for this account

**Recent Transactions** — Click on column headings to re-sort.

| DATE | DESCRIPTION | CREDIT | Next CHARGE |
|---|---|---|---|
| 05/12/04 | Mypaysystems.com 8003252244 Gb | | $46.58 |
| 05/10/04 | Nordstrom #0360 San Diego Ca | | $73.27 |
| 05/07/04 | Payment Thank You | | |

Bank of America | Online Banking : Account Activity

### Alaska Air Visa Platinum-6835

print window

**Current Statement**

| Posting Date | Transaction Date | Transaction | Amount | Balance |
|---|---|---|---|---|
| 05/11/2004 | 05/07/2004 | MYPAYSYSTEMS.COM | $46.58 | $46.58 |
| | | Beginning Balance as of 05/08/2004 | | $0.00 |

🔒 Secure Area

Bank of America, N.A. Member FDIC. Equal Housing Lender 🏠
© 2003 Bank of America Corporation. All rights reserved

Bank of America Higher Standards

American Express | E-Statement

Page 1 of 1

 **Cards**

 Close Window

# Cash Rebate Card
# Account Summary and Details

This is not a billing statement.

| Prepared for:<br>SILVIA G ZARATE<br>Member Since: 2003 | Closing Date:<br>May 18, 2004 | Account Number:<br>XXXX-XXXXXX-81004 |
| --- | --- | --- |

### Account Summary

| Previous Balance $ | Payments/Credits $ | New Charges $ | Outstanding Balance $ |
| --- | --- | --- | --- |
| -0.72 | 0.00 | 46.58 | 45.86 |

### Credit Line Summary

| Total Credit<br>Line $ | Available Credit<br>Line $ | Cash Advance<br>Limit $ | Available Cash<br>Limit $ |
| --- | --- | --- | --- |
| 3,000.00 | 2,953.00 | 600.00 | 600.00 |

Available Credit is updated in real time and will reflect all account activity, including any outstanding authorizations.Recent Activity information is updated nightly and may not match your Available Credit information.

| Payments | Amount $ |
| --- | --- |
| **Total Payment Activity** | 0.00 |

| New Activity | Amount $ |
| --- | --- |
| Transactions for SILVIA G ZARATE<br>Card #: XXXX-XXXXXX-81004 | |
| May 7, 2004<br>NCIC..COM PHONE CALLLONGVIEW TX<br>0000-0507 PHONE SRV /EQUIP-UTIL 05/07/04<br>Reference: 0050120040507 | 46.58 |
| **Activity for SILVIA G ZARATE**          New Charges: | 46.58 |
| **Total New Activity** | 46.58 |

Close Window

Citibank Unbilled Activity



Prive

Careers ▪ Use Credit Wisely ▪ citicards.c

## Unbilled Activity

Wednesday, May 12, 2004

ZARATE, SILVIA G
XXXX-XXXX-XXXX-4127

The following transactions have been posted to your account since your last statement.
This list may not include your most recent transactions.

| | |
|---|---|
| Current Balance | $693.29 |
| Next Statement Date | 05/12/04 |

### Payments/Adjustments and Credits

| Sale Date | Post Date | Description | Amount |
|---|---|---|---|
| 04/26/04 | 04/26 | NEVADA PAYMENT | $500.00 |
| 1 transaction. | | | $500.00 |

### Transactions

| Sale Date | Post Date | Description | Amount |
|---|---|---|---|
| 04/17/04 | 04/17 | FRANK MOTORS TOYOTA NATIONAL CITY USA | $60.80 |
| 04/18/04 | 04/18 | TARGET 00018150 CHULA VISTA USA | $99.08 |
| 04/25/04 | 04/25 | FOREVER 21 #35 GLENDALE CA | $41.35 |
| 04/25/04 | 04/25 | STEVE MADDEN #10 GLENDALE CA | $64.90 |
| 05/09/04 | 05/09 | TARGET 00018150 CHULA VISTA CA | $29.66 |
| 05/09/04 | 05/09 | SALLY BEAUTY #1962 SAN DIEGO CA | $20.86 |
| 05/09/04 | 05/09 | WAL MART SAN DIEGO CA | $22.08 |
| 05/10/04 | 05/10 | NCIC..COM PHONE CALL TEL8003822887 TX | $46.58 |
| 8 transactions. | | | $385.31 |

### Cash Advances and Checks

| Sale Date | Post Date | Description | Amount |
|---|---|---|---|
| No activity. | | | |

Close this window



Verizon Dialing Inc.

Account Number ...
Billing Date ...

Questions ...

## Important Information

This portion of your bill is provided as a service to the customer
described above. Please review all charges appearing in this section.
If you have any questions or concerns, call the telephone number shown
below.

## Current Charges

Itemized Charges and Credits

Item

No. Date    Description

NY Bell-Base Fee
NY Non-Subscriber Fee
NY Carrier Administrative Fee
Federal Universal Service Fund

Total Itemized Charges and Credits

Long Distance

Day

Item Date Time Place Called Number ...

Billed on behalf of NCH

Itemized Calls:

CD. MEXICO    ...    ...

Taxes

Total

Key to Carbon Codes

Person to Person    ...

Total Long Dist Dialing Current Charges



## Important Information

This portion of your bill is provided as a service to the consumer
statement above. Please review all charges appearing in this section.
If you have any questions or concerns call the telephone number shown
above.

