IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| BBG COMMUNICATIONS, INC. AND BBG HOLDINGS LIMITED | § § § | |
| v . | § § | CIVIL ACTION NO. 2:03-CV-227 |
| NETWORK COMMUNICATIONS INTERNATIONAL CORP.; BLUE PHONES LIMITED; WILLIAM POPE; JAY WALTERS; AND JEFFREY WALTERS | § § § § § § § | JUDGE WARD |
| v. | § § | |
| RONALD PEREZ, GREGORIO L. GALICOT, RAFAEL GALICOT, MICHAEL STOMPS, AWI FANG a/k/a SURIYANTO SURIYANTO, GORAN ALEXIEV, MICHEL ALEXIEV, KEVEN WATT, BBG HOLDINGS BERMUDA d/b/a BBG COMMUNI-CATIONS (BERMUDA) | § § § § § § § § § § | |

## AFFIDAVIT OF JAY WALTERS

| | |
|---|---|
| STATE OF TEXAS | § |
| | § |
| COUNTY OF GREGG | § |

BEFORE ME, the undersigned authority, personally appeared Jay D. Walters who, being by me duly sworn, deposed as follows:

1.    "My name is Jay D. Walters and I am of sound mind, capable of making this Affidavit and I have personal knowledge of all matters stated herein.

2.     I am an individual residing in Longview, Gregg County, Texas.

3.     I am the Vice President of Network Communications International Corp. ("NCIC").

4.     The **dbo_NCIC_ReportLog** is an SQL Table set up in February of 2001 to keep track of who is accessing which reports (the "Report Log").  The Report Log keeps the following information of every SQL request (database dip):

> **RecID -**   A unique identification number used to separate each record.
>
> **ReportDate**      - A date stamp that gives the Month, Day, Year, Hour, Minute and Second the report was accessed.
>
> **Account** - Account Numbers accessed.
>
> **Report** - Exact report requested.
>
> **RemoteHost** - An Internet Protocol ("IP") Address (an identifier for a computer or device on a TCP/IP network) of the computer/office network that accessed the report.
>
> **Password -**      The unique, secure password used to access the report.  (See Exhibit 1.)

5.     On September 13, 2003, NCIC provided Centris with a list of 64,000 IPs that had accessed NCIC's Internet Reporting

System (culled from the NCIC Report Log). Centris was asked to compare these IPs with those IPs that also accessed BBG's Reports and provide a list of those IPs that matched ("Matching IPs".)

6.   On September 27, 2004, Centris provided NCIC with the list of Matching IPs. One Matching IP was **62.24.74.186**. (See Exhibit 2.) Thus, this Matching IP accessed both BBG's Reports on Centris' server and NCIC's Internet Report. I traced the origin of this Matching IP to the Czech Republic. (See Exhibit 3.) In other words, someone in the **Czech Republic** accessed NCIC's Internet Reporting System repeatedly from May 15 to July 17, 2003 using several passwords including "ducati" and "comet." (See Exhibit 1.) Goran and Michel Alexiev were the **only** Blue Phones Limited agents who resided in the Czech Republic. Moreover, the accounts that were accessed on NCIC's system were BPL accounts that were being serviced by the Alexievs.

7.   On October 2, 2003, Goran Alexiev sent an e-mail to Bill Pope. (See Alexiev E-mail at Exhibit 4.)

8.   Utilizing text editing software known as Ultra Edit (available at any retail store), I was able to see the header of this e-mail.

The e-mail header provides information such as the domain name and IP where the e-mail was sent from and the time and date the e-mail was sent.  Thus, by looking at the e-mail header information of the Alexiev E-mail, I was able to identify the exact IP that was used to send this e-mail as 62.24.74.186.  (See Exhibit 5.)  This same IP accessed NCIC's Reporting System from May 15, 2003 to July 17, 2003 using the passwords "ducati" and "comet."  (See Exhibit 1.)  The accounts accessed were BPL accounts that were being serviced by the Alexievs.  The Alexievs signed an exclusive agreement with BBG on May 15, 2003. (See Exhibit 6.)  Had NCIC been made aware of this, I would have taken steps to block them from accessing our Reporting System."

Further affiant sayeth not.

IN WITNESS HEREOF, the undersigned has executed this affidavit on November 16, 2004.

_____
JAY D. WALTERS

Sworn and subscribed to before me this 16th day of

November, 2004 to certify which witness my hand and official seal.

_____
Notary Public in and for the State of Texas

CECILIA S. MARTINEZ
Notary Public, State of Texas
My Commission Expires
September 17, 2005

# Exhibit
# 1

| RecID | ReportDate | Account | Report | RemoteHost | Password |
|---|---|---|---|---|---|
| 1420025 | 05/15/03 05:43:01 AM | 31143 | Traffic | 62.24.74.186 | kanpur |
| 1505236 | 05/21/03 10:29:55 AM | 31032 | Traffic | 62.24.74.186 | ducati |
| 273572 | 05/22/03 06:48:24 AM | 31143 | Traffic | 62.24.74.186 | kanpur |
| 273430 | 05/22/03 07:54:25 AM | 31059 | Traffic | 62.24.74.186 | ducati |
| 273624 | 05/22/03 09:05:24 AM | 31143 | Traffic | 62.24.74.186 | kanpur |
| 1410852 | 05/29/03 07:04:00 AM | 31049 | Traffic | 62.24.74.186 | ducati |
| 61788 | 05/29/03 07:05:32 AM | 31010 | Traffic | 62.24.74.186 | ducati |
| 243107 | 06/03/03 03:03:46 AM | 31049 | Completes | 62.24.74.186 | ducati |
| 242790 | 06/03/03 03:04:11 AM | 31049 | Completes | 62.24.74.186 | ducati |
| 242792 | 06/03/03 03:04:46 AM | 31049 | Traffic | 62.24.74.186 | ducati |
| 256900 | 06/03/03 04:04:15 AM | 31027 | Traffic | 62.24.74.186 | ducati |
| 242932 | 06/03/03 04:07:46 AM | 31027 | Traffic | 62.24.74.186 | ducati |
| 374019 | 06/06/03 03:35:48 AM | 31006 | TrafficAccount | 62.24.74.186 | ducati |
| 350548 | 06/06/03 03:35:57 AM | 31006 | Completes | 62.24.74.186 | ducati |
| 374099 | 06/06/03 03:36:59 AM | 31006 | TrafficAccount | 62.24.74.186 | ducati |
| 374100 | 06/06/03 03:37:15 AM | 31006 | TrafficAccount | 62.24.74.186 | ducati |
| 349140 | 06/06/03 10:54:52 AM | 31049 | Traffic | 62.24.74.186 | ducati |
| 349143 | 06/06/03 10:55:21 AM | 31049 | Traffic | 62.24.74.186 | ducati |
| 349340 | 06/06/03 10:57:57 AM | 31049 | Traffic | 62.24.74.186 | ducati |
| 349153 | 06/06/03 10:58:28 AM | 31049 | Traffic | 62.24.74.186 | ducati |
| 349157 | 06/06/03 10:59:54 AM | 31049 | Traffic | 62.24.74.186 | ducati |
| 349228 | 06/06/03 11:00:02 AM | 31049 | Traffic | 62.24.74.186 | ducati |
| 349158 | 06/06/03 11:01:03 AM | 31049 | Traffic | 62.24.74.186 | ducati |
| 349369 | 06/06/03 11:45:18 AM | 31049 | Traffic | 62.24.74.186 | ducati |
| 138157 | 06/11/03 04:03:01 AM | 31010 | Traffic | 62.24.74.186 | ducati |
| 23757 | 06/11/03 04:06:09 AM | 31010 | Traffic | 62.24.74.186 | ducati |
| 120069 | 06/16/03 06:36:06 AM | 31143 | Traffic | 62.24.74.186 | ducati |
| 286886 | 06/22/03 09:32:52 AM | 31058 | Completes | 62.24.74.186 | ENERGY |
| 286888 | 06/22/03 09:33:21 AM | 31058 | Traffic | 62.24.74.186 | ENERGY |
| 286890 | 06/22/03 09:37:12 AM | 31073 | DateGraph | 62.24.74.186 | COMET |
| 286891 | 06/22/03 09:38:26 AM | 31073 | DaySum | 62.24.74.186 | COMET |
| 286892 | 06/22/03 09:38:42 AM | 31073 | DaySum | 62.24.74.186 | COMET |
| 352488 | 06/22/03 09:39:14 AM | 31073 | Completes | 62.24.74.186 | COMET |
| 286895 | 06/22/03 09:39:18 AM | 31073 | DaySum | 62.24.74.186 | COMET |
| 352490 | 06/22/03 09:39:44 AM | 31073 | DaySum | 62.24.74.186 | COMET |
| 285045 | 06/22/03 09:40:08 AM | 31073 | Completes | 62.24.74.186 | COMET |
| 286896 | 06/22/03 09:40:16 AM | 31073 | DaySum | 62.24.74.186 | COMET |
| 1495480 | 06/22/03 09:41:05 AM | 31073 | Traffic | 62.24.74.186 | COMET |
| 285047 | 06/22/03 09:41:14 AM | 31073 | Traffic | 62.24.74.186 | COMET |
| 242552 | 07/01/03 11:16:19 AM | 31058 | Traffic | 62.24.74.186 | energy |
| 242554 | 07/01/03 11:17:01 AM | 31058 | Traffic | 62.24.74.186 | energy |
| 242438 | 07/01/03 11:41:37 AM | 31073 | Traffic | 62.24.74.186 | comet |
| 113662 | 07/01/03 11:41:44 AM | 31073 | Completes | 62.24.74.186 | comet |
| 113558 | 07/01/03 11:41:53 AM | 31073 | Traffic | 62.24.74.186 | comet |
| 58976 | 07/04/03 04:01:38 AM | 31028 | Traffic | 62.24.74.186 | python |
| 433430 | 07/06/03 06:31:54 AM | 31027 | Traffic | 62.24.74.186 | cobra |

| | | | | | |
|---|---|---|---|---|---|
| 433745 | 07/06/03 06:32:07 AM | 31027 | Completes | 62.24.74.186 | cobra |
| 255069 | 07/14/03 08:02:22 AM | 31028 | Traffic | 62.24.74.186 | python |
| 255070 | 07/14/03 08:02:28 AM | 31028 | Completes | 62.24.74.186 | python |
| 255352 | 07/14/03 08:03:23 AM | 31028 | Traffic | 62.24.74.186 | python |
| 255353 | 07/14/03 08:03:29 AM | 31028 | Completes | 62.24.74.186 | python |
| 400927 | 07/16/03 07:03:03 AM | 3792 | Traffic | 62.24.74.186 | vapor |
| 75477 | 07/16/03 07:03:09 AM | 3792 | Completes | 62.24.74.186 | vapor |
| 400982 | 07/16/03 09:50:56 AM | 31028 | Traffic | 62.24.74.186 | python |
| 175550 | 07/17/03 05:53:48 AM | 31073 | Traffic | 62.24.74.186 | comet |
| 176533 | 07/17/03 05:53:54 AM | 31073 | Completes | 62.24.74.186 | comet |

# Exhibit
# 2

62.11.109.165
62.11.109.185
62.11.109.203
62.11.110.89
62.11.85.140
62.11.85.196
62.11.85.238
62.11.86.132
62.11.86.144
62.11.86.236
62.11.86.38
62.11.86.87
62.11.86.99
62.11.87.89
62.11.88.238
62.11.88.81
62.166.235.145
62.24.74.186
62.68.64.9
62.94.196.179
63.110.190.196
63.110.190.254
63.136.112.13
63.136.112.158
63.136.112.43
63.136.113.108
63.136.113.115
63.136.113.163
63.136.113.241
63.81.38.3
63.84.67.253
63.90.84.23
64.180.55.247
65.166.138.194

# Exhibit
# 3

# WHOIS results for 62.24.74.186

Generated by www.DNSstuff.com

Country: CZECH REPUBLIC

ARIN says that this IP belongs to RIPE; I'm looking it up there.

Using cached answer (or, you can get fresh results).
Hiding E-mail address (you can get results with the E-mail address).

```
% This is the RIPE Whois secondary server.
% The objects are in RPSL format.
%
% Rights restricted by copyright.
% See http://www.ripe.net/db/copyright.html

inetnum:      62.24.72.0 - 62.24.87.255
netname:      DATTELKABEL-II
descr:        UPC Internet CATV
descr:        Broadband Internet services
country:      CZ
admin-c:      MK23104-RIPE
tech-c:       MK23104-RIPE
tech-c:       MCR1-RIPE
status:       ASSIGNED PA
remarks:      *******************************************
remarks:      * In case of hack attacks, scans etc. please *
remarks:      *       send abuse notifications to:          *
remarks:      *              ****@mistral.cz                *
remarks:      *******************************************
remarks:      *       In case of spam please send abuse    *
remarks:      *             notifications to:               *
remarks:      *              ****@mistral.cz                *
remarks:      *******************************************
notify:       ****@mbox.dkm.cz
mnt-by:       DKI-MNT
changed:      *********@mistral.cz 20030820
source:       RIPE

route:        62.24.64.0/19
descr:        UPC Ceska republika, a.s. - Broadband Internet
origin:       AS15512
mnt-by:       DKI-MNT
changed:      *********@mistral.cz 20030612
source:       RIPE

role:         Mistral Contact Role
address:      UPC Ceska republika, a.s.
address:      Zavisova 502/5
address:      Prague Nusle
address:      the Czech Republic
phone:        + 420 2 61107111
fax-no:       + 420 2 61107100
e-mail:       *********@mistral.cz
trouble:      +----------------------------------------------------+
trouble:      | customer contact chello Hotline 420 2 41005372     |
trouble:      | customer contact chello Hotline Brno 420 844 111372 |
trouble:      +----------------------------------------------------+
admin-c:      MK23104-RIPE
tech-c:       MK23104-RIPE
tech-c:       DN27-RIPE
tech-c:       MB430-RIPE
```

```
tech-c:        LS83-RIPE
tech-c:        KK1231-RIPE
nic-hdl:       MCR1-RIPE
notify:        ****@mbox.dkm.cz
mnt-by:        DKI-MNT
changed:       *********@mistral.cz 20040126
source:        RIPE

person:        Martin Krautwurst
address:       UPC Ceska republika, a.s.
address:       Zavisova 502/5
address:       Prague 4 - Nusle
address:       140 00
address:       the Czech Republic
phone:         +420 2 61107198
fax-no:        +420 2 61107100
e-mail:        *********@mistral.cz
nic-hdl:       MK23104-RIPE
notify:        *********@mistral.cz
mnt-by:        DKI-MNT
changed:       *********@mistral.cz 20030710
source:        RIPE
```

[If E-mail address(es) were hidden on this page, you can click here to get the results

(C) Copyright 2000-2004 R. Scott Perry

http://www.ripe.net/fcgi-bin/whois?form_type=simple&full_query_string=&searchtext=62.24.74.186&submit.x=2&...



                  **RIPE Whois Search**

About RIPE NCC | Contact | Search | Sitemap

- Internet Resources
- Whois Database
- Training Courses
- Other Services & Projects
- Membership
- Meetings
- Tools and Software
- Info, Stats and FAQ

**Query the RIPE Whois Database**

Search for [ 62.24.74.186 ]   Search   Reset

Advanced search



```
% This is the RIPE Whois tertiary server.
% The objects are in RPSL format.
%
% Rights restricted by copyright.
% See http://www.ripe.net/db/copyright.html

inetnum:      62.24.72.0 - 62.24.87.255
netname:      DATTELKABEL-II
descr:        UPC Internet CATV
descr:        Broadband Internet services
country:      CZ
admin-c:      MK23104-RIPE
tech-c:       MK23104-RIPE
tech-c:       MCR1-RIPE
status:       ASSIGNED PA
remarks:      ****************************************
remarks:      * In case of hack attacks, scans etc. please *
remarks:      *       send abuse notifications to:        *
remarks:      *            abuse@mistral.cz               *
remarks:      ****************************************
remarks:      *    In case of spam please send abuse      *
remarks:      *         notifications to:                 *
remarks:      *            spam@mistral.cz                *
remarks:      ****************************************
notify:       ripe@mbox.dkm.cz
mnt-by:       DKI-MNT
changed:      hostmaster@mistral.cz 20030820
source:       RIPE

route:        62.24.64.0/19
descr:        UPC Ceska republika, a.s. - Broadband Internet
origin:       AS15512
mnt-by:       DKI-MNT
changed:      hostmaster@mistral.cz 20030612
source:       RIPE

role:         Mistral Contact Role
address:      UPC Ceska republika, a.s.
```

http://www.ripe.net/fcgi-bin/whois?form_type=simple&full_query_string=&searchtext=62.24.74.186&submit.x=2&...

```
address:      Zavisova 502/5
address:      Prague Nusle
address:      the Czech Republic
phone:        + 420 2 61107111
fax-no:       + 420 2 61107100
e-mail:       hostmaster@mistral.cz
trouble:      +--------------------------------------------------+
trouble:      | customer contact chello Hotline 420 2 41005372   |
trouble:      | customer contact chello Hotline Brno 420 844 111372 |
trouble:      +--------------------------------------------------+
admin-c:      MK23104-RIPE
tech-c:       MK23104-RIPE
tech-c:       RN27-RIPE
tech-c:       MB430-RIPE
tech-c:       LS83-RIPE
tech-c:       KK1231-RIPE
nic-hdl:      MCR1-RIPE
notify:       ripe@mbox.dkm.cz
mnt-by:       DKI-MNT
changed:      hostmaster@mistral.cz 20040126
source:       RIPE

person:       Martin Krautwurst
address:      UPC Ceska republika, a.s.
address:      Zavisova 502/5
address:      Prague 4 - Nusle
address:      140 00
address:      the Czech Republic
phone:        +420 2 61107198
fax-no:       +420 2 61107100
e-mail:       hostmaster@mistral.cz
nic-hdl:      MK23104-RIPE
notify:       hostmaster@mistral.cz
mnt-by:       DKI-MNT
changed:      hostmaster@mistral.cz 20030710
source:       RIPE
```

- **Bold: Object type.**
- Underlined: Primary key(s).
- Hyperlinks: Searchable Attributes.

**4 records found for '62.24.74.186'**

**Further Information**

The RIPE Whois Database Reference Manua

RIPE DB Free-text Search (Glimpse)

About RIPE NCC | Site Map | LIR Portal | About RIPE | Contact | © RIPE NCC. All rights reserved.

# Exhibit
# 4

File Edit View Insert Format Tools Actions Help

Reply Reply to All Forward Click here to find all related messages.

You forwarded this message on 8/25/2003 1:41 PM. Click here to find all related messages.

From:    an Alexiev [goran.alexiev@bbgcomm.com]                    Sent: Thu 10/2/2003 12:13 PM
To:
Cc:      Ilir Hope
Subject: Register of nciceurope.com domain name

Prague, 2 July 2003

Bil,

Further to your email(s) concerning the domain www.ncic.europe.com:

• We (all of the old team) have not used, will not use, and never intended to use the nciceurope domain for marketing purposes after we joined BBG

• In fact, we have not been using the NCIC trademark information for any purpose whatsoever since.

• As you can see, we have meanwhile shut it off.

• In the mean time, we are assessing how and when to transfer the domain name to NCIC

• However, we are concerned about making sure that any emails sent to us at that address are not read by unauthorized third parties including yourself. Do you have any suggestions how our mutual concerns can be resolved?

• I hope that this makes it clear to you that we have not infringed nor are infringing nor have any intention to infringe on NCIC's trademark.

• You should also note that none of us is nor intends to be an employee of BBG.

In consideration of the above, let me thank you for reminding us of our obligations under the NCIC agreement!

Sincerely,

For and on behalf of Benchmark Project Management s.r.o. (owner of the domain),

Goran Alexiev

# Exhibit
# 5



# Exhibit
# 6

## TRAFFIC AGREEMENT

This Agreement ("**Agreement**") is made and entered into as of May _15_, 2003, (the "**Effective Date**") by and among  BBG Holdings, Ltd., a Bermuda corporation ("BBG"), on the one hand, and Benchmark Project Management, s.r.o., Michel Alexiev and Goran Alexiev (collectively, the "**Agent**"), on the other hand, with reference to the following:

## RECITALS:

WHEREAS, BBG is in the business of providing public telephone services, via operator assisted long distance telecommunications services billed collect, to a calling card, to a credit card or to a third party ( the "**Services**"), and  Agent is in the business of selling services such as the Services; and

WHEREAS, BBG and Agent desire that (i) Agent refers Calls originating from its Customer Base ( the "**Traffic**") to BBG, (ii) Agent assigns to BBG its beneficial interest in the Service Agreements, and (iii) Agent becomes a sales representatives of BBG.

THEREFORE, in consideration of the promises and the mutual covenants and agreements contained in this Agreement, the parties hereto agree as follows:

## ARTICLE I:  DEFINITIONS

In addition to the terms defined elsewhere in the Agreement, the following defined terms shall have the following designated meanings:

"**Average Calls**" means an average of daily Calls for the preceding 30 days.

"**Call Platform**" means the location or locations where BBG receives Calls originated by an End User and routes them to the receiving party.

"**Call**" means an international operator assisted long distance call originating from the Customer Base and terminated through BBG's Call Platform.

"**Customer**" means a person that has entered into a Service Agreement with Agent.

"**Customer Base**" means all of the Customers of Agent as listed in Exhibit "A" attached hereto and incorporated herein by this reference.

"**End User**" means a person who places a Call on a telephone within Agent's Customer Base.

"**Law**" means all applicable statutes, laws, treaties, ordinances, rules, regulations, orders, writs, injunctions, decrees, judgments, or opinions of any Tribunal

"**Person**" means any individual or entity.

BBG 10251
ATTORNEYS EYES ONLY

"Service Agreements" means those certain agreements between the Agent and its Customers listed in Exhibit "B" attached hereto and incorporated herein by this reference;

"Tribunal" means any (i) local, state, or federal judicial, executive, administrative, regulatory, or legislative instrumentality, and (ii) private arbitration board or panel.

## ARTICLE II: ASSIGNMENT AND PAYMENT TERMS

a.      Assignment of Service Agreements. Agent hereby assigns to BBG its beneficial interest under each of the Service Agreements. Commencing upon execution of this Agreement, Agent shall exert its best commercial efforts, jointly with BBG, to cause its Customers to enter into direct agreements for the provision of Services with BBG ("New Agreements"). Agent and BBG agree that it is their intention that these New Agreements shall replace all of the Service Agreements. Pending execution of such New Agreements, Agent shall not amend or terminate any Service Agreement; provided, however, that upon BBG's request and confirmation that the Customer will execute a New Agreement, Agent will cooperate with BBG to terminate the applicable Service Agreement.

b.      Introduction of BBG. In order to accomplish the goals set out in paragraph (a) above, Agent shall introduce BBG to each Customer within two (2) months of execution of this Agreement. The specific dates for such introductions shall be mutually agreed by Agent and BBG.

c.      Sales Representative Agreement. Concurrently with the execution of this Agreement, Agent and its principals, if any, shall enter into a Sales Representative Agreement with BBG in the form of Exhibit "C" attached hereto and incorporated herein by this reference.

d.      Payment. In consideration for Agent's performance hereunder, including without limitation the assignment of its beneficial interests in the Service Agreements to BBG, and in addition to the commissions payable to Agent pursuant to the Sales Representative Agreement, BBG shall pay to Agent up to US$60,000 ( the "Transfer Payment") , payable as follows:

(1)      The sum of US$25,000 upon execution hereof.

(2)      The sum of US$15,000 upon completion of BBG's due diligence investigation of the Service Agreements and the effective assignment thereof, which shall take place on or before;

(3)      The sum of US$10,000 when Average Calls equals 35 and provided that this goal is met on or before August 1, 2003; and

(4)      The sum of US$10,000 when Average Calls equals 45 and provided that this goal is met on or before August 1, 2003.

c.      Minimum Traffic Requirement. Agent acknowledges that the payments provided for herein are expressly contingent upon Agent exercising its best efforts to transfer all Traffic from its Customer Base to BBG, it being understood that the payments under paragraph

BBG 10252
ATTORNEYS EYES ONLY

(d) above will not be due and payable if the Average Calls goals are not satisfied. Provided, however, that the deadlines of section (d) above will be extended in the event of Force Majeure (as defined in the Sales Representative Agreement) for up to 6 months. Attached hereto as Exhibit "D" are the historical Call volumes originating from Agent's Customer Base.

    f.   Technical Assistance. BBG shall provide Agent with reasonable technical assistance, DID numbers and toll free lines to enable Agent to switch the Traffic from the current providers to the BBG Call Platform. Agent shall exert its best reasonable commercial efforts so that within two (2) months from the date of this Agreement all Traffic connects automatically to the BBG Call Platform.

    g.   Offset. BBG may offset from amounts due and payable by BBG hereunder any damages that it incurs as a result of Agent's breach of any of its representations, warranties, covenants or agreements contained in this Agreement.

    h.   Termination. BBG may terminate this Agreement upon notice to Agent if the conditions for payments are not satisfied or if Agent breaches its obligations hereunder. Agent may terminate this Agreement if BBG fails to make the payments required hereunder or otherwise breaches its obligations. In either event, however, there shall be prior written notice of termination, stating the grounds therefor, to the breaching Party and the breaching Party shall have thirty (30) days to cure the alleged default.

    i.   Reimbursement of Payments. If Agent receives any commissions or other payments from Network Communications International Corporation ("NCIC") or Blue Phone Limited in compensation for Traffic processed by either NCIC or Blue Phone Limited after May 1, 2003, prior to the transfer of Agent's Traffic to BBG, Agent shall promptly so advise BBG. In that event Agent shall reimburse BBG for any payments made by BBG under section 2(d) above, but only to the extent of the payments received from NCIC or Blue Phone Limited.

### ARTICLE III: WARRANTIES

    a.   Agent's Representations and Warranties. Agent warrants and represents as follows:

    (1)   Agent has full power and authority to carry on its business as it is now being conducted.

    (2)   This Agreement and all agreements, instruments and documents herein provided to be executed or to be caused to be executed by Agent is (or will be) duly executed by and binding upon, and do not and will not violate any provision of, or constitute a default under, any agreement, law, regulation or judicial order to which Agent is a party or by which it is bound upon execution hereof. Without limiting the generality of the foregoing, Agent warrants that to Agent's knowledge, performance of its obligations hereunder does not and will not violate any law, rule, regulation, or ordinance applicable to the telecommunications services to be provided pursuant to this Agreement.

BBG 10253
ATTORNEYS EYES ONLY

(3)    Each of the Service Agreements to which Agent is a party is valid, binding and in full force and effect in accordance with its terms, and Agent has no current knowledge that any Customer intends to terminate its Service Agreement.

(4)    Agent is not in breach of, or default under, any Service Agreement, and has no knowledge of any breach or anticipated breach of, or default under, a Services Agreement by a Customer.

(5)    Exhibits "A", "B" and "D" attached to this Agreement and incorporated herein by reference, are true, accurate and complete in all respects.

b.    BBG's Representations and Warranties. BBG warrants that it is a corporation duly organized, validly existing, and in good standing under the laws of Bermuda, and has the full power and authority (corporate and otherwise) to carry on its business as it is now being conducted. BBG's execution of and performance under this Agreement have been duly authorized, and when executed this Agreement shall be a valid and binding obligation of BBG

## ARTICLE IV: COVENANTS

a.    Compliance with Laws. In the course of performing their respective duties under this Agreement, each of BBG and Agent agrees that it will not violate the provisions of any Laws, including, but without limitation, any Law promulgated by in the country in which the Calls are made or terminated, or any other country which has regulatory authority over the provision of the Services.

## ARTICLE V: INDEMNIFICATION

Agent and BBG (each in this context an "Indemnifying Party") agrees to, and does hereby, indemnify the other party hereto (each, in this context, an "Indemnified Party") and its directors, officers, shareholders, employees, and representatives, against all claims, damages, losses, and expenses, including reasonable attorneys fees and expenses, arising out of or related to (i) a breach by the Indemnifying Party of its representations, warranties, covenants and agreements under this Agreement, or (ii) the willful misconduct or negligent acts, errors or omissions of the Indemnifying Party.

## ARTICLE VI: MISCELLANEOUS

a.    Headings. The headings, captions, and arrangements used in this Agreement are for convenience only and do not limit, amplify, or modify the terms of this Agreement.

b.    Notice. Unless specifically otherwise provided, whenever this Agreement requires or permits any consent, approval, notice, request, or demand from one party to another, such communication must be in writing (which may be by facsimile transmission or email) to be effective and shall be deemed to have been given on the day actually delivered or, if mailed, on the tenth (10th) calendar day after it is enclosed in an envelope, addressed to the party to be

BBG 10254
ATTORNEYS EYES ONLY

notified at the address set forth on the signature page hereto, properly stamped, sealed, and deposited in the appropriate official postal service

    c.    Survival. All covenants, agreements, representations, and warranties made in this Agreement, including Agent's rights of commissions, shall survive the expiration of the term or any extension or renewal hereof or any assignment of this Agreement or any of the rights or obligations set forth hereunder.

    d.    Governing Law. The parties agree that for their mutual convenience the laws of California shall govern the rights and duties of the parties and the validity, construction, enforcement, and interpretation of this Agreement, without regard to principles of conflicts of laws.

    e.    Invalid Provisions. If any provision of this Agreement is held to be illegal, invalid, or unenforceable, such provision shall be fully severable; this Agreement shall be construed and enforced as if such provision had never comprised a part hereof; and the remaining provisions shall remain in full force and effect and shall not be affected by such provision or by its severance. Furthermore, in lieu of such provision, there shall be added automatically a provision as similar in terms to such illegal, invalid, or unenforceable provision as may be possible and be legal, valid, and enforceable.

    f.    Entirety and Amendments. This Agreement represents the final agreement between the parties with respect to the subject matter hereof and may not be contradicted by evidence of prior, contemporaneous, or subsequent oral agreements by the parties. No amendment or variation of the terms of this Agreement shall be valid unless made in writing and signed by each of the parties.

    g.    Waivers. No course of dealing nor any failure or delay by either party, or its respective officers, directors, employees, representatives, or attorneys with respect to exercising any right or remedy available to it hereunder shall operate as any waiver thereof under this Agreement. A waiver must be in writing and signed by the waiving party to be effective, and such waiver will be effective only in the specific instance and for the specific purpose for which it is given.

    h.    Multiple Counterparts. This Agreement may be executed in a number of identical counterparts, each of which shall be deemed an original for all purposes and all of which constitute, collectively, one agreement; but, in making proof of this Agreement, it shall not be necessary to produce or account for more than one such counterpart.

    i.    Parties Bound; Assignments. This Agreement is binding upon, and inures to the benefit of the parties hereto and their respective successors and assigns; provided that neither party may, without the prior written consent of the other, assign any rights, duties, or obligations hereunder, and any purported assignment in violation of the foregoing shall be void and ineffective; provided however, that BBG may assign any or all of its rights and obligations hereunder (i) to an affiliated Person that directly or indirectly controls, is controlled by, or is under common control with, BBG, or (ii) in connection with (A) a merger of BBG pursuant to which BBG is not the surviving entity, (B) the purchase by a bona fide third party purchaser (in

BBG 10255
ATTORNEYS EYES ONLY

one transaction or a series of related transactions) of fifty percent (50%) or more of the outstanding voting stock of BBG, or (C) sale of all or substantially all of BBG's assets.

     j.    Neutral Interpretation. The provisions contained herein shall not be construed in favor of or against either party because that party or its counsel drafted this Agreement, but shall be construed as if all parties prepared this Agreement, and any rules of construction to the contrary.

     k.    Arbitration. In the event of any dispute or disagreement between the parties, the parties shall set forth their respective positions and disagreements in writing and give notice of the same to each other and will exert good faith efforts to resolve the dispute or disagreement. Except as otherwise set forth in this Agreement, if the dispute is not settled at the expiration of fifteen (15) days from the time such notice is received, then the entire matter shall be submitted to binding arbitration. The arbitration shall be conducted in San Diego, California under the Rules of Arbitration of the International Chamber of Commerce, as then in effect, except to the extent that the parties at that time may agree upon other rules. The arbitrator shall be bound to the strict interpretation and observation of the terms of this Agreement. Subject to paragraph l. below, the parties are responsible for their own reasonable attorneys fees and costs incurred by it in connection with the arbitration, but the losing party shall pay the fees and costs of the arbitrator. The arbitrator shall be specifically empowered to grant temporary or permanent injunctive relief as well as any other equitable or legal remedies. The arbitration award shall be final and binding on the parties hereto. Notwithstanding any provision of the aforesaid rules or statutes to the contrary, the refusal or failure of any party to appear at or participate in any hearing or other portion of any arbitration proceeding pursuant to this paragraph k. shall not prevent any such hearing or proceeding from going forward, and the arbitrator is empowered to make a decision and/or render an award ex parte which shall be binding on such party as fully as though such party had participated fully in such hearing or proceeding.

     l.    Attorneys' Fees. In the event of a dispute or litigation as to any terms or conditions of this Agreement, or if a party brings an action or proceeding to enforce or declare any rights herein created, or to bring about or declare the termination, cancellation, or rescission of this Agreement, the prevailing party in such action or proceeding shall be entitled to receive from the other party fees and costs, including attorneys' fees, as a court of competent jurisdiction may deem just and proper.

     m.    Agreement Terms. The parties hereto agree that the terms and conditions of this Agreement, all instruments and agreements to be entered into in connection herewith, and all discussion and correspondence between the parties related to the foregoing shall constitute the confidential information of the parties and shall not be disclosed to any third party in any manner whatsoever, except as may be required by Law.

     n.    Joint and Several Liability. The obligations of Benchmark Project Management, s.r.o., Michel Alexiev and of Goran Alexiev hereunder shall be joint and several.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

W27-SD:BJJG13128771143

BBG 10256
ATTORNEYS EYES ONLY

IN WITNESS WHEREOF the parties have executed this Agreement as of the date first above written.

"BBG"

BBG Holdings, Ltd.

By: _____

Its: _____

Address:  c/o Richard A. Jenkyn
Codan Services Limited
Clarendon House,
2 Church Street
Hamilton HM DX, Bermuda
Tel: (441) 299-4961
Fax: (441) 295-2408

"AGENT"

Benchmark Project Management, s.r.o.

By: _G. Alexiev___

Its: _Director___

Address: _Strossmayerovo namesti 11_

_170 00 Prague 7_

_Czech Republic_

Goran Alexiev

Michel Alexiev

*[SIGNATURE PAGE TO TRAFFIC AGREEMENT]*

BBG 10257
ATTORNEYS EYES ONLY

-7-

WP:SD:SJJGTG1287714.1

# EXHIBIT "A"

## LIST OF CUSTOMERS

**Signed up hotels (15)**

| Hotel | Number of rooms |
|---|---|
| Ibis | |
| Novotel | |
| Mercure | |
| Adria | |
| Astoria | |
| AVE Hotels (3 hotels) | |
| Diplomat | |
| Parkhotel | |
| Radisson SAS | |
| Savoy | |
| Top Hotel | |
| Crowne Plaze | |
| Grand Hotel Bohemia | |

Prague Airport
Interchange  (Exchange house)

**Closing stage / contracts up for signing 10 hotels**

| Hotel | Number of rooms |
|---|---|
| Hilton | |
| Andels | |
| Best Western Kampa | |
| Europe Hotels - 7 hotels | |
| Josef | |
| Olympik Holding - 2 hotels | |
| Palace | |
| Paříž | |
| Praha | |
| Vienna | |

Checkpoint (Exchange house)

BBG  10258
ATTORNEYS EYES ONLY