IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

| | | |
|---|---|---|
| BBG COMMUNICATIONS, INC., | § | |
| | § | |
| | § | |
| V. | § | |
| | § | |
| | § | |
| NETWORK COMMUNICATIONS | § | |
| INTERNATIONAL CORP.; | § | |
| WILLIAM POPE; | § | |
| JAY WALTERS; and | § | |
| JEFFERY WALTERS | § | |
| | § | |
| V. | §CIVIL ACTION NO. 2:03-CV-227-TJW |
| | § | |
| RONALD PEREZ | § | |
| RICARDO SINGER | § | JURY DEMANDED |
| GREGORIO L. GALICOT | § | |
| RAFAEL GALICOT | § | |
| MICHAEL STOMPS | § | |
| AWI FANG | § | |
| a/k/a SURIYANTO SURIYANTO | § | |
| GORAN ALEXIEV | § | |
| MICHAEL ALEXIEV | § | |
| PATRICK MAUCHANT | § | |
| KEVEN WATT | § | |
| BBG HOLDINGS BERMUDA d/b/a | § | |
| BBG COMMUNICATIONS | § | |
| (BERMUDA) LTD. | § | |

## MOTION FOR SUMMARY JUDGMENT ON COUNTERCLAIM
## SEVEN AS IT RELATES TO MICHAEL STOMPS

Michael Stomps ("Stomps"), third-party defendant in the above-entitled and

numbered civil action, and BBG Communications, Inc. and BBG Holdings, Ltd.

("BBG"), counterclaim defendants in the above-entitled and numbered civil action, file

this Motion for Summary Judgment on Counterclaim Seven as it relates to Stomps'

alleged tortious interference with the contract between NCIC and Starhub Pte., Ltd.  In

support, Stomps and BBG will show the following.

## INTRODUCTION

Stomps and BBG move for summary judgment pursuant to Federal Rule of Civil

Procedure 56(c) as to Network Communications International Corp. ("NCIC")'s and Blue

Phones, Ltd. ("BPL")'s claim for "Tortious Interference with Existing Contractual

Relations," Counterclaim Seven in NCIC's Fourth Amended Counterclaim and Third

Party Complaint ("Fourth Amended Complaint"), as it relates to the contract between

NCIC and Starhub Pte. Ltd. ("Starhub").  First, there is no evidence that any contract ever

existed between BPL and Starhub.  To the extent that BPL asserts a cause of action for

tortious interference with an alleged contract with Starhub, as a matter of law, BPL

cannot bring this claim.  And, to the extent NCIC asserts a cause of action related to

interference with the contract, NCIC's claim also fails as a matter of law.  The contract is

invalid under Singapore law, therefore, NCIC cannot succeed on a claim for tortious

interference with existing contractual relations as alleged against Stomps.

## DISCUSSION

A court should grant summary judgment when "there is no genuine issue as to any

material fact and [ ] the moving party is entitled to a judgment as a matter of law."  Fed.

R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  A fact is

material if it might affect the outcome of a case under the governing substantive law.

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).  While the court must view

the evidence in a light favorable to the party opposing summary judgment, this favorable

presumption for the non-movant exists only when the non-movant presents an actual

controversy of fact. *Coburn Supply Co., Inc. v. Kohler Co.,* 194 F. Supp. 2d 580,

581 (E.D. Tex. 2002) (citing *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.

1994)).  This burden is not satisfied by some metaphysical doubt as to the material facts,

by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of

evidence. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994).  Courts cannot

"in the absence of any proof, assume that the nonmoving party could or would prove the

necessary facts." *Id*.

**A.**     **BPL Cannot Assert a Claim Against Stomps and BBG for Tortious
         Interference as to Starhub Because BPL Did Not Have a Contract with
         Starhub**

In the Fourth Amended Complaint, NCIC and BPL allege Stomps tortiously

interfered with an existing contractual relationship with Starhub by falsely representing

that NCIC was terminating its contract and re-routing this call traffic from Starhub to

VozBBG.  NCIC and BPL further allege that Stomps' conduct caused the contract

between NCIC and Starhub to be breached.

BPL does not allege and cannot allege that it had a contract with Starhub.

Accordingly, the Court should grant summary judgment as to any claim by BPL in

Counterclaim Seven for tortious interference with a contract with Starhub.  The

remainder of this discussion is addressed toward whether NCIC can assert a claim against

Stomps and BBG for tortious interference with a contract between NCIC and Starhub.

**B.**     **The Court Must Apply Singapore Law to Determine Whether the
         Underlying Contract is Valid**

Before reaching the issue of whether Stomps and BBG are entitled to judgment as

a matter of law regarding the Starhub contract, the Court must first consider what law

applies.[1]  "To properly decide the tortious interference issues, [the Court] must make three choice of law decisions:  first, which law governs [the] tort cause of action; second, which law governs the validity of the contracts and prospective business relations which form the basis of the tortious interference claims; and third, whether any foreign law invalidates the contracts for other reasons."  *Access Telecom, Inc v. MCI Telecommunications Corp.,* 197 F.3d 694, 705 (5th Cir. 1999).  A federal court must follow the choice of law rules of the state in which it sits.  *See e.g., St. Paul Mercury Ins. Co. v. Lexington Ins.*, 78 F.3d 202, 205 (5th Cir. 1996).

In Texas, the first choice of the law, which law governs NCIC's tort cause of action, follows the significant relationship test.  Restatement (Second) of Conflict of Laws § 145; *see also Gutierrez v. Collins,* 583 S.W.2d 312, 318 (Tex.1979).  Under the modern "most significant relationship" test, courts consider: (1) the place where the injury occurred; (2) the place where the conduct causing the injury occurred; (3) the domicile, residence, nationality, place of incorporation, and place of business of the parties; and (4) the place where the relationship between the parties, if any, is centered.  *See Snyder General Corp. v. Great Am. Ins.,* 928 F. Supp. 674, 677 (N.D. Tex. 1996), *aff'd,* 133 F.3d 373 (5th Cir. 1998).

Under the significant relation test, Singapore law should govern this tort claim because Starhub is incorporated in and its place of business is Singapore.  The contract between NCIC and Starhub was intended to provide Starhub's customers, located in Singapore, with a toll free access number to enable to them to make international calls through Starhub's international telephone gateway, also located in Singapore.  Moreover,

---

[1]  A choice of law analysis is required for the majority of claims pressed by NCIC and BPL.  This issue will be raised in a trial brief to be filed with the Court.

the alleged tortious acts, *i.e.* Stomps' acts of rerouting Starhub phone traffic from NCIC to BBG, occurred in Singapore.

However, even if the Court were to find that Texas law applies to the tort claim, Singapore law would govern the second choice of law question: what law governs the validity of the contract.  To succeed on a claim for tortious interference with an existing contractual relation, the plaintiff, under Texas law, must prove: "(1) the existence of a contract subject to interference; (2) a willful and intentional act of interference; (3) such act was a proximate cause of damage; and (4) actual damage or loss occurred." *Flourine On Call, Ltd. v. Fluorogas Ltd.,* 380 F.3d 849, 864 (5th Cir. 2004) (citing *Thrift v. Hubbard,* 44 F.3d 348, 356 (5th Cir. 1995) and *Browning-Ferris*, *Inc. v. Reyna*, 865 S.W.2d 925, 926 (Tex. 1993)).  To succeed on such a claim under Texas law, a plaintiff must prove that the contract was valid.  *Access Telecom, Inc.,* 197 F.3d at 705.  "There is no remedy for interference with illegal contracts."  *Id.*

The validity of a contract is determined by the law which governs the contract. *Id.* (citing *Duncan v. Cessna Aircraft Co.,* 665 S.W.2d 414, 420-21 (Tex. 1984)).  The contract at issue between NCIC and Starhub contains a choice of law clause which reads: "The parties agree that this Agreement shall be governed by Singapore law…"  Exhibit A.  In Texas, contractual choice of law provisions are ordinarily enforced if the chosen forum has a substantial relationship to the parties and the transaction.  *See De Santis v. Wackenhut*, 793 S.W.2d 670, 677-78 (Tex. 1990).  Since Starhub is incorporated in and has its place of business in Singapore, and the contract was intended to provide telephone service to Starhub's customers in Singapore, the choice of law provision in the contract, invoking Singapore law, applies.

C.      **The NCIC and Starhub Contract is Invalid Under Singapore Law**

To determine whether the contract between Starhub and NCIC is enforceable under Singapore law, BBG obtained a letter from the Kelvin CHIA Partnership in Singapore, summarizing the current state of the law.  Exhibit B.  Singapore's Telecommunications Act, Cap. 323, requires any person operating and providing telecommunication services in Singapore to be licensed.  The Telecommunications Act, in pertinent part, reads:

> 3.  (1) As from 1st December 1999 and subject to this Act, the Authority shall have exclusive privilege for the operation and provision of telecommunication systems and services in Singapore.
>
> (2) The privilege conferred on the Authority by subsection (1) shall
>
> (a) include the rights of establishing, installing, using, working, maintaining, developing, construction, promoting, hiring and selling telecommunication systems and services;
>
> . . . .
>
> 5.  (1) A license may, with the consent of, or in accordance with the terms of a general authority given by the Minister, be granted by the Authority either unconditionally or subject to such conditions as the Authority may impose and specify in the license and either irrevocably or subject to revocation as therein specified for the running of such telecommunication systems and services falling with section 3 as are specified in the license.
>
> **33.**  (1) Subject to this section and section 4, any person who establishes, installs, maintains, provides or operates a telecommunication system or service within Singapore without a license granted under section 5 or otherwise infringes the privilege conferred upon the Authority by section 3 shall be guilty of an offence.
>
> (2) Any person guilty of an offence under this section shall be liable on conviction to a fine not exceeding $100,000 or to imprisonment for a term not exceeding 3 years or to both and, in the case of a continuing offence, to a further fine not

> exceeding $10,000 for every day or part thereof during
> which the offence continues after conviction.

*See* http://statutes.agc.gov.sg.

Under its contract with Starhub, NCIC was to provide a toll free access number to enable end-users to make international calls through Starhub's international telephone gateway.  Thus, NCIC was required to register with the IDA under the Service-Based Operator License for the provision of International Calling Card Services.  Exhibit A. NCIC, however, did not have such a license at the time it entered the agreement with Starhub, and it cannot provide any admissible evidence to show that it did.  As a result, NCIC is in violation of the Telecommunications Act.

Because NCIC was not duly licensed under the Telecommunications Act, the contract is unenforceable on grounds of illegality of formation or performance, under Singapore law.  In *Foo Kee Boo v. Ho Lee Investments*, [1988] 3 MLJ 128, the plaintiff buyers obtained an option to purchase a house from the defendant developers.[2]   The developers, however, had not obtained approval of the option from the Controller, as required by the Housing Developers Rules 1976.  The Court noted that where a contract is prohibited by statute, the resulting agreement is null and void.  *See also Re Mahmoud and Ispahani* [1921] 2 KB 716 (contract for the purchase of linseed oil between licensed seller and unlicensed buyer was illegal when the relevant statute prohibited the purchase or sale of such a product by an unlicensed party).  Since NCIC entered the contract with Starhub in violation of Singapore's Telecommunications Act, the underlying contract is illegal.

Singapore law holds that "contracts not expressly forbidden by statute or declared to be void are in proper cases nullified for disobedience to a statute is a rule of public policy."  *Vita Food Prod., Inc. v. Unus Shipping Co. Ltd.*, [1939] AC 277; *see also St.*

---

[2]  All the foreign cases are attached hereto as Exhibit C.

*John Shipping Corp. v. Joseph Rank Ltd*, [1957] 1 QB 267 (if a statute prohibits certain acts, "it does not matter whether or not [the statute] prohibits a contract; if the contract is deliberately made to do a prohibited act, that contract will be unenforceable.").

In *Tan Chor Ting v. Tokyo Invest. Pte. Ltd. and Another*, [1991] SLR 555, the plaintiff sued to recover stock shares he had pledged to the defendants as security for his brother's trading accounts.  The defendants, however, were not licensed brokers in Singapore and therefore in violation of the Futures Trading Act.  The court found that this Act was clearly intended to regulate the future trading business in Singapore and to protect the public from dealing with unlicensed brokers within or outside Singapore. Given the strong public policy reasons behind the law, the court found that the defendants were not entitled to retain the shares they had received under their agreement with plaintiff.

The Telecommunications Act requires service providers to be licensed for strong public policy reasons:

> (i)     To ensure that telecommunication services are reasonably accessible to all people in Singapore and are supplied as efficiently and economically as practicable and at performance standards that reasonably meet the social, industrial, and commercial needs of Singapore.
>
> (ii)     To promote and maintain fair and efficient market conduct and effective competition between persons engaged in commercial activities connected with telecommunication technology in Singapore.
>
> (iii)     To exercise licensing and regulatory functions in respect of the telecommunications systems and service in Singapore and matters connected therewith such as satellite orbital slots, the radio frequency spectrum, undersea cables, cable frontier and satellite stations and receivers and transmitters in Singapore.

*See* http://statutes.agc.gov.sg.

Given the strong public policy reasons behind the Telecommunications Act requiring service providers to be licensed, which NCIC was in violation of at the time it signed the contract with Starhub, Singapore law holds that NCIC cannot enforce performance of the contract and therefore, the contract is invalid.

### CONCLUSION

Since the underlying agreement between NCIC and Starhub is invalid, the alleged conduct by Michael Stomps, as a matter of law, cannot not constitute tortious inference with an existing contractual relation of NCIC.  Therefore, Stomps and BBG respectfully request that the Court enter summary judgment in their favor as to NCIC's claim of Tortious Interference with Existing Contractual Relations, Counterclaim Seven in NCIC's Fourth Amended Complaint, as it relates to alleged conduct by Stomps as to the contract between NCIC and Starhub.

Respectfully submitted,

_____
Eric M. Albritton
Attorney-in-Charge
Texas State Bar No. 00790215
Albritton Law Firm
P.O. Box 2649
Longview, Texas 75606
(903) 757-8449 (office)
(903) 758-7397 (fax)
eric@albrittonlawfirm.com

Scott E. Stevens
Texas State Bar No. 00792024
Stevens Law Firm
P.O. Box 807
Longview, Texas 75606
(903) 753-6760 (office)
(903) 753-6761 (fax)
scott@seslawfirm.com

ATTORNEYS FOR RONALD PEREZ,
MICHAEL STOMPS AND KEVEN WATT


/s/_____
Gregory P. Love
Attorney-in-Charge
State Bar No. 24013060
WELLBORN   HOUSTON, LLP
300 W. Main Street
P.O. Box 1109
Henderson, Texas 75653-1109
Telephone: (903) 657-8544
Facsimile:  (903) 657-6108

James J. Mittermiller
California Bar No. 85177
Sheppard, Mullin, Richter & Hampton, LLP
501 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: (619) 338-6500
Facsimile: (619) 234-3815

ATTORNEYS FOR BBG
COMMUNICATIONS, INC., BBG
HOLDINGS LIMITED, GREGORIO
GALICOT AND RAFAEL GALICOT

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  As such, this motion was served on all counsel who are deemed to have consented to electronic service.  Local Rule CV-5(a)(3)(A). Pursuant to Fed. R. Civ. P. 5(d) and Local Rule CV-5(e), all other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by certified mail, return receipt requested, on this the 2nd day of December, 2004.

_____
Eric M. Albritton