## Current Charges

Itemized Charges and Credits

Self

| No. | Date | Description | | |
| --- | --- | --- | --- | --- |
| | | ACCT SET-USP FEE | | $ |
| | | ACCT NON-SUBSCRIBER FEE | | .$ |
| | | USF CARRIER ADMINISTRATIVE FEE | | $ |
| | | FEDERAL UNIVERSAL SERVICE FUND | | $ |

Total Itemized Charges and Credits                              $. .

Long Distance

New

| For | Date | Time | Place | Name | Number | Code | Min |
| --- | --- | --- | --- | --- | --- | --- | --- |

Billed on behalf of NCI:

Itemized Calls

| | ACCESS | | | | $00.00 |
| --- | --- | --- | --- | --- | --- |

Taxes                                                           .$

ABV to Airtime Codes

Other                    Airtime (1 mins)           Standard

Total Zero Plus Dialing Current Charges                        $.. ..

Payments, Credits and Adjustments

Transactions

~~~~~~~ ~~~

MASTERCARD ACCOUNT
5291 0717 4299 2627

APR 22  MAY 21, 2004
Page 1 of 2

## Account Summary

| | |
|---|---|
| Previous Balance | $.00 |
| Payments, Credits and Adjustments | $.00 |
| Transactions | $93.16 |
| Finance Charges | $.00 |
| New Balance | $93.16 |
| Minimum Amount Due | $10.00 |
| Payment Due Date | June 21, 2004 |
| Total Credit Line | $2,800 |
| Total Available Credit | $2,706.84 |
| Credit Line for Cash | $2,800 |
| Available Credit for Cash | $2,706.84 |

### At your service

To call Customer Relations or to report a lost or stolen card

**1-800-903-3637**

Send payments to:
4th Repayment Processing
Capital One Services
P.O. Box 60000
Seattle, WA 98190-6000

Send inquiries to:
Capital One Services
P.O. Box 85315
Richmond, VA 23285-5015

## Payments, Credits and Adjustments

### Transactions

| | | | |
|---|---|---|---|
| 1 | 07 MAY | NCIC.COM PHONE CALL TEL840392287 TX | $10.58 |
| 2 | 10 MAY | NCIC.COM PHONE CALL TEL800392287 TX | 46.58 |

*Paid VIA 6/6   6/8/04*

## Finance Charges

*Please see reverse side for important information*

| | Balance rate applicable | Periodic rate | Corresponding APR | FINANCE CHARGE |
|---|---|---|---|---|
| PURCHASES | $.00 | 04.2494 F | 15.5% | $.00 |
| CASH | $.00 | 04.2494 F | 15.41% | $.00 |

**ANNUAL PERCENTAGE RATE applied this period** — 0.00%

▼ PLEASE RETURN PORTION BELOW WITH PAYMENT ▶

AI83-56



Additional Information Regarding
Account Number   4465 3900 0193 7296
Statement Closing Date   06/05/04



## Transactions

| Trans | Post | Reference Number | Description | Credits | Charges |
|-------|------|------------------|-------------|---------|---------|
| 05/12 | 05/12 | 2432300GN3J84T03S | SUSHI ITTO SAN DIEGO CA | | 23.30 |
| 05/17 | 05/17 | 2469216G800EJMM3D | PPL*MEMBERSHIP - R    800-654-7757 OK | | 25.00 |
| 05/28 | 05/28 | 2440369H74ARHFQ8T | UFO UPHOLSTERY FABRIC 1ST NATIONAL CITY | | 160.55 |
| 06/02 | 06/02 | 2469216HA00FM23EQ | AMZ*SUPERSTORE AMAZON.COM WA | | 64.93 |
| 06/03 | 06/03 | 2469216HB00JQQ029 | AMZ*SUPERSTORE AMAZON.COM WA | | 202.52 |
| 06/04 | 06/04 | 2441800HF4L74GJ9L | LD *CALL 6194822119 CA  800-9959594 TX | | 40.59 |
| 06/06 | 06/06 | 7446539HE25WKXKAF | PAYMENT THANK YOU | 372.67 | |

PERIODIC 'FINANCE CHARGE' PURCHASES  $0.00 CASH ADVANCE  $0.00

MINIMUM 'FINANCE CHARGE'                                           2.00



# Up to $20 off a weekly or weekend rental and a discount too!

(M)ention PC# 952781 and your discount CDP# 65331 when reserving and renting a Premium or higher class vehicle (Class G or higher) for at least two days at Hertz Standard or Leisure Weekly or Weekend Rates. At the time of rental, present your Wells Fargo credit card or Hertz Discount Savings Card for identification. You'll save $5 per day, up to $20 off, and then receive your discount. This offer expires December 31, 2004. (F)or reservations, visit hertz.com, call your travel agent or call Hertz at 1-800-654-2210.





Hertz rents Fords and other fine cars.  ® Reg. U.S. Pat. Off © 2004 Hertz System, Inc. 134-04

**Important Rental Information:** Advance reservations are required as blackout periods may apply. Normal weekly and weekend restrictions for the renting city apply. This offer is redeemable at participating Hertz locations in the U.S. (excluding weekend rentals in Hawaii), Canada and Puerto Rico and is subject to vehicle availability. This offer has no cash value and may not be used with any other CDP#, coupon, discount, rate or promotion. Hertz standard driver and credit qualifications for the renting location apply and the car must be returned to that location. Minimum rental age is 25 (exceptions apply). Taxes, tax reimbursement, airport-related fees, vehicle license fees and optional service charges, such as refueling, are not subject to discount. This offer is available for rental vehicle pick-up through December 31, 2004. Wells Fargo & Company, its affiliates and subsidiaries are not liable for any damages resulting from the provision of, or failure to provide, the services or benefits. Call for details